UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEWATER WEST INDUSTRIES, LTD., | Case No.: 17CV1118-BEN(BLM) |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL** |
| v. | |
| PACIFIC SURF DESIGNS, INC. AND FLOW SERVICES, INC., | **[ECF No. 105]** |
| Defendants. | **REDACTED** |
| ———————————————— | |
| AND RELATED COUNTERCLAIMS | |

Currently before the Court is Defendants' April 20, 2018 Motion to Compel [ECF No. 105 ("MTC")], Plaintiff's April 27, 2018 opposition to the motion [ECF No. 111 ("Oppo.")], Defendants' May 4, 2018 Reply [ECF No. 120 ("Reply")], Defendants' May 22, 2018 Supplemental Evidence [ECF No. 129], Plaintiff's May 29, 2018 Response to Supplemental Evidence [ECF No. 131], and Defendants' June 1, 2018 Reply to the Response to the Supplemental Evidence [ECF No. 132]. For the reasons set forth below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

///

///

**BACKGROUND**

This case was initiated following the dismissal of <u>Flowrider Surf Ltd. v. Pacific Surf Designs, Inc.</u>, 15cv1879-BEN(BLM) for lack of standing. On August 3, 2017, District Judge Roger T. Benitez issued an Order Denying Plaintiff's Motion to Consolidate the instant matter with the 15cv1879-BEN(BLM) matter. ECF No. 39. In his order, Judge Benitez stated that the Court's "claim construction order in the FlowRider action (ECF No. 88) and all discovery from the FlowRider action apply to the instant case." <u>Id.</u> at 2. Defendants answered the complaint and filed a counterclaim on October 24, 2017. ECF No. 53. Plaintiff answered the counterclaim on November 14, 2017. ECF No. 67.

On December 7, 2017, in accordance with the Court's order, the parties filed a Joint Case Management Statement. ECF No. 80. In the statement, Plaintiff noted its position that there was no need for additional discovery beyond what was requested in the previous action while Defendants proposed limited additional discovery including five interrogatories, twenty-five requests for admission, and eight depositions. <u>Id.</u> at 7-11. On December 14, 2017, the Court held a telephonic, attorneys-only Case Management Conference ("CMC"). ECF No. 81. On December 18, 2017, the Court issued a Case Management Order Regulating Discovery and Other Pretrial Proceedings in a Patent Case. ECF No. 82. Paragraph five of the order stated that "[t]he initial date for the substantial completion of document discovery including electronically stored information ("ESI") is January 15, 2018. <u>See</u> Patent L.R. 2.1(a)(1)." <u>Id.</u> at 2. Paragraph six of the order stated that

> All fact discovery shall be completed by all parties on or before April 6, 2018. The parties disagree as to whether or not there should be additional fact discovery in this matter given that discovery that has already taken place in related case <u>Flowrider Surf, Ltd. et al v. Pacific Surf Designs, Inc.</u>, 15cv1879-BEN(BLM). Plaintiff argues that no additional discovery is needed while Defendants propose limited additional discovery, including "5 interrogatories, 25 requests for admission (between the two actions), and 8 depositions." ECF No. 80 at 5. As discussed with counsel during the CMC, the Court will permit limited additional discovery as follows: <u>5 interrogatories, 25 requests for admission (between the two actions), and 5 depositions</u>.

<u>Id.</u> (emphasis in original).

On January 12, 2018, the parties contacted the Court regarding a dispute over the

interpretation of the Court's CMC Order and whether or not it permitted additional ESI discovery or if ESI was limited to discovery from the previous case. Defendants took the position that additional ESI was permitted under the CMC Order while Plaintiff argued that it was not. During that call, the Court informed the parties that ESI discovery was permitted as part of the additional discovery authorized in paragraph six of the CMC Order.

On January 25, 2018, Defendants served Requests for Production of Documents ("RFPs") on Plaintiff and noticed the deposition of Mr. Erikson Squier. MTC at 9-11, see also ECF No. 105-1, Declaration of Charanjit Brahma In Support of Defendants' Motion to Compel ("Brahma Decl.") at Exhs. B-C.

On March 21, 2018, Defendants deposed Mr. Squier. Brahma Decl. at Exh. G. During Mr. Squier's deposition, when defense counsel asked questions regarding ███████████ ████████████████████████████████████████████████████████████████ ███████████. Id.; see also MTC at 9-10. ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████. Id.; see also MTC at 10.

On March 26, 2018, Plaintiff responded to Defendants' RFPs as follows:

> Responding Party objects that this request, and this entire set of requests, is served in violation of the Court's Case Management Order Regulating Discovery and Other Pretrial Proceedings in a Patent Case" which requires "substantial completion of document discovery. . . by January 15, 2018" and limits further discovery in this action to "5 interrogatories, 25 requests for admission (between the two actions), and 5 depositions." ECF No. 82 at 2:5-13, 20-22. On this basis alone, Responding Party will not respond to this request.

Brahma Decl. at Exh. A.[1]

On April 16, 2018, counsel for Defendants, Christopher Franich and Charanjit Brahma, and counsel for Plaintiff, Roger Scott, jointly contacted the Court regarding these discovery disputes. ECF No. 102. In accordance with the Court's order, the parties timely filed their

---

[1] Plaintiff also objected to some of the requests as not reasonably particularized, compound, vague, ambiguous, overbroad, duplicative, and privileged. Brahma Decl. at Exh. A.

motion, opposition, and reply.  Id.; see also MTC, Oppo., and Reply.

On May 22, 2018, Defendants filed a Second Notice of Supplemental Evidence Regarding their Motion to Compel.  ECF No. 129.  On May 22, 2018, the Court issued an order setting a briefing schedule on the Supplemental Evidence.  ECF No. 130.  Plaintiff filed a response to the Supplemental Evidence on May 29, 2018.  ECF No. 131.  Defendants filed a reply on June 1, 2018.  ECF No. 132.

## **LEGAL STANDARD**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes.  See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  District courts also have broad discretion to limit discovery to prevent its abuse.  See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a).  "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  Id. at 34(b)(2)(B).  The responding party is responsible for all items in "the responding party's possession, custody, or control."  Id. at 34(a)(1).  Actual possession, custody or control is not required.  Rather, "[a] party may be

ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." <u>Soto v. City of Concord</u>, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

## **<u>DISCUSSION</u>**

Defendants seek an order from the Court compelling Plaintiff to (1) respond to Defendants' First Set of RFPs No. 1-18, (2) provide discovery related to Defendants' inequitable conduct claims and defenses surrounding the revival of U.S. Patent No. 6,491,589 ("the '589 patent"), specifically, Defendants ask that Plaintiff be compelled to permit Mr. Erikson Squier to be deposed regarding misrepresentations made to the United States Patent Office ("PTO") in the course of reviving the '589 patent, and (3) "provide discovery relating to the revival of the '589 patent that has been withheld on grounds of attorney-client privilege or attorney work product, as those privileges have been waived." MTC at 2. Defendants also request that (1) the discovery deadline be continued from April 27, 2018 to June 1, 2018 "so that Defendants may complete discovery after Plaintiff has produced discovery in response to those Requests," (2) Defendants be granted leave to amend their answer if the Court denies Defendants' request to compel additional deposition testimony by Mr. Squier because their sixth defense and fourth counterclaim are narrowly construed, and (3) they be awarded their expenses for the first deposition of Mr. Squier, any future deposition of Mr. Squier that is ordered, and for the costs of bringing this motion. <u>Id.</u> at 20-21.

Plaintiff contends that Defendants' motion is an improper attempt to conduct discovery beyond the limitations set forth in the Court's Scheduling Order and that the motion should be denied in its entirety. Oppo. at 5. Plaintiff also contends that discovery is only permitted if it is relevant to a properly pled claim or defense and that Defendants have abandoned their defense or counterclaim regarding Plaintiff's representation of unintentionality with respect to paying the maintenance fees for the '589 patent. <u>Id.</u> Plaintiff states that neither it nor its counsel has disclosed attorney-client privileged information sufficient to waive the privilege and did not place attorney-client communications at issue by implication. <u>Id.</u> at 5-6. Plaintiff further contends that Defendants cannot claim that discovery served after the substantial completion of discovery

deadline is permissible when they have spent the entire case arguing that the deadline "acts as a bar to later-served discovery." Id. at 6. Finally, Plaintiff notes that Defendants have not (1) provided good cause for their request to modify the scheduling order, (2) provided good cause for their request to amend their answer, or (3) shown that sanctions are appropriate in this case as Plaintiff's positions are substantially justified. Id.

## A. **Requests for Production**

Defendants argue that Plaintiff has no basis to assert that its discovery requests were served contrary to the CMC Order because the absence of limitations on written discovery in that Order means that the served requests are available to the parties in this case. MTC at 13. Defendants liken the situation to when Plaintiff objected to Defendants' request for additional ESI as not being permitted under the CMC Order and the Court informed the parties that additional ESI was permitted. Id. Defendants further argue that the January 15, 2018 deadline for substantial completion of discovery is not a deadline by which all requests for document discovery had to be served. Id. at 14.

Plaintiff contends that the Court's CMC Order bars Defendants' RFPs. Oppo. at 22. Plaintiff notes that the Court's CMC Order establishes a January 15, 2018 deadline for substantial completion of document discovery and calls for limited additional discovery including five interrogatories, twenty-five Requests for Admissions, and five depositions and does not mention RFPs. Id. at 23-24. Accordingly, Plaintiff contends that Defendants' request for responses to the RFPs should be denied. Id. at 24.

As an initial matter, the Court notes that there appears to have been a miscommunication between the parties and the Court. When the parties contacted the Court in January regarding their dispute over the CMC Order, the Court believed that Defendants were seeking ESI that was responsive to the discovery permitted under paragraph six of the CMC Order (5 interrogatories, 25 requests for admission (between the two actions), and 5 depositions). The Court's response was intended to allow both parties to obtain ESI if it was responsive to the authorized discovery. The Court did not anticipate that either party would issue RFPs seeking either ESI or other documents. The Court's understanding and intent was based, in part, on the fact that neither

17CV1118-BEN(BLM)

party requested the authority to issue RFPs. <u>See</u> ECF No. 80 at 7-11 (Plaintiff requested no discovery of any type and Defendants requested only interrogatories, RFAs and depositions). Both parties apparently interpreted the Court's response as authorizing unlimited RFPs and on January 15, 2018, Plaintiff served its RFPs and on January 25, 2018, Defendants served their RFPS. Oppo. at 23; <u>see</u> <u>also</u> MTC at 9-11, Brahma Decl. at Exhs. B-C, and Reply at 4. After initially objecting, Defendants responded to Plaintiff's RFPs. Oppo. at 23. Despite receiving Defendants' substantive responses to Plaintiff's RFPs, Plaintiff now attempts to argue that RFPs are not allowed. In light of the miscommunication and given the conduct of the parties, the Court overrules Plaintiff's objection on the basis that the CMC Order does not permit RFPs.

The Court also notes that neither party provides any case citations or law in support of its position with respect to the substantial completion of fact discovery deadline and whether that deadline prevents additional discovery from being served once it has passed. Plaintiff cites to Merriam Webster in support of its position and both parties accuse the other side of having flip flopped on their position with respect to the meaning of the deadline for the substantial completion of fact discovery.[2] <u>See</u> MTC, Oppo., and Reply. The Court finds that while the CMC Order requires that the substantial completion of fact discovery occur by January 15, 2018, it does not require that all fact discovery be completed by that date which is why there is a separate deadline for the completion of fact discovery. ECF Nos. 82, 88, 107. The substantial completion of document discovery deadline was established in part to "allow[] parties to take depositions at a defined time with the assurance that substantially all document discovery has been completed." Randall E. Kay, <u>District Amends Local Patent Rules</u>, Los Angeles Daily Journal, February 25, 2013. It does not act as a bar to all subsequent discovery. Accordingly, Defendants' motion to compel a response to RFPs No. 1-18 is **GRANTED**. Plaintiff must respond

---

[2] Plaintiff contends that Defendants initially objected to Plaintiff's discovery served after January 15, 2018 while Defendants argue that Plaintiff itself served discovery after the January 15 2018 deadline and cannot now claim a different interpretation of the deadline. <u>See</u> Oppo. at 23 and Reply at 4.

17CV1118-BEN(BLM)

to the RFPs on or before **June 22, 2018**.

## B. Deposition of Mr. Erikson Squier

Defendants seek an order compelling Mr. Squier to respond to deposition questions regarding "███████████████████████████████████████████████████████████████ ████████████████████████████████████████████." MTC at 14.   Defendants also seek an order requiring Plaintiff to pay Defendants the costs and fees associated with both depositions and request that if the Court denies their motion on this issue, they be permitted to amend their answer[3] and to further pursue discovery on this issue.  Id. at 14 and 17.  Defendants argue that Mr. Squier submitted a declaration stating that █████████████████████████████████████████ ████████████████████████████████████████████████████████.[4]  Id. at 14. Defendants also argue that the scope of their sixth defense and fourth counterclaim are directly related to Plaintiff's alleged inequitable conduct for improper revival.  Id. at 15.

Plaintiff contends that discovery "related to the expiration and revival of, and payment of maintenance fees for the '589 Patent is wholly irrelevant because Defendants have not asserted

---

[3] Defendants' request for permission to amend their answer is **DENIED WITHOUT PREJUDICE**.  A motion to amend must be brought before District Judge Benitez in accordance with his Chambers Rules.

[4]The statement portion of the Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent signed by Mr. Squier reads "The undersigned certifies that the delay in payment of the maintenance fee to this patent was unintentional." ECF No. 111-1, Declaration of Roger L. Scott in Support of Plaintiff's Opposition to Defendants' Motion to Compel ("Scott Decl.") at Exh. 7.   The letter from the USPTO regarding the decision to grant the petition notes that

> [i]t is not apparent whether the statement of unintentional delay was signed by a person who would have been in a position of knowing that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137(a) was unintentional.   Nevertheless, in accordance with 37 CFR 10.18, the statement is accepted as constituting a certification of unintentional delay.  However, in the event that petitioner has no knowledge that the delay was unintentional, petitioner must make such an inquiry to ascertain that, in fact, the delay was unintentional.  If petitioner discovers that the delay was intentional, petitioner must so notify the Office.

Exh. 8.

17CV1118-BEN(BLM)

any affirmative defense or counterclaim regarding the intentionality or unintentionality of Whitewater's failure timely to pay maintenance fees for the '589 Patent." Oppo. at 13. Plaintiff contends that Defendants failed to plead that Plaintiff intentionally failed to pay maintenance fees, and certainly have not done so with the required level of particularity. Id. at 13-14. Plaintiff specifically notes that Defendants "deliberately removed all allegations of false statements regarding the unintentionality of Whitewater's delay in paying maintenance fees" from their redrafted affirmative defenses and counterclaims. Id. at 16-17. Plaintiff also contends that Defendants' request to amend their answer if their motion is denied is improper as their request is "devoid of any good cause, analysis, or any reference to Rule 16 at all."[5] Id. at 25 (internal quotations omitted). Plaintiff further contends that Defendants have not demonstrated due diligence as they knew how to plead inequitable conduct related to the unintentionality of Plaintiff's delay, but instead intentionally removed the allegations from their pleadings. Id. at 26.

Defendants' sixth defense states:

(Unenforceability of U.S. Patent 6,491,589 Due to Inequitable Conduct based on improper revival)

Plaintiff's Complaint, and each purported cause of action therein alleged, is barred by inequitable conduct committed by Plaintiff and/or its agents during revival of the '589 patent, because the patentee breached its duty of candor and good faith to the Patent Office.

Shortly after dismissing its first case against Defendant PSD for infringement of the '589 patent, Plaintiff and/or its related entity— Flowrider Surf Ltd.—allowed the '589 patent to expire by failing to timely pay maintenance fees. Plaintiff's counsel then sought to revive the expired '589 patent by submitting two separate petitions, a power of attorney, and statement of ownership, each swearing that the entire delay in paying maintenance fees by the patent owner was "unintentional". According to the Complaint, the purported owner of the '589 patent was Surf Park and each petition required a statement by the patent owner that the entirety of such delay was unintentional. The power of attorney

---

[5] Plaintiff notes that since Defendants failed to raise this issue in their motion, they have waived the argument and are unable to raise it in their reply. Oppo. at 26.

submitted by Plaintiff must have been signed by the patent owner and Plaintiff's counsel never represented or had authority to act on behalf of purported patent owner Surf Park.

Instead, Plaintiff's counsel represented to the Patent Office in four separate filings pursuant to the '589 patent revival that it was acting on behalf of Light Wave—an entity that Plaintiff and Plaintiff's counsel knew was not the owner of the '589 patent. At the time of each filing by Plaintiff and when the Patent Office revived the '589 patent, the Patent Office did not know of Plaintiff, Flowrider Surf, Ltd., or even Surf Park. Instead, Plaintiff and/or its counsel deliberately did nothing before the Patent Office and violated its duty of candor by failing to submit any evidence showing any rights Plaintiff may have had in the '589 patent. Because of these misrepresentations and deliberate concealment by Plaintiff, the Patent Office authorized Plaintiff's counsel's representation, believed its certifying statements, and revived the '589 patent. The foregoing circumstantial evidence shows that the only reasonable inference is that such material representations were made with specific intent to deceive the Patent Office. Because each claim of the '589 patent is unenforceable for inequitable conduct, all issued claims of the '589 patent are unenforceable.

ECF No. 53 at 10-11.

Defendants' fourth counterclaim alleges in relevant part that

40. Plaintiff's counsel filed a Renewed Petition to Revive Under 37 CFR 1.378 on August 11, 2015 ("Second Petition").

41. 37 CFR 1.378(a) states that "[t]he Director may accept the payment of any maintenance fee due on a patent after expiration of the patent if, upon petition, the delay in payment of the maintenance fees is shown to the satisfaction of the Director to have been unintentional." 37 CFR 1.378(b)(3) states that the Petition must include "[a] statement that the delay in payment of the maintenance fee was unintentional." Furthermore, MPEP 2590 states that "[a] person seeking reinstatement of an expired patent should not make a statement that the delay in payment of the maintenance fee was unintentional unless the entire delay was unintentional, including the period from discovery that the maintenance fee was not timely paid until payment of the maintenance fee." To that end, "a statement that the delay in payment of the maintenance fee was unintentional would not be proper when the patentee becomes aware of an unintentional failure to timely pay the maintenance fee and then intentionally delays filing a petition for reinstatement of the patent under 37 CFR 1.378." *Id.*

42. According to the Complaint, the purported owner of the '589 patent at the time of each petition was Surf Park.

43. Each petition submitted by Plaintiff's counsel required a statement by the patent owner that the entirety of such delay was unintentional.

44. The power of attorney submitted by Plaintiff that conferred authority on Plaintiff's counsel before the Patent Office must have been signed by the patent owner.

45. At the time of each revival filing by Plaintiff and when the Patent Office revived the '589 patent, the Patent Office did not know of Plaintiff, Flowrider Surf, Ltd., or even Surf Park.

46. On August 24, 2015, the Patent Office granted the Second Petition, the Office of Petitions at the Patent Office specifically stated that "[i]t [was] not apparent whether the statement of unintentional delay was signed by a person who would have been in a position of knowing that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137(a) was unintentional. Nevertheless, in accordance with 37 CFR 10.18, the statement is accepted as constituting a certification of unintentional delay. However, in the event that petitioner has no knowledge that the delay was unintentional, petitioner must make such an inquiry to ascertain that, in fact, the delay was unintentional. If petitioner discovers that the delay was intentional, petitioner must so notify the Office". According to the Patent Office's letter to Plaintiff's counsel, it analyzes revival petitions under §1.378 using the standard of §1.137(a).

47. 37 C.F.R. 1.137 states that a revival petition may be filed "[i]f the delay in reply by applicant or patent owner was unintentional" and must include "[a] statement that the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to this section was unintentional." 37 C.F.R. 1.137(a) & (b)(4). MPEP 711(c) states that an applicant or patent owner "is obligated under 37 CFR 11.18 to inquire into the underlying facts and circumstances when a practitioner provides this statement to the Office" and "providing an inappropriate statement in a petition under 37 CFR 1.137(a) to revive an abandoned application may have an adverse effect when attempting to enforce."

Id. at 19-20.

Deposition questions related to the payment of maintenance fees for the '589 patent are relevant to the affirmative defenses and counterclaims as pled. Whether those counterclaims and affirmative defenses as pled meet the standard required for pleading inequitable conduct is not an issue being decided by this Court in this order. For purposes of Fed. R. Civ. P. 26(b)(1), the Court finds that the proposed area of deposition testimony is relevant to Defendants' defenses and counterclaims and proportional to the needs of the case as defense six and counterclaim four mention (1) Plaintiff's failure to timely pay the maintenance fee, (2) the fact that Plaintiff's counsel submitted a declaration stating that the delay in paying the maintenance fees was unintentional, (3) that the '589 patent expired due to a failure to pay maintenance

17CV1118-BEN(BLM)

fees, and (4) the Federal Regulations and Manual of Patent Examining Procedure sections addressing the acceptance of delayed payment of maintenance fees. ECF No. 53 at 10-24. Because the Court finds that the deposition topic is relevant, Defendants' request for an order compelling Mr. Squier to be re-deposed and answer questions regarding the intentional or unintentional failure to pay maintenance fees for the '589 patent is **GRANTED**.

During the deposition of Mr. Squier, ███████████████████████████ ████████████████████████████. This is a proper objection, however, the Federal Rules of Civil Procedure require counsel to state his relevancy objection for the record and then direct his client to respond unless the responses were also privileged.[6] See Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition--must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. . . . A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)"); see also MTC at Exh. G at 6-9 (deposition transcript of Mr. Squier with counsel for Mr. Squier stating "███████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ ██████████████████████████████████"). Because Plaintiff's ████████████ ██████████████████████████████████████████ is the reason a second deposition is needed, Plaintiff is **ORDERED** to pay the costs of Mr. Squier's follow-up deposition. Defendants' request to also have Plaintiff pay the costs of the first deposition is **DENIED**. The second deposition is limited to three hours and to questions relating to Mr. Squier's "█████████ █████████████████████████████████████████████████████████ ████████████████████" MTC at 14.

---

[6] Plaintiff does not allege that all of the questions related to the payment of maintenance fees would have been privileged. See Oppo. at 13-22.

## C.    Assertion of Privilege with Respect to the Revival of the '589 Patent

Defendants argue that as a result of Mr. Squier's representations to the PTO that he "investigated the factual circumstances surrounding the submission of the petitions to revive the '589 patent," any attorney-client privilege has been waived. Id. at 17-18.

Plaintiff contends that it did not waive the attorney-client privilege or work-product doctrine on issues related to the revival of the '589 patent and that, even if it did, any discovery on the subject is irrelevant. Oppo. at 17. Plaintiff notes that Defendants cannot point to a single attorney-client communication that Mr. Squier disclosed to the PTO. Id. at 18-19. Plaintiff further contends that it did not place its attorney-client communications at issue by implication and that if Defendants' argument was to be successful, an attorney would waive the privilege every time he or she applied to the PTO to have revive an expired patent.[7] Id. at 19. Finally, Plaintiff contends that Defendants "have already discovered all non-privileged *facts* underlying the expiration and revival of the '589 Patent." Id. at 22 (emphasis in original).

Defendants reply that Plaintiff knowingly and voluntarily provided confidential attorney-client communications through Mr. Squier's declaration to the PTO certifying that he had investigated the reason for the delay in paying the maintenance fees and that the delay was unintentional. Reply at 7. Defendants also reply that Mr. Squier has only disclosed a portion of the material that he relied on in determining that Plaintiff could file a petition for revival, public assignment records, and that Plaintiff should not be able to rely on its misrepresentations to the PTO while shielding all other communications on the subject matter. Id. Defendants argue that they do not have to identify a specific attorney-client communication or piece of work product to support their position and that the issue in this matter is distinct from the attorney-client privilege issue in the previous action where the Court did not reach the issue of waiver. Id. at 8-9.

On May 22, 2018, Defendants filed a Second Notice of Supplemental Evidence Regarding

---

[7] Plaintiff notes that Defendants did not raise this argument and that it is addressing the issue only out of an abundance of caution. Oppo. at 19, n. 4.

17CV1118-BEN(BLM)

their Motion to Compel.[8]  ECF No. 129.  In the notice, Defendants state that after reviewing Plaintiff's most recent production of documents, they discovered that Plaintiff's statement in their opposition that

> [N]either Whitewater nor its counsel has ever made any express disclosure of an attorney-client communication sufficient to waive the attorney client privilege. … Equally important, this Court has previously rejected Defendants' efforts to discover attorney-client communications on this issue because they have already discovered the non-privileged facts relating to the expiration and revival of the '589 Patent.

is untrue as Defendants found an email string which contradicts the statement ("Exhibit K").  <u>Id.</u> at 2 (quoting Oppo.); <u>see</u> <u>also</u> ECF No. 128 at Exh. K.  Defendants argue that in the email string,

████████████████████████████████████████████████████████

████ ."  <u>Id.</u>  Defendants argue that this is an intentional waiver of privilege and request that the Court "compel Plaintiff to produce discovery being withheld on the basis of privilege that relates to the revival or ownership of the '589 Patent subsequent to the assignment to Surf Park on the basis of waiver."  <u>Id.</u> at 3.

Plaintiff contends that Defendants' filing of supplemental evidence is improper, unethical, and contradicts the Court's Model ESI Order.  ECF No. 131 at 3-5.  Plaintiff states that counsel who inadvertently receive privileged documents are ethically obligated to immediately notify the holder of the privilege that they are in possession of privileged documents, before using said documents in litigation.  <u>Id.</u> at 3-4.  Plaintiff contends that due to the content and recipients of the email, and previous litigation where the content was redacted and found to be privileged by the Court after an *in camera* review, Defendants knew the email at issue contained privileged communications and chose to submit the document to the Court rather than comply with their ethical obligations.  <u>Id.</u> at 5.  Plaintiff further contends that Defendants' position is legally incorrect and notes that they do not cite any law in support of their position that an inadvertent disclosure constitutes waiver of the attorney-client privilege.  <u>Id.</u> at 6.  Plaintiff also notes that the operative Protective Order specifically considers the inadvertent disclosure of privileged

---

[8] This is actually the First Notice of Supplemental Evidence Regarding the Motion to Compel. Defendants filed another Notice of Supplemental Evidence, however, that was in support of their motion to extend the expert report deadline.  ECF No. 123.

material. Id. (citing ECF No. 26 in Case No. 15cv1789-BEN(BLM)). Finally, Plaintiff contends that its disclosure of the email was inadvertent and occurred despite Plaintiff's reasonable efforts to prevents disclosure and that upon discovery of the disclosure, Plaintiff immediately sought to rectify the error.  Id. at 7-9.

Defendants reply that they properly filed the notice of supplemental evidence and provided Plaintiff with an opportunity to "explain and correct the allegedly inadvertent disclosure which would have rendered supplemental briefing unnecessary." ECF No. 132 at 4. Defendants note that they offered to destroy any copies of the privileged email if Plaintiff explained the facts surrounding the disclosure and the steps taken to avoid the disclosure, agreed to go to the Court to ask how to handle withdrawing the supplemental evidence, and produced a privilege log. Id. at 4-5. Defendants informed Plaintiff that they were not waiving their right to challenge the assertion of the privilege. Id. at 5. Defendants also reply that they were not on "clear notice" when they received the email and that it was reasonable for them to infer that the production of the email was deliberate. Id. at 5. Defendants further reply that Plaintiff (1) has not shown that its production was inadvertent, (2) did not take reasonable steps to prevent disclosure, and (3) did not take reasonable steps to rectify the error. Id. at 6-11.

"The attorney-client privilege exists where: '(1) [ ] legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.'" United States v. Richey, 632 F.3d 559, 566 (9th Cir. 2011) (quoting United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) (quotation omitted). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege," and applies "only when necessary to effectuate its limited purpose of encouraging complete disclosure by the client." Fisher v. United States, 425 U.S. 391, 403 (1976); Griffith v. Davis, 161 F.R.D. 687, 694 (C.D. Cal. 1995) (quoting Tornay v. United States, 840 F.2d at 1428). The party asserting

17CV1118-BEN(BLM)

the attorney-client privilege bears the burden to establish that the privilege applies to the requested documents. <u>Griffith</u>, 161 F.R.D. at 694 (quoting <u>Tornay</u>, 840 F.2d at 1426).

"An implied waiver occurs when (1) [t]he party asserting the privilege acts affirmatively (2) to place the privileged communications in issue between the party seeking discovery and itself (3) such that denying access to the communication becomes manifestly unfair to the party seeking discovery." <u>Volterra Semiconductor Corp. v. Primarion, Inc.</u>, 2013 WL 1366037, at *2 (N.D. Cal. Apr. 3, 2013) (quoting <u>Laser Industries, Ltd. v. Reliant Technologies, Inc.</u>, 167 F.R.D. 417, 446 (N.D. Cal., 1996) (quoting <u>Principle Business Enterprises, Inc. v. United States</u>, 210 U.S.P.Q. 26, 27 (Ct.Cl.1980)).

"[A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Nevertheless, those materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." <u>Id.</u> However, even when substantial need for work product has been shown, the court must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

The party asserting the privilege bears the burden to prove that it has not waived the privilege. <u>See</u> <u>Weil v. Inv. Indicators, Research and Mgmt., Inc.</u>, 647 F.2d 18, 25 (9th Cir. 1981).

When the disclosure is made in a federal proceeding . . . and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:

(1) the waiver is intentional;
(2) the disclosed and undisclosed communications or information concern the same subject matter; and
(3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

17CV1118-BEN(BLM)

As an initial matter, Plaintiff's argument that the privilege issue is moot in light of the fact that discovery on the subject is irrelevant fails as the Court has ruled that the issue is relevant pursuant to Fed. R. Civ. P. 26. See supra Section B.

1. Waiver of Attorney-Client Privilege to PTO

Defendants fail to identify a confidential communication or piece of attorney-work product that Mr. Squier disclosed to the PTO. MTC. Defendants appear to argue that Mr. Squier's statement that the failure to pay maintenance fees was unintentional is also an indirect statement that Mr. Squier conducted an inquiry into whether or not the delay was unintentional and communicated with Plaintiff which waives the privilege and puts Mr. Squier's knowledge and intent directly at issue.[9] Id. at 17-18. Defendants further argue that while Mr. Squier declared that he considered public records in gathering the information necessary to provide the PTO with his statement, Mr. Squier also must have had another basis for his declaration which was likely his previously privileged communications with Plaintiff, and he should not be able to hide that basis or contradictory information behind a claim of attorney-client privilege. Id.; see also Reply at 7. Defendants argue that because their theories of inequitable conduct are based in part on Mr. Squier's determination that the delay was unintentional, "all facts and circumstances surrounding his alleged inquiry and subsequent certification have been placed in issue by Plaintiff" and "this is not limited to underlying facts (such as whether Mr. Squier spoke with anyone to inquire, with whom Mr. Squier spoke, when any such discussions were held), but also includes all circumstances such as the substance of those specific discussions—circumstances that Plaintiff alleges are privileged." Reply at 6. Plaintiff contends that Defendants are not entitled to privileged communications and have already received all non-privileged facts relating to the expiration and revival of the '589 patent in the previous case[10] and, that since the

---

[9] Defendants' position is based on the fact that by signing the petitions to revive the '589 patent, Mr. Squier had to certify that he had knowledge of that fact or inquired into the facts and ascertained that the delay was unintentional. MTC at 17-18; see also Reply at 6.

[10] In the previous action, there was a discovery dispute that arose after plaintiffs were ordered to produce documents regarding the maintenance fee payments and revival of the '589 patent

17CV1118-BEN(BLM)

discovery in the prior action applies to this action as well [see ECF No. 80, Joint Case Management Statement], and the attorney-client privilege has not been waived, Defendants' request should be denied. Oppo. at 21.

Defendants cite to Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., 237 F.R.D. 618, 620 (N.D. Cal. 2006), Starsight Telecast, Inc. v. Gemstar Dev. Corp., 158 F.R.D. 650, 654 (N.D. Cal. 1994), and Verigy US, Inc. v. Mayder, 2008 WL 4866290 (N.D. Cal. Nov. 7, 2008) in support of its position. MTC at 18, n.3. In Bd. of Trustees, plaintiffs submitted declarations to the PTO regarding their need to correct the inventors named on the patent application. 237 F.R.D. at 620. Included with those declarations were detailed factual explanations of how the initial error occurred and how it was discovered and investigated. Id. Although plaintiffs argued there was no waiver of privilege, both parties agreed that the declarations contained privileged material. Id. at 624. The Court found that plaintiff waived its privilege with the declarations to correct inventorship. Id. at 628. In Starsight, defendant submitted declarations to the PTO stating that all material prior art had been disclosed to the PTO. 158 F.R.D. at 654. Defendant and his counsel also testified in their depositions as to the difference between the claims of the patent and the prior art as described by plaintiff. Id. The declarations and deposition testimony addressed two key elements of the parties' inequitable conduct claims and the court found that defendants partially waived the attorney-client privilege. Id. In Verigy, plaintiff moved to compel the production of documents supporting statements

---

which the Court found to be relevant to Defendants' laches and equitable estoppel defenses as to the '589 patent. See Docket in 15cv1879-BEN(BLM) at ECF No. 153. Plaintiffs produced the documents, but redacted portions of emails they felt were protected by attorney-client privilege leaving the "relevant, non-privileged, underlying facts regarding the '589 expiration and revival" unredacted. Id. at 1-2, 5. Defendant objected and argued that the unredacted portions of the emails were privileged and that the production constituted a waiver of the attorney-client privilege. Id. at 2. The Court (1) conducted an *in camera* review of the emails, (2) found that Defendants could not argue the information was privileged when it argued in its motion to compel that the facts and circumstances were non-privileged, and (3) determined that there was not subject matter waiver of the privilege and that the redacted portions of the emails constituted privileged communications and/or information that was not responsive to the discovery requests or dispute. Id. at 6-7.

made in defendant's patent counsel's declaration in support of an opposition to a motion for preliminary injunction where the declaration stated that defense counsel met with defendant and a third party to discuss a new business venture and the declaration "reveal[ed] a substantive component of what apparently were privileged communications about a particular matter which is also the subject of Verigy's Request No. 67." Id. at *3. The court found a limited waiver of the attorney-client privilege. Id.

Plaintiff correctly notes that in each of these cases, clients or attorneys clearly disclosed the substance of attorney-client communications. Oppo. at 18. This is distinguishable from the instant matter where Mr. Squier simply declared that "the delay in payment of the maintenance fee to this ['589 patent] was unintentional." MTC at 17-18. It is unclear from Mr. Squier's statement whether he conducted an investigation, whether the investigation included attorney-client privileged communications, and whether the statement is based on such communications. As a result, Defendants have not established that Plaintiff waived the attorney-client privilege.

Defendants rely on Volterra Semiconductor Corp., 2013 WL 1366037, at *2 to argue that they "were not required to point to a specific attorney-client communication or piece of work product supporting their waiver argument." Reply at 8. In Volterra Semiconductor Corp., the Court found incorrect defendant's suggestion that "a privileged communication is only put 'in issue' if its contents are specifically identified or quoted." Id. In reaching that decision, the Court cited to Claffey v. River Oaks Hyundai, 486 F. Supp. 2d 776 (N.D. Ill., 2007), which found that defendants could not create an impression that they relied on the advice of counsel and still maintain their attorney-client privilege and held that "if the defendant "actually relie[d] on any documents or other evidence that would tend to suggest that its procedures included consultation with counsel, it [would] be deemed to have waived its attorney-client privilege." Id. at 778. Here, Defendants have neither pointed to a specific privileged communication nor sufficiently shown that Mr. Squier's declaration creates the impression that his actions were guided by the results of privileged conversations. Defendants contend that Mr. Squier's declaration "implie[s] that he had communicated with the petitioner and investigated the cause of the delay and, based on that investigation, personally determined that the delay was, in fact,

19

unintentional." Reply at 8 (emphasis added). The implication is not a sufficient basis for finding a waiver of the attorney-client privilege or that Mr. Squier placed the privileged communications at issue. <u>Volterra Semiconductor Corp.</u>, 2013 WL 1366037, at *2 ("An implied waiver occurs when (1) [t]he party asserting the privilege acts affirmatively (2) to place the privileged communications in issue between the party seeking discovery and itself (3) such that denying access to the communication becomes manifestly unfair to the party seeking discovery."); <u>see also</u> <u>Gen. Elec. Co. v. Mitsubishi Heavy Indus. Ltd.</u>, 2013 WL 12226037, at *3 (N.D. Tex. Apr. 5, 2013) ("[w]aiver is not likely to be found when the statements alleged to constitute waiver do not disclose the contents of a specific communication between client and attorney.") (quoting <u>Genentech, Inc. v. Insmed Inc.</u>, 236 F.R.D. 466, 469 (N.D. Cal. 2006)).

For the reasons set forth above, the Court **DENIES WITHOUT PREJUDICE** Defendants' motion and finds that Plaintiff's attorney-client privilege has not been waived as to the revival of the '589 patent and Mr. Squier's basis for his declaration to the PTO.

    2.   <u>Waiver of Attorney-Client Privilege with Production of Exhibit K</u>

When an inadvertent disclosure is

> made in a federal proceeding or to a federal office or agency, the disclosure does not operate as a waiver in a federal or state proceeding if: (1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).

Fed. R. Evid. 502(b). The party claiming the privilege has the burden of proving that they satisfy the requirements of Fed. R. Evid. 502(b). <u>AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.</u>, 2011 WL 6328708, at *3 (E.D. Cal. Dec. 15, 2011) (citing <u>Callan v. Christian Audigier, Inc.</u>, 263 F.R.D. 564, 565–66 (C.D. Cal. 2009)).

Plaintiff has provided evidence that the disclosure of the email in Exhibit K was inadvertent. Counsel submitted a declaration stating that Plaintiff "had no intent to produce any attorney-client communications. Any production of attorney-client communications was inadvertent." ECF No. 131-1, Supplemental Declaration of Roger L. Scott in Support of Plaintiff's Opposition to Defendants' Motion to Compel ("Supp. Scott Decl."). Counsel further explains the

17CV1118-BEN(BLM)

efforts Plaintiff engaged in to prevent the inadvertent disclosure, including creating a "presumptively privileged" set of documents that contained key words that may have indicated privilege, manually reviewing those documents for privilege, and random samplings of the documents for quality control. Id. at 2. Counsel also declares that within two hours of discovering the inadvertent disclosure, Plaintiff wrote to Defendants to inform them of the inadvertent disclosure and requested that Defendants return, delete or destroy the document. Id. at 3, Exh. 10. Defendants argue that Plaintiff should have been aware of the allegedly inadvertent disclosure on May 18, 2018 when they produced their expert report to Plaintiff because Defendants provided the document to their expert. ECF No. 132 at 11. However, the Court notes that in the Joint Case Management Statement, that parties stated that they "have agreed to adopt the protective order from the FSL Action" which states that

> [t]he parties agree that a party who produces any privileged document without intending to waive the claim of privilege associated with such document may, within ten (10) days after the producing party actually discovers that such inadvertent production occurred, notify the other party that such document was inadvertently produced and should have been withheld as privileged. Once the producing party provides such notice to the requesting party, the requesting party must promptly return the specified document and any copies thereof. By complying with this obligation, the requesting party does not waive any right it has to challenge the assertion of privilege and request an order of the court denying such privilege.

ECF No. 23 at 11 from 15CV1879-BEN(BLM); see also ECF No. 80 at 15. Therefore, even using the May 18, 2018 date, Plaintiff was well within the ten days agreed upon by the parties for reporting inadvertent disclosures.

The Court **DENIES** Defendants' request to find that the attorney-client privilege was waived by the inadvertent production of Exhibit K.

### D. <u>Modification of the Court's Scheduling Order</u>

Defendants request that the Court continue the deadline to complete discovery from April 27, 2018 to June 1, 2018 "so that Defendants may complete discovery after Plaintiff has produced discovery in response to those Requests." MTC at 20. Plaintiff contends that Defendants have failed to provide good cause for their request and that Defendants lack the

evidence of due diligence required for such a request. Oppo. at 6. Plaintiff requests that if the Court grants Defendants' motion, any extension be limited to completing the discovery deadline to conducting the discovery being compelled and nothing more. Id. at 27.

Once a Rule 16 scheduling order is issued, dates set forth therein may be modified only "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Rule 16 good cause standard focuses on the "reasonable diligence" of the moving party. Noyes v. Kelly Servs., 488 F.3d 1163, 1174 n.6 (9th Cir. 2007); Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294-95 (9th Cir. 2000) (stating Rule 16(b) scheduling order may be modified for "good cause" based primarily on diligence of moving party). Essentially, "the focus of the inquiry is upon the moving party's reasons for seeking modification." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). However, a court also may consider the "existence or degree of prejudice to the party opposing the modification . . . ." Id.

As an initial matter, the Court notes that on April 26, 2018, the parties filed a Joint Motion to Modify Scheduling Order To Allow for Completion of Fact Discovery. ECF No. 106. The parties sought to continue the deadline for the limited purposes of

> (i) the production and review of ESI in response to previously propounded ESI requests, including any disputes regarding the sufficiency of the parties' respective productions, (ii) the depositions of Geoff Chutter, Farzin Ferdosi, Tim Gantz, and Arthur Berry (subject to any objections that may be raised), (iii) any discovery that Court deems permitted based on Defendants' pending motion to compel (ECF No. 105), and (iv) Defendants' efforts to obtain discovery from non-parties Tan Xu Teng and Terry Goh pursuant to the Letter of Request to the Supreme Court of Singapore (ECF No. 84).

Id. at 2. On April 27, 2018, the Court granted the parties' motion and continued the fact discovery deadline to May 25, 2018 for the limited purposes described above. ECF No. 107. In their reply, Defendants acknowledge this extension and request that "a further extension be triggered off the Court's order granting Defendants' motion to compel." Reply at 9, n.5.

Defendants' motion is **GRANTED IN PART**. The May 25, 2018 completion of fact discovery deadline is hereby continued to **July 20, 2018**. The **July 20, 2018** deadline only applies to discovery that has already been propounded and that is being compelled in this order. No new or additional discovery is permitted.

17CV1118-BEN(BLM)

### E.   <u>Sanctions</u>

Defendants request "an award of attorney's fees because Plaintiff cannot show that its opposition is substantially justified." MTC at 20-21.   Defendants also request that Plaintiff pay their fees and costs for the deposition of Mr. Squier and any future deposition of Mr. Squier that may be ordered.  <u>Id.</u> at 21.

Plaintiff contends that Defendants' motion should be denied in its entirety and that if it is not, there can be no real dispute that "reasonable people could differ" about the issues at hand and the request for sanctions should be denied.  Oppo. at 28.

Defendants reply that sanctions are appropriate as "this is not a situation where 'reasonable people could differ' about the issues at hand." Reply at 11.  Defendants note that Plaintiff "completely ignor[ed] the Court's prior ruling on ESI discovery and its applicability to the instant document production dispute and that Plaintiff is not telling the whole story with respect to Defendants' production.  <u>Id.</u> (emphasis omitted).

If a motion to compel discovery is granted in part and denied in part, Federal Rule of Civil Procedure 37(a)(5)(C) permits a court to "after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  "Discovery conduct is substantially justified if it is a response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." <u>Izzo v. Wal-Mart Stores, Inc.</u>, 2016 WL 409694, at *7 (D. Nev. Feb. 2, 2016) (citing <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988)).

Plaintiff's position is in an appropriate response to a genuine issue of dispute and, especially in light of the miscommunication between the parties and the Court, reasonable people could differ about the requested RFPs as well as the scope of the deposition topics posed to Mr. Squier.  Accordingly, Defendants' request for additional monetary sanctions is **DENIED**. The Court's decision requiring Plaintiff to pay the cost of Mr. Squier's follow-up deposition reflects the Court's recognition of Plaintiff's failure to permit Mr. Squier to continue to be deposed on the contested subject matter after properly noting its relevancy objection on the record in accordance with Fed. R. Civ. P. 30(c)(2).  No further sanctions are required.

### <u>CONCLUSION</u>

17CV1118-BEN(BLM)

1    Defendants' request to compel Plaintiff to respond to

2    (1)  Defendants' First Set of RFPs Nos. 1-18 is **GRANTED**.

3    (2) deposition questions posed to Mr. Erikson Squier regarding "his investigation into

4 whether the failure to pay maintenance fees was actually unintentional as Mr. Squier represented

5 to the PTO" is **GRANTED**.

6    (3) "discovery relating to the revival of the '589 patent that has been withheld on grounds

7 of attorney-client privilege or attorney work product, as those privileges have been waived" is

8 **DENIED**.

9    Defendants' request that the discovery deadline be continued from April 27, 2018 to June

10 1, 2018 is **GRANTED IN PART**.  The discovery deadline is continue to **July 20, 2018**.

11    Defendants' request for

12    (1) fees and expenses related to the first deposition of Mr. Squier is **DENIED**.

13    (2) the costs of the follow-up deposition of Mr. Squier as permitted by this Order is

14 **GRANTED**.

15    (3) sanctions for the costs of bringing this motion is **DENIED**.

16    **IT IS SO ORDERED**.

17 Dated:  6/8/2018

Hon. Barbara L. Major
United States Magistrate Judge

18
19
20
21
22
23
24
25
26
27
28

24

17CV1118-BEN(BLM)