UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEWATER WEST INDUSTRIES, LTD., a Canadian corporation,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC SURF DESIGNS, INC., a Delaware corporation, and FLOW SERVICES, a California corporation,<br><br>Defendants. | Case No.: 3:17-cv-01118<br><br>**ORDER DENYING RENEWED MOTION FOR PRELIMINARY INJUNCTION**<br>**(Dkt. No. 62)** |

Plaintiff Whitewater West Industries, Ltd. ("Plaintiff" or "Whitewater") renews it motion for a preliminary injunction, pursuant to 35 U.S.C. § 283 and Federal Rule of Civil Procedure 65(a), on the ground that Defendants manufacture, sell, offer for sale, use, import, or supply in or from the United States certain surfing attractions and related components that infringe Whitewater's exclusive patent, U.S. Patent No. 6,491,589 (the "'589 Patent"). Defendants Pacific Surf Designs ("PSD") and Flow Services, Inc. ("Flow") oppose the motion. Whitewater's renewed motion is denied.

## BACKGROUND

As mentioned previously, the '589 Patent, entitled "Mobile Water Ride Having Sluice Slide-Over Cover," generally relates to an artificial surfing water ride usually

1

constructed for entertainment, often in a water park setting. The patent claims sheet-wave technology, in which a thin flow of water moves over a stationary surface at a high velocity, recreating something like ocean waves in an enclosed system that riders may surf. The '589 Patent improves on prior art by reducing the footprint of the ride through shortening the transition surface between the water-injecting components and the lower end of the ride surface. In the absence of an extended transition surface, the Patent includes a cover over the water-injecting components to prevent rider contact. The smaller size of the attraction reduces manufacturing and shipping costs, allowing the ride to be installed in spaces previously not possible, while improving rider performance and safety. The '589 Patent is embodied in the "FlowRider" line of products sold by Whitewater and its subsidiary and licensee.

As mentioned previously, the '589 Patent has 57 total claims. Whitewater still alleges that Defendants infringe at least claims 1, 3, 13, 15-17, 24-27, 29-38, 41-43, 50, and 54-55 (the "Asserted Claims"). For purposes of this motion, Whitewater uses independent claim 17 to establish that Defendants literally infringe at least one of the Asserted Claims. Claim 17 recites:

> 17. A cover for a water ride sluice gate from which a flow of water jets out, comprising a contoured flexible pad, a connector configured to removably affix the cover to said sluice gate, a flexible tongue at a downstream end of the cover, the tongue configured to extend over the water that jets from said sluice gate, and a generally flat portion at an upstream end of the cover, said tongue being urged downward against the flow of water jetting from said sluice gate.

('589 Patent, Claim 17).

PSD is Whitewater's competitor. Defendants' allegedly infringing products include the "ProFlow" line of surfing attractions, the Supertube attraction, and refurbishment or replacement of the patented features existing in the FlowRider surfing attractions. Whitewater's previous motion for a preliminary injunction was denied without prejudice. Whitewater now seeks to renew its motion by providing evidence of causal nexus -- evidence that was previously insufficient.

## LEGAL STANDARD

The legal standard has not changed. "A preliminary injunction is an extraordinary and drastic remedy." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (quoting *Munaf v. Geren,* 553 U.S. 674, 689 (2008)). A plaintiff seeking a preliminary injunction must establish that he is: (1) likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (applying the four factor test to patent disputes). The *Winter* factors are considered in conjunction with the Ninth Circuit's "sliding scale" approach, which provides that "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Vanguard Outdoor, LLC v. City of Los Angeles,* 648 F.3d 737, 739 (9th Cir. 2011).

## DISCUSSION

Previously, the Court found that a preliminary injunction was unwarranted because Plaintiff could not establish a necessary requirement to show irreparable harm: *i.e.*, that there is *a causal nexus* between Whitewater's harm and Defendants' infringing product. "A party seeking a preliminary injunction must establish that it is likely to suffer irreparable harm if the preliminary injunction is not granted and there is *a causal nexus* between the alleged infringement and the alleged harm." *Metalcraft*, 848 F.3d at 1368 (citing *Apple, Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1360 (Fed. Cir. 2013) ("*Apple III*")) (emphasis added). The causal nexus requirement requires "proof that the infringement causes the harm." *Apple, Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 639 (Fed. Cir. 2015) ("*Apple IV*"). This requirement "ensures that an injunction is only entered against a defendant on account of a harm resulting from the defendant's wrongful conduct, not some other reason." *Id.* at 640.

To satisfy the causal nexus requirement, a patentee must show that there is "some connection" between the patented feature and the demand for the infringing product. *Id.* at 642. In other words, the patentee must present evidence that the patented feature "impact[s] consumers' decision to purchase the accused" product. *Id.* A patentee may satisfy the requirement by showing "that the infringing feature drives consumer demand for the accused product." *Apple, Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1375 (Fed. Cir. 2012) ("*Apple II*"). However, the patentee need not show that the infringing feature is the exclusive or predominant reason why consumers purchased the accused product. *Apple IV*, 809 F.3d at 642, 644. Rather, "it is enough" for the patentee to show that the infringing feature is "related to infringement" and is "important to customers when" examining their choices. *Id.* For instance, in *Apple IV*, the Federal Circuit held that Apple demonstrated irreparable harm where it presented evidence that the patented feature was one of several features that caused consumers to make their purchasing decisions.

Previously, Whitewater had not presented any evidence that the patented feature influences consumer demand for Defendants' infringing products. Whitewater had presented evidence that PSD advertises that its products contain a sluice gate cover. However, Whitewater had not put forth any evidence that consumers value the cover when making their purchasing decisions. There was no evidence that consumers would not have purchased Defendants' products if they lacked the cover claimed by the '589 Patent. Nor was there any evidence about consumers' preferences or desire for the sluice gate cover. Consequently, Whitewater had not demonstrated that the patented feature has caused and is causing harm.

Now, Whitewater offers the testimony of two witnesses who are consumers as evidence of a causal nexus. *See* Declarations of Tim Gantz and Arthur Berry, III. Whitewater also offers as evidence copies of emails between other persons not offered under the penalties of perjury and without much context. *See* Exhibts 66-70 to

declaration of Plaintiff's counsel Leanna Costantini, Esq. This evidence is also insufficient to support a preliminary injunction.

The two witness declarations are virtually identical. In the penultimate paragraph (¶3) each of the six sentences are identical, including an unusual phrase ("rider throughput") and a grammatical error ("it is desirable to maintain a [sic] small a footprint as possible"). While the similarities do not necessarily mean that the declarations lack truthfulness, it does mean that at least one of the witnesses is not testifying in his own words. More importantly, however, both witnesses declare that they are decision-makers in purchasing water park attractions for their respective businesses. They both declare that they decided to purchase the Plaintiff's FlowRider product. This proves the opposite of a causal nexus. It proves that they decided to not purchase the allegedly infringing product sold by the Defendants. More convincing evidence would be declarations from purchasers who explained that the sluice gate cover is important and because Defendants' product has it, they decided to buy the Defendants' product instead of the Plaintiff's FlowRider. This type of evidence is absent.

Plaintiff also offers evidence of the number of FlowRider installations extant as compared to other those of other makers and suggests that an inference of a causal nexus may be drawn. Perhaps, but the inference would be based on too much speculation to warrant a preliminary injunction.

## CONCLUSION

Because evidence of a causal nexus remains insubstantial, Plaintiff's renewed motion for a preliminary injunction is **DENIED with prejudice**.

**IT IS SO ORDERED.**

Dated: September 26, 2018

_____
Hon. Roger T. Benitez
United States District Judge

5

3:17-cv-01118