1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TROUTMAN SANDERS LLP**
Charanjit Brahma, CA Bar No. 204771
charanjit.brahma@troutmansanders.com
Mark C. Mao, CA Bar No. 236165
mark.mao@troutmansanders.com
580 California Street
Suite 1100
San Francisco, CA 94104
Telephone: 415.477.5700
Facsimile: 415.477.5710

Attorneys for Defendants Pacific Surf
Designs, Inc. and Flow Services, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

WHITEWATER WEST
INDUSTRIES, LTD., a Canadian
corporation,

               Plaintiff,

v.

PACIFIC SURF DESIGNS, INC., a
Delaware corporation, and
FLOW SERVICES, INC., a
Delaware Corporation

               Defendants.

Case No. 17-cv-1118

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
DEFENDANTS' *DAUBERT*
MOTION AND MOTION *IN
LIMINE* TO EXCLUDE EXPERT
TESTIMONY AND EVIDENCE**

Date:    December 10, 2018
Time:    10:30 A.M.
Ctrm:    5A
Judge:  Hon. Roger T. Benitez

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ......................................................................................1

II.     LEGAL STANDARD ...............................................................................1

III.    ARGUMENT ...........................................................................................3

A.      Plaintiff's Experts Should Be Barred From Offering Evidence of a Causal Nexus Between PSD's Alleged Infringement and Likely Irreparable Harm to Plaintiff. ........................................................................................3

B.      Plaintiff's Experts Should Be Precluded From Offering Opinions on PSD's Ability to Design Around the '589 Patent. ...................................................6

C.      Dr. Stevick's Opinion on Infringement Pursuant to § 271(f) Should Be Excluded As Unreliable. .........................................................................9

D.      Dr. Stevick's Claim Construction-Based Opinions Are Unreliable and Untestable and Therefore Should Be Excluded. ........................................11

E.      Dr. Vigil's Opinions Are Unreliable and Should Be Excluded to the Extent He Parrots Undisclosed Witnesses' Opinions and Arrived at a Lump Sum Royalty Without Evidentiary Support. ..........................................................14

1.  Dr. Vigil's Wholesale Adoption of Undisclosed Witnesses' Opinions Must Be Excluded. ...........................................................................14

2.  Dr. Vigil's Lump Sum Royalty Analysis Based on Portfolio Licenses Is Unreliable and Unhelpful to a Jury. .....................................................16

F.      Mr. Godici's Opinions Speculating About the Content of Communications Plaintiff Deliberately Withheld as Privileged Are Unreliable and Should Be Excluded. .........................................................................................22

IV.     CONCLUSION ........................................................................................25

TROUTMAN SANDERS LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA  94104

36757625

i

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Am. Cyanamid Co. v. U.S. Surgical Corp.*,
    833 F. Supp. 92 (D. Conn. 1992) ....................................................................... 13

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014) ....................................................................... 21

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 11-CV-01846-LHK, 2016 U.S. Dist. LEXIS 17596 (N.D. Cal.
    Feb. 10, 2016) .................................................................................................... 8

*Apple, Inc. v. Samsung Elecs. Co.*,
    695 F.3d 1370 (Fed. Cir. 2012) ................................................................. 3, 21

*Bicon, Inc. v. Straumann Co.*,
    441 F.3d 945 ..................................................................................................... 12

*Caruso v. Bon Secours Charity Health Sys.*, No. 14 CV 4447 (VB),
    2016 U.S. Dist. LEXIS 104067, at *15-16 (S.D.N.Y. Aug. 5, 2016) ............... 25

*Chevron Corp. v. Pennzoil Co.*,
    974 F.2d 1156 (9th Cir. 1992) ......................................................................... 23

*Chicago Mercantile Exch., Inc. v. Tech Research Grp.*,
    LLC, 782 F. Supp. 2d 667 (N.D. Ill. 2011) ..................................................... 14

*Cholakyan v. Mercedes-Benz USA, LLC*,
    281 F.R.D. 534 (C.D. Cal. 2012) ..................................................................... 15

*Claar v. Burlington Northern R. Co.*,
    29 F.3d 499 (9th Cir. 1994) ......................................................................... 2, 11

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) ..................................................................... 15

*Cooper v. Brown*,
    510 F.3d 870 (9th Cir. 2007) ....................................................................... 2, 11

Troutman Sanders
LLP
580 California Street,
Suite 1100
San Francisco, CA 94104

36757625      ii      CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

*Dataquill Ltd. v. High Tech Computer Corp.*,
  No. 08cv543 - IEG (BGS), 2012 U.S. Dist. LEXIS 53164 (S.D.
  Cal. Apr. 16, 2012) ...................................................................................... 20

*Daubert v. Merrell Dow Pharms. Inc.*,
  509 U.S. 579 (1993) ....................................................................... 1, 2, 14, 25

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013) ................................................................... 14

*Ericsson, Inc. v. D-Link Sys.*,
  773 F.3d 1201 (Fed. Cir. 2014) ................................................................... 20

*Fosmire v. Progressive Max Ins. Co.*,
  277 F.R.D. 625 (W.D. Wash. 2011) ............................................................. 16

*Fox v. California Sierra Financial Services*,
  120 F.R.D. 520 (N.D. Cal. 1988) ................................................................. 24

*Golden Bridge Tech. v. Apple Inc.*,
  No. 5:12-cv-04882-PSG, 2014 U.S. Dist. LEXIS 76339 (N.D. Cal.
  June 1, 2014)................................................................................................. 22

*Herrera v. Eli Lilly & Co.*,
  No. 2:13-cv-02702-SVW-MAN, 2015 U.S. Dist. LEXIS 187145
  (C.D. Cal. Aug. 3, 2015) .............................................................................. 24

*Interval Licensing LLC v. AOL, Inc.*,
  766 F.3d 1364 (Fed. Cir. 2014) ................................................................... 13

*Jenkins v. Bartlett*,
  487 F. 3d 482 (7th Cir. 2007) ........................................................................ 4

*United States ex rel. Jordan v. Northrop Grumman Corp.*,
  No. CV 95-2985 ABC (Ex), 2003 U.S. Dist. LEXIS 29055 (C.D.
  Cal. Feb. 24, 2003) ...................................................................................... 24

*Kumho Tire Co. Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ........................................................................................ 2

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ....................................................................... 17

Troutman Sanders
LLP
580 California Street,
Suite 1100
San Francisco, CA 94104

36757625

iii

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   No. 2:06-CV-348-TJW-CE, 2011 U.S. Dist. LEXIS 42590 (E.D.
   Tex. Jan. 7, 2011) ......................................................................................... 18

*Lewert v. Boiron, Inc.*,
   212 F. Supp. 3d 917 (C.D. Cal. 2016) ........................................................... 4

*Liquid Dynamics Corp. v. Vaughan Co., Inc.*,
   449 F.3d 1209 (Fed.Cir.2006) ...................................................................... 14

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) ........................................................ 17, 19, 20

*Lust By & Through Lust v. Merrill Dow Pharms., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ............................................................................ 2

*Martinez v. Davis*,
   No. CV 05-5684 ABC, 2011 WL 486255 (C.D. Cal. Feb. 4, 2011) .................. 11

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005) .................................................................... 12

*Microsoft Corp. v. AT&T*,
   550 U.S. 437 (2007) ...................................................................................... 10

*Multimedia Patent Trust v. Apple Inc.*,
   No. 10-CV-2618-H (KSC), 2012 U.S. Dist. LEXIS 165928 (S.D.
   Cal. Nov. 20, 2012) ................................................................................. 17, 18

*In re Omeprazole Patent Litig.*,
   483 F.3d 1364 (Fed. Cir. 2007) .................................................................... 14

*Oracle Am., Inc. v. Google Inc.*,
   No. C 10-03561 WHA, 2016 U.S. Dist. LEXIS 58300 (N.D. Cal.
   May 2, 2016) ..................................................................................................... 9

*Rambus Inc. v. Hynix Semiconductor, Inc.*,
   254 F.R.D. 597 (N.D. Cal. 2008) ................................................................... 8

*ResQNet.com, Inc. v. Lansa, Inc.*,
   594 F.3d 860 (Fed. Cir. 2010) ...................................................................... 19

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625                                iv                        CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

*San Diego Comic Convention v. Dan Farr Prods.*,
    No. 14-cv-1865-AJB-JMA, 2018 U.S. Dist. LEXIS 143802 (S.D.
    Cal. Aug. 23, 2018) .......................................................................................... 16

*Shalaby v. Irwin Indus. Toll Co.*,
    No. 07CV2107-MMA (BLM), 2009 U.S. Dist. LEXIS 129812
    (S.D. Cal. July 28, 2009) ..................................................................................... 7

*Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics,*
    *Inc.*,
    637 F.3d 1269 (Fed. Cir. 2011) ............................................................................ 7

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
    775 F.2d 1107 (Fed. Cir. 1985) .......................................................................... 13

*Sterner v. U.S. Drug Enforcement Agency*,
    467 F. Supp. 2d 1017 (S.D. Cal. 2006) ................................................................ 2

*TV Interactive Data Corp. v. Sony Corp.*,
    929 F. Supp. 2d 1006 (N.D. Cal. 2013) .............................................................. 19

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) ............................................................... 17, 20, 21

*United States v. Bighead*,
    128 F.3d 1329 (9th Cir.1997) ............................................................................. 10

*United States v. Redlightning*,
    624 F.3d 1090 (9th Cir. 2010) ...................................................................... 16, 25

*White v. BNSF Ry. Co.*,
    726 Fed. Appx. 603 (9th Cir. 2018) ................................................................... 25

*Wolkowitz v. Lerner*,
    No. SA CV 07-777-CAS, 2008 U.S. Dist. LEXIS 34698 (C.D. Cal.
    Apr. 21, 2008) .................................................................................................. 2, 15

**Statutes and Other Authorities**

35 U.S.C. § 271(f) ....................................................................................... 1, 9, 10

Fed. R. Civ. P. 26(a)(2) .................................................................................... 2, 4

Fed. R. of Evid. 403 .............................................................................................. 1

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625                                      v                         CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

Fed. R. of Evid. 702 ................................................................................ 2, 14

Fed. R. of Evid. 703 ................................................................................... 15

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA  94104

36757625

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

## I.   INTRODUCTION

Expert testimony should only be allowed if it was properly disclosed, is relevant, and is the product of reliable principles and methods. Plaintiff's expert testimony is not. Plaintiff's expert opinions suffer from multiple flaws that warrant their exclusion by this Court in its "gatekeeper" role under *Daubert* and as a matter of fairness based on failure to comply with Rule 26. Defendants Pacific Surf Designs, Inc. and Flow Services, Inc. (collectively "PSD") therefore move to exclude  Plaintiff's expert opinions as to a host of topics. One—Plaintiff's failure to present proper evidence of a causal nexus to support their claim for injunctive relief—is not new to this Court, which has twice rejected Plaintiff's motions for preliminary injunctive relief for lacking such evidence. The other flaws infect almost every aspect of the expert evidence Plaintiff has offered in this case:

- Plaintiff's experts' belated and undisclosed opinions on PSD's ability to design around the '589 patent,
- Plaintiff's technical expert's failure to properly analyze or disclose the basis for his opinions regarding infringement under Section 271(f),
- Plaintiff's technical expert's failure to properly disclose or apply the claim constructions upon which his infringement and validity opinions are based,
- Plaintiff's damages expert's parroting of the opinions of others and arrival at a form of royalty (lump sum) that is unsupported by any evidence, and
- Plaintiff's inequitable conduct expert's speculation about the content of communications that have been withheld as privileged.

PSD respectfully requests that this improper evidence be excluded to avoid confusing and prejudicing the jury and to narrow, or potentially resolve, the case.

## II.   LEGAL STANDARD

Evidence should be excluded when "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. of Evid. 403. Expert testimony is unreliable if the expert merely "serve[s] as a conduit for the opinions of undisclosed experts" and should be excluded for

Troutman Sanders
LLP
580 California Street,
Suite 1100
San Francisco, CA  94104

36757625                              1                        CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

violating Rule 26(a)(2). *See Wolkowitz v. Lerner*, No. SA CV 07-777-CAS, 2008 U.S. Dist. LEXIS 34698, at *10 (C.D. Cal. Apr. 21, 2008). With respect to expert testimony, the trial judge acts as the gatekeeper by applying Federal Rule of Evidence 702 to ensure that specialized and technical evidence is "not only relevant, but reliable." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 589 & n.7 (1993); *accord Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (*Daubert* imposes a special "gatekeeping obligation" on trial judge). Thus, a witness "qualified as an expert by knowledge, skill, experience, training, or education" may only offer opinion testimony if:

  a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

  b) the testimony is based upon sufficient facts or data;

  c) the testimony is the product of reliable principles and methods; and

  d) the expert witness has reliably applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 579; *Sterner v. U.S. Drug Enforcement Agency*, 467 F. Supp. 2d 1017, 1033 (S.D. Cal. 2006) (expert testimony is only admissible if it is "useful" to trier of fact and "reliable").

The party proffering expert testimony must prove, by a preponderance of the evidence, that the expert's testimony meets the requirements of Rule 702 and *Daubert*. *See Cooper v. Brown*, 510 F.3d 870, 880 (9th Cir. 2007); *Lust By & Through Lust v. Merrill Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). Ultimately, expert testimony must be "the product of reliable principles and methods . . . not mere subjective beliefs or unsupported speculation" to be admissible. *Claar v. Burlington Northern R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994).

/ /

/ /

TROUTMAN SANDERS LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625

2

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

## III.   ARGUMENT

### A.   Plaintiff's Experts Should Be Barred From Offering Evidence of a Causal Nexus Between PSD's Alleged Infringement and Likely Irreparable Harm to Plaintiff.

Plaintiff has twice previously sought a preliminary injunction against Defendants, and this Court denied both motions. D48; D182 (citing *Apple, Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1375 (Fed. Cir. 2012) for the required showing "that the infringing feature drives consumer demand for the accused product"). In its first swing, Plaintiff failed to provide evidence that "consumers value the cover when making their purchasing decisions," and specifically either "evidence that consumers would not have purchased Defendants' products if they lacked the cover claimed by the '589 Patent" or "evidence about consumers' preferences or desire for the sluice gate cover." D48 at 4-5. Plaintiff's second swing was no better, as its evidence of ride sales provided only a "speculative" inference about the patented invention driving demand and the declarations of Plaintiff's customers only reinforced that those customers chose not to buy products with the allegedly infringing nozzle covers. D182 at 4. After months of discovery, Plaintiff's evidence of causal nexus still misses the mark, as neither of its experts can point to any link between PSD's allegedly infringing ride sales and incorporation of the nozzle cover feature that is supposedly patented.

Plaintiff's technical expert, Dr. Stevick, testified that he decided not to analyze why PSD's customers purchased their rides, because that topic was "outside the scope" of his report. Ex. A[1], Stevick Tr. 252:11-23 (objections omitted). Dr. Stevick's analysis of the advantages of the patented invention was limited to adopting without analysis self-serving statements in the '589 patent about the purported advantages of the patented invention. *Id.* at 253:6-254:5. During his deposition, Dr. Stevick speculated that, ███████████████████

---

[1] Exhibits A–J are attached to the accompanying Declaration of Christopher M. Franich ("Franich Decl.").

TROUTMAN SANDERS LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA  94104

36757625                                   3                        CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

1 ██████████████████████████████████████████████████

2 ████████████████████. *Id.* But, any opinion from Dr. Stevick regarding the basis for

3 customer demand for PSD's rides is unreliable because Dr. Stevick never spoke to

4 any of PSD's customers and has no personal experience with purchasing decisions

5 in this industry. *Id.* at 252:11-23, 253:16-254:5; *Lewert v. Boiron, Inc.*, 212 F.

6 Supp. 3d 917, 936 (C.D. Cal. 2016) (excluding expert testimony of expert who

7 admitted in deposition to have "no expertise in [the relevant field] and ha[d] no

8 ability to judge the quality of [clinical studies at issue]"). Nor did Dr. Stevick

9 analyze whether customers chose not to buy prior art rides because they suffered

10 from the problems that the '589 patent claims its invention cured. Ex. A, Stevick

11 Tr. 256:5-13 (when asked if Dr. Stevick had seen any evidence suggesting

12 Flowrider customers wanted a larger ride surface, Dr. Stevick stated that "it's

13 outside the scope."); *see also id.* at 252:25-253:5 (when asked whether Dr. Stevick

14 reviewed any evidence why any customers purchased the patented rides, Dr.

15 Stevick stated that "all I have are the benefits described in the '589 patent. More

16 ride, less footprint"). As a result, Dr. Stevick's speculation that the nozzle cover in

17 PSD's rides drives customer demand is unreliable and should be excluded.

18      Moreover, Plaintiff's damages expert, Dr. Vigil, did not offer any opinion on

19 causal nexus in his expert report (Ex. B)—indeed, the word "nexus" appears

20 nowhere in that 138 page report (other than in Dr. Vigil's CV attached as an

21 exhibit. *See* Ex. C, Vigil Tr. at 159:4-6. Nevertheless, at his deposition, Dr. Vigil

22 offered for the first time his opinion that ████████████████████████████

23 ████████████████████████████████████████

24 ████████████████████████████████████████████

25 ████████████████████████████████████. Ex. C at 30:13-31:18.

26      Under Rule 26(a)(2), Dr. Vigil's nexus opinion was not properly disclosed,

27 and that alone warrants its exclusion. *Jenkins v. Bartlett*, 487 F. 3d 482, 487 (7th

28 Cir. 2007); Fed. R. Civ. P. 26(a)(2)(B)(i). But Dr. Vigil's belated nexus opinion is

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625                         4                    CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

1   also unreliable because it relied exclusively on the opinions in Dr. Stevick's report

2   that merely adopted, without analysis, the self-serving statements in the '589 patent

3   about the purported advantages of the patented invention. Ex. C at 161:8-163:21.

4   Dr. Vigil admitted that he is not qualified to independently evaluate whether the

5   patented invention provides the claimed technical advantages. *Id.* at 116:11-14 ("As

6   an economist, I'm not and would not provide a technical opinion regarding what the

7   benefits are that were enabled by the '589 patent or any patent.").

8         The other portion of Dr. Vigil's nexus opinion relating to consumer demand

9   has nothing to do with PSD's customers and is based on evidence this Court has

10  already rejected or that was manufactured by Plaintiff ***after the litigation began***,

11  specifically a 2015 email[2] and the post-litigation declarations of Mr. Arthur Berry,

12  III (D62-3) and Mr. Tim Gantz (D62-2) submitted with Whitewater's renewed

13  motion for a preliminary injunction. Ex. C at 155:20-156:14, 135:1-136:15, 137:9-

14  138:15. These are hardly the types of materials that an expert would reasonably rely

15  upon to reach opinions on the issue of causal nexus. As Dr. Vigil himself

16  acknowledged (*id.* at 155:20-156:18), when this Court denied Plaintiff's renewed

17  motion for preliminary injunction, it found that the "virtually identical" Berry and

18  Gantz declarations actually "prove[d] the opposite of a causal nexus," because they

19  "prove[d] that [customers] decided to not purchase the allegedly infringing product

20  sold by the Defendants." D182, 5:3-12. Dr. Vigil also relied on a post-litigation

21  email[3] from Andrew Thatcher from 2015 in which ████████████████████

22  ███████████████████████████████████████████████████████ Ex. B

23  at ¶ 63; Ex. C at 138:6-15. When pressed, however, Dr. Vigil stated, "I don't recall,

---

[2] Despite marketing rides with the supposedly breakthrough nozzle cover for more than a decade, there is no mention of the nozzle covers in any of Wave Loch's or Whitewater's marketing materials or emails apart from this litigation.

[3] Plaintiff's affiliate, FlowRider Surf Ltd., first sued PSD in this Court for infringement of the '589 patent on May 1, 2014, but dismissed that case without prejudice. (Case No. 3:14-cv-01110-GPC-BLM, Dkt. 1, 8). As shown in this email, it was "currently investigating possible patent infringement . . . under FlowRider U.S. Patent No. 6,491,589." Ex. E, FRSW0011554

TROUTMAN SANDERS LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625                                     5                    CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

as I'm sitting here right now. I know there were a number of documents, ████████ ████████████████████████████████████████████████████ ████████████████ Ex. C at 140:16-141:3. And even if the Court accepts that this lone email touted the patented nozzle flaps to a single customer, it still is not evidence that even that customer purchased any ride, much less an allegedly infringing PSD ride, because of the nozzle flap feature.

At bottom, Plaintiff has provided no reliable, admissible evidence that PSD's customers purchased the allegedly infringing rides because of the allegedly patented nozzle flaps, and its experts' opinions on those issues should be excluded.

**B.     Plaintiff's Experts Should Be Precluded From Offering Opinions on PSD's Ability to Design Around the '589 Patent.**

Defendants timely disclosed expert opinions from Richard Alleshouse that if PSD's current version of its nozzle flap was found to infringe the '589 patent, PSD could design around the patent by either: (1) retrofitting the existing nozzle flap design "by welding the existing hinge [to which the nozzle flap is connected] so that it does not move" or (2) "replacing the hinge with a fixed connection such as a curved or angled fixed plate." Ex. F, Alleshouse Expert Disclosure at ¶¶ 1-2. Prior art rides like "AFP's WaveSurfer, previous FlowRiders, and Murphy's StingRay have all employed such a design-around in the past." *Id.* at ¶ 2.

Neither Plaintiff's technical expert, Dr. Stevick, not its damages expert, Dr. Vigil, addressed Mr. Allehouse's design-around opinions in their reports. Dr. Stevick has opined that PSD's existing accused rides ████████████████████ ████████████████████████████████████████████████████ Ex. A at 168:23-169:13, 172:11-24. Yet, at his deposition, when presented with a steel plate that is fixed, as opposed to on a hinge, as described in Mr. Alleshouse's proposed design-around, Dr. Stevick refused to offer an opinion on whether the fixed steel plate would meet the limitations of the '589 patent. *Id.* at 174:3-175:1, 178:14-22 (this topic was something Dr. Stevick was "not prepared to talk about").

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625                                    6                        CASE NO. 3:17-CV-1118
                    DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

Experts cannot testify on matters not disclosed in their expert report or deposition. *Siemens Med. Sols. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1286 (Fed. Cir. 2011). Accordingly, Dr. Stevick should be precluded from proffering testimony on the feasibility of a design-around because he refused to disclose his opinions on the subject.

For his part, Plaintiff's damages expert, Dr. Vigil, admits he does not have the relevant technical expertise to offer, and therefore is not offering, any technical opinions in this case. *See* Ex. C, 7:10-14; 145:19-146:2. He readily admits that he does not have a technical opinion regarding the scope of the '589 patent *Id.* at 9:18-19 or whether specific products are covered by the '589 patent *Id.* at 28:12-23. But, as Dr. Vigil acknowledges, whether it would have been feasible for PSD to design around the '589 patent and offer an acceptable, non-infringing alternative is inherently a technical question. *Id.* at 153:18-154:4; *see also id.* at 178:23-179:9. Thus, by his own measure, Dr. Vigil is unqualified to offer an opinion on whether PSD's proposed design-around for the '589 patent is feasible or would be an acceptable, non-infringing alternative to the accused products. *See, e.g.*, *Shalaby v. Irwin Indus. Toll Co.*, No. 07CV2107-MMA (BLM), 2009 U.S. Dist. LEXIS 129812, at *36-38 (S.D. Cal. July 28, 2009) (excluding expert testimony relating to gas cylinder warnings where the expert "even conceded that she is not an engineer and that design issues are outside her expertise"). This basic criterion precludes Dr. Vigil's technical opinions regarding the feasibility of PSD's proposed design-around.

Despite his undisputed lack of technical expertise, however, Dr. Vigil offers the opinion that, ██████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ Ex. B, ¶ 74; Ex. C at 34:19-36:10; 37:25-38:19. But Dr. Vigil's implied rule that a design-around must have been implemented to have been considered is directly

Troutman Sanders LLP
580 California Street, Suite 1100
San Francisco, CA 94104

36757625

7

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

contradicted by precedent: the test is not whether a non-infringing alternative has been *implemented* but rather whether one is *feasible* or *accessible*. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2016 U.S. Dist. LEXIS 17596, at *82-84 (N.D. Cal. Feb. 10, 2016) (noting that an accused infringer "does not necessarily need to show that any non-infringing alternatives were actually on the market at the time of infringement in order . . . to show that there were acceptable non-infringing alternatives available," rather the accused infringer must merely "demonstrate that an acceptable non-infringing alternative was 'available,' even if it was not actually being sold at the time of infringement" (citations omitted)). Moreover, Dr. Vigil's opinion is based on the inaccurate assumption that implementing the design-around would have allowed PSD to avoid the costs of this litigation *related to prior acts of infringement*. Dr. Vigil does not (because he cannot) explain how implementing a design-around in future rides would avoid litigation costs associated with a suit over past infringement. Even assuming that implementing the design-around would have allowed PSD to avoid the costs of litigation (but it would not), Dr. Vigil's opinion ignores the multiple times Whitewater or its predecessor have voluntarily chosen to dismiss its patent infringement claims—including Whitewater's decisions to dismiss the 2014 and 2015 suits without prejudice—or have allowed its asserted patents to expire (albeit only to later allege that doing so was "unintentional"). Ex. C at 37:20-38:19.

Because the technical aspects of an invention and the economic value of that invention are separate and distinct fields, courts routinely exclude testimony from an expert who crosses outside of one field and into the other without the requisite qualifications. Dr. Vigil's lack of expertise and experience regarding the feasibility of PSD's proposed design-around is reason enough to exclude his testimony on this issue. *See Rambus Inc. v. Hynix Semiconductor, Inc.*, 254 F.R.D. 597, 603-05 (N.D. Cal. 2008) (precluding expert with over 33 years of experience in designing electrical engineering and semiconductor devices from testifying regarding

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625

8

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

commercial success because he lacked expertise concerning factors that influenced commercial success of products at issue); *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2016 U.S. Dist. LEXIS 58300, at *18-20 (N.D. Cal. May 2, 2016) (precluding technical expert's testimony on economic effects).

### C.  Dr. Stevick's Opinion on Infringement Pursuant to § 271(f) Should Be Excluded As Unreliable

To prove that PSD's foreign ride sales infringed the '589 patent under 35 U.S.C. § 271(f), Plaintiff must show that PSD "supplie[d] or cause[d] to be supplied in or from the United States" either "*all or a substantial portion* of the components of a patented invention" (under subsection 1) or "any component of a patented invention that is especially made or especially adapted for use in the invention and *not a staple article or commodity of commerce suitable for substantial noninfringing use*" (under subsection 2). 35 U.S. C. § 271(f). Tellingly, Dr. Stevick admitted at deposition that he had no understanding of the legal requirements for infringement pursuant to § 271(f)(1)-(2) when drafting his infringement report. Ex. A at 65:4-11. That explains why Dr. Stevick did nothing more than recite the statutory language without providing any analysis based on evidence. Ex. D, Stevick Infringement Report, ¶¶ 78, 98, 113, 132, 166, 171, 191, 206, 217, 228, 240, 253, 281, 294, 305, 316, 327, 351, 367, 382, 398, 409.

Dr. Stevick had no knowledge that Defendants only shipped foam and ride surface materials domestically to Les Parcs du Sud SAS in France and only shipped foam, an electrical cabinet, fabricated steel, and ride surface materials to Fouraime Enterprises Ltd. in Trinidad and Tobago. Ex. A at 41:10-42:10, 61:21-62:3 (admitting he would be "speculating" as to what parts making up PSD's accused rides installed in Trinidad and Tobago and France were shipped from the United States). Dr. Stevick did not have a "parts list" to identify what parts were used to construct the accused rides, yet he still speculated that ███████████████ ███████████████████████ Ex. A at 41:10-23. That speculation was based on

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625

9

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

1  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which did not provide

2  specifications of the parts or materials shipped for the foreign ride installations. Ex.

3  A at 62:5-63:4. Indeed, the materials Dr. Stevick relied on did not discuss how the

4  accused rides were installed at all. *Id.* at 62:13-19 (the materials Dr. Stevick

5  reviewed did not indicate what parts or materials used were supplied or caused to

6  be supplied in or from the United States). Nevertheless, Dr. Stevick opined, without

7  evidentiary support, that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8  ▮▮▮▮▮▮▮▮▮▮▮▮▮ in violation of 35 U.S.C. § 271(f). Ex. D, ¶ 35. In

9  doing so, Dr. Stevick admittedly did not consider evidence indicating that materials

10  were cut and modified abroad at the installation sites. Ex. A at 57:11-19 (Dr.

11  Stevick admits to not witnessing assembly of PSD's rides, so he cannot say whether

12  certain materials, like foam, are cut on-site).

13     As a result, Dr. Stevick could not have objectively analyzed whether the

14  materials of the accused foreign installations could be considered "components" for

15  purposes of 35 U.S.C. § 271(f). *Microsoft Corp. v. AT&T*, 550 U.S. 437, 449 (2007)

16  (infringement under § 271(f) "applies only to 'such components' as are combined

17  to form the 'patented invention' at issue," *i.e.*, "a usable, combinable part").

18  Moreover, because he did not know what parts for PSD's foreign rides were

19  shipped from the United States, he has no reliable basis to conclude that the shipped

20  materials constitute "all or a substantial portion of the components" of a ride under

21  § 271(f)(1). And he refused to provide a clear answer as to whether the materials

22  shipped were not "suitable for substantial noninfringing use," as required to show

23  infringement under § 271(f)(2). Ex. A, 60:7-18, 60:23-61:19 (Dr. Stevick would be

24  "speculating" as to whether foam is suitable for non-infringing use).

25     Dr. Stevick's speculation that PSD shipped "all or a substantial portion of the

26  components" for foreign ride installations, without evidentiary support, is improper.

27  *See United States v. Bighead*, 128 F.3d 1329 (9th Cir.1997) ("[e]xperts are not to

28  testify to their subjective belief or unsupported speculation. The relevance and the

Troutman Sanders
LLP
580 California Street,
Suite 1100
San Francisco, CA  94104

36757625                                    10                        CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

reliability of their testimony, tested in terms of the principles they apply, must pass muster"). Dr. Stevick's opinion here is too speculative and conjectural to be of any value to a factfinder because he based it on speculation rather than empirical analysis. *See Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (reliable expert testimony is based on "scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs"); *Martinez v. Davis*, No. CV 05-5684 ABC (JEMx), 2011 WL 486255, at *1 (C.D. Cal. Feb. 4, 2011) (finding expert testimony based on "my opinion" and CV inadmissible).

### D.   Dr. Stevick's Claim Construction-Based Opinions Are Unreliable and Untestable and Therefore Should Be Excluded.

Plaintiff's technical expert, Dr. Stevick, offers infringement and invalidity opinions that are riddled with a central flaw: he applies undisclosed claim constructions that he cannot explain and that violate fundamental rules of claim construction. It should go without saying that Dr. Stevick's opinions should be excluded where he was unable or unwilling to explain what certain claim terms mean in the context of the '589 patent. Ex. A, at 104:20-105:3, 106:17-107:2, 113:15-25, 117:6-17, 175:8-19, 175:21-176:23, 177:3-18, 177:20-178:22. In multiple instances, he refused to explain why differently worded claim limitations should be interpreted in the same way for purposes of his infringement or validity analysis. *Id*. at 11:16-22, 14:15-24, 224:12-14, 233:4-9, 238:12-25, 240:15-241:3. Moreover, he applied an improper construction of "flexible" that effectively erased it from the claims. *Id*. at 175:8-19, 175:21-176:23, 177:3-18, 177:20-178:22. Dr. Stevick also improperly targeted the accused products by incorporating them into his claim construction. *Id*. at 168:23-169:13. And finally, he wrongly imported aspects of the preferred embodiment described in the specification into the claims.

First, Dr. Stevick's claim construction-based opinions must be excluded where he refused to disclose the constructions of the terms he applied. *Claar v. Burlington Norther R. Co.*, 29 F.3d 499, 502 (9th Cir. 1994) (rejecting expert

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625

11

CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

opinion where experts did not explain "the reasoning and methods underlying their conclusions"). For example, in both his infringement and validity analysis, Dr. Stevick applied the "nozzle cover comprising a padded material substantially *covering* said nozzle" limitation of claim 1. But Dr. Stevick refused to explain what he understood "covering" to mean when he performed that analysis, claiming that the questioning was "outside of [his] report" or that he would be "speculating" if he provided a meaning for that term. Ex. A, 104:20-105:3, 106:17-107:2, 113:15-25, 117:6-17. Likewise, Dr. Stevick also refused to explain how different claim limitations were treated for purposes of his claim construction or infringement analysis. For example, Dr. Stevick refused to explain how he interpreted the claim language "biased downward against the flow of water" in claim 1 in comparison to the claim language "biasing said tongue downwards to squeeze said tongue against the flow of water" in claim 37. *Id.* at 238:12-25, 240:15-241:3. Dr. Stevick's refusal to explain his interpretation of the above claim language evidences his failure to properly analyze how a person of ordinary skill in the art would have interpreted the claim language according to their plain and ordinary meaning.

Second, Dr. Stevick made clear that he applied an inappropriate construction of the term "flexible" in the "nozzle cover including a flexible tongue" limitation of claim 1 that rendered the term effectively meaningless. *Id*. at 178:14-22. Rather than setting a meaningful standard of what is meant by the term, Dr. Stevick opined that all materials can flex to some degree. *Id*. at 175:8-19, 175:21-176:23, 177:3-18, 177:20-178:22. In effect, his interpretation of "flexible" improperly erased it from the claims. *See Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so"); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (claims should be "interpreted with an eye toward giving effect to all terms in the claim"). Because Dr. Stevick could not explain the bounds of these terms as he applied them in his analysis, neither the Court nor the jury would be

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA  94104

36757625                                    12                        CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

able to meaningfully test the propriety of his constructions or his resulting infringement and invalidity opinions. Additionally, neither the Court nor the jury would be able to determine whether PSD's rides infringe the '589 patent based on the construction. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014) (a patent must give "'clear notice of what is claimed, thereby appris[ing] the public of what is still open to them'").

Third, Dr. Stevick erred by improperly looking to the accused products to interpret the claim terms, as evidenced in his construction of the "flexible tongue which is biased downward against the flow of water . . ." limitation. Dr. Stevick opined that although the specification describes that a "spring" may be used to bias downward the flexible tongue, in fact any other suitable resilient means such as a "hinge" or "gravity acting on an end of the flexible tongue such that the flexible tongue flexes downward" would also meet the limitation. Ex. D, ¶ 66. The only reason why Dr. Stevick would be discussing a hinge or gravity in his construction of the limitation would be an effort to improperly incorporate features of the accused rides into his claim construction, so that he could circularly conclude that PSD infringes the '589 patent. Ex. A, 168:23-169:13; Ex. D, ¶ 76. *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) ("A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, *not* in light of the accused device . . . claims are not construed "to cover" or "not to cover" the accused device"); *see also Am. Cyanamid Co. v. U.S. Surgical Corp.*, 833 F. Supp. 92, 109 (D. Conn. 1992) (rejecting expert opinion on claim construction where he incorporated features of the accused products and hypothetical products that could or could not be operable).

Finally, Dr. Stevick imported limitations based on preferred embodiments from the specification into the claims of the '589 patent for his definition of "mobile," Ex. A, 11:16-22, 14:15-24, 233:4-9, and his requirement of a rideable area beyond the nozzle cover that is not recited in claim 1. *Id*. at 233:4-9 (arguing

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625

13

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

that the "specification makes very clear that you now have an extended ride area and a smaller footprint."). *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1342 (Fed. Cir. 2013) ("A claim construction must not import limitations from the specification into the claims"); *In re Omeprazole Patent Litig.*, 483 F.3d 1364, 1372 (Fed. Cir. 2007) ("particular embodiments and examples appearing in the specification will not generally be read into the claims").

These flaws warrant exclusion of Dr. Stevick's claim construction–based infringement and validity opinions under Rule 702 and *Daubert*. *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed.Cir.2006) (holding that district court did not abuse its discretion by excluding expert testimony based on an incorrect claim construction); *Chicago Mercantile Exch., Inc. v. Tech Research Grp.*, LLC, 782 F. Supp. 2d 667, 673 (N.D. Ill. 2011) (proper to exclude expert testimony "predicated upon a mistaken construction" of the patent-in-suit as "irrelevant to issues that will be decided at trial").

### E.   Dr. Vigil's Opinions Are Unreliable and Should Be Excluded to the Extent He Parrots Undisclosed Witnesses' Opinions and Arrived at a Lump Sum Royalty Without Evidentiary Support.

In his August 17, 2018 expert report, Plaintiff's damages expert, Dr. Vigil, opines that the parties would have hypothetically negotiated a license in which PSD supposedly would have agreed to pay Plaintiff ███████████████ ████████████ Ex. B, ¶¶ 3, 30, 200. That opinion flies in the face of the fact that all of the "comparable" licensing agreements he analyzed ████████████ ██████████ *Id.*, ¶ 38. Dr. Vigil's lengthy Report is also notable for what it omits: he did not disclose the actual opinions of the third parties he relies upon, nor did he apportion value to only the patent-in-suit.

### 1.   Dr. Vigil's Wholesale Adoption of Undisclosed Witnesses' Opinions Must Be Excluded.

Dr. Vigil's extensive reliance on the undisclosed opinions of others, many of whom did not submit expert reports or summary disclosures in this case, is outside

TROUTMAN SANDERS LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA 94104

36757625

14

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

the bounds of admissible expert testimony. Dr. Vigil admits that there are numerous instances in which he failed to disclose his reliance on these opinions. *See* Ex. C at 146:19-147:8; *see also id.* at 148:2-5 ("My intent, in putting together this report, was not to exhaustively cite every single sentence with every single source or the proposition that was made in that sentence."); 22:25-23:3. It is no surprise, then, that in many instances Dr. Vigil himself did not know which of his opinions relied on such conversations or why he cited those conversations. *E.g.*, *id.* at 161:8-162:1.

An expert's reliance on the opinions of others is only proper "if experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. However, "[a]n expert's sole or primary reliance on the opinions of other experts raises serious reliability questions." *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 556 (C.D. Cal. 2014). Thus, courts look to see "if other evidence supports his opinion and the record demonstrates that the expert conducted an independent evaluation of that evidence." *Id.*; *see also Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 554 (C.D. Cal. 2012) ("Defendants first objection is the most serious, since it raises the specter that [expert] . . . is merely parroting the opinions and conclusions of another expert[.]"); *Wolkowitz v. Lerner*, No. SA CV 07-777-CAS, 2008 U.S. Dist. LEXIS 34698, at *10 (C.D. Cal. Apr. 21, 2008) (opinions unreliable where expert merely "serve[s] as a conduit for the opinions of undisclosed experts").

Opinions derived from Dr. Vigil's conversations with Messrs. Mack, Myrman, and Marshall (Ex. B, ¶ 8) must be excluded because the bases for these individuals' opinions was not disclosed. Specifically, Dr. Vigil relied on conversations with these individuals for important details regarding the "comparable" licenses that he reviewed as part of his hypothetical negotiation analysis, including the royalty rates included in those licenses. *See, e.g.*, Ex. C at 86:22-87:18. Dr. Vigil did not and could not provide the basis for the opinions expressed during those conversations. *See, e.g.*, *id.* at 23:4-24:15 (Myrman did not

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA  94104

36757625                                    15                        CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

know why certain clauses were included in the licensing agreements); *id.* at 24:17-24 (Myrman did not know the circumstances surrounding the February 2009 Wave Loch WWI license). Significantly, Dr. Vigil did not even consistently identify in his report which of his opinions were based on these undisclosed conversations. *See id.* at 148:6-10 ("So no certain statements could be corroborative from conversations that I've had with these individuals, but not necessarily included as a cite because it's corroborative of other information that I'm relying on.").

Without any scrutiny or critical thought, Dr. Vigil adopted these individuals' opinions wholesale. No reasonable economics expert would rely on the untested opinions of others, particularly without knowing that person's bases for arriving at those opinions. The opinions Dr. Vigil derived from such testimony should therefore be excluded as unreliable and not helpful to the jury. *See United States v. Redlightning*, 624 F.3d 1090, 1112 (9th Cir. 2010) ("Because [expert] did not reasonably point to any evidence in the record or other factors or data reasonably relied on by experts in his field . . . [he] could not provide any relevant testimony to assist the jury."); *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-cv-1865-AJB-JMA, 2018 U.S. Dist. LEXIS 143802, at *26 (S.D. Cal. Aug. 23, 2018) (noting that an expert "cannot forgo his own independent analysis and rely exclusively on what an interested party tells him"); *see also Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 629-30 (W.D. Wash. 2011) ("The rules do not permit an expert to rely upon opinions developed by another expert for purposes of litigation without independent verification of the underlying expert's work").

## 2. Dr. Vigil's Lump Sum Royalty Analysis Based on Portfolio Licenses Is Unreliable and Unhelpful to a Jury.

In his report, Dr. Vigil opines that Whitewater and PSD would hypothetically only have negotiated a ████████████████████ ████████████████████████████████████ Ex. B,

¶ 36. That opinion should be excluded, because Dr. Vigil (1) analyzed licensing agreements that are fundamentally not "comparable" to the license he opines the parties would have negotiated; and (2) failed to apportion value to the '589 patent specifically. Further, because Dr. Vigil only calculated a lump sum royalty—and stated that the other royalty structures would have been inappropriate (*id.*, ¶¶ 38-44)—Dr. Vigil should be precluded from offering any testimony regarding a running royalty or a combination of a running royalty and a lump sum royalty.

a.    **Dr. Vigil Did Not Consider Comparable Licenses.**

For a damages expert to rely on prior licensing agreements to determine a reasonable royalty, "there must be a basis in fact to associate the royalty rates used in prior licenses to the particular hypothetical negotiation at issue in the case." *Multimedia Patent Trust v. Apple Inc.*, No. 10-CV-2618-H (KSC), 2012 U.S. Dist. LEXIS 165928, at *26 (S.D. Cal. Nov. 20, 2012) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011)). "[L]icenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license at issue in suit" *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009).

An expert must do more than merely "alleg[e] a loose or vague comparability between different technologies or licenses." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012). The expert must "present evidence sufficient to allow a jury to weigh the economic value of the patented feature against the economic value of the features and services covered by the license agreement." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, No. 2:06-CV-348-TJW-CE, 2011 U.S. Dist. LEXIS 42590, at *11 (E.D. Tex. Jan. 7, 2011). "The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded." *See, e.g.*, *Multimedia Patent Trust*, 2012 U.S. Dist. LEXIS 165928, at *27 (citation omitted).

Dr. Vigil's reasonable royalty analysis, including his lump sum royalty calculation, is premised on his comparison of the hypothetical negotiation to ███████████████████████████████████ *See* Ex. B, ¶¶143-155; tbl.12. Each of these supposedly "comparable" licensing agreements █████████████████████████ ████████████████ as Dr. Vigil admits. *See* Ex. B, ¶ 38; Ex. C at 76:1-11. Indeed, Dr. Vigil could not point to ████████████████████████████████████ ███████████████████████████████ Rather, Dr. Vigil conclusory stated that the licenses "provide probative evidence regarding what the appropriate royalty should be in this case." Ex. B, ¶161. And even while arguing that these licenses were somehow sufficiently "comparable" to serve as a basis for his royalty calculation, Dr. Vigil notably avoids hewing to any of their terms by arguing— without proof—that "█████████████████████████████ are very different from those in the hypothetical negotiation." *id.*, ¶¶ 38, 41, 160; Ex. C at 78:19-80:3. Indeed, that is his sole explanation for using a lump sum rather than a running royalty.

Dr. Vigil never purported to explain, either in his report or at his deposition, ***how*** ███████████████████████████████████████████ ███████ he argues the parties would have hypothetically negotiated. Dr. Vigil's only adjustment to ████████████████████████████████████ *Id.*, ¶ 160 (" ██████████████████████████████████████████████ ███████████████████████████████████████ ██████████████████████████████████ ).

Dr. Vigil also failed to explain why PSD, a start-up company in 2013 with limited revenue and profit, would agree to pay Whitewater ████████████████ a license to the '589 patent. Indeed, while Dr. Vigil cites the Federal Circuit's reasoning for why a lump sum royalty may make sense for a licensee that seeks "the ability, usually for the remainder of the patent term, to actually use the

Troutman Sanders
LLP
580 California Street,
Suite 1100
San Francisco, CA 94104

36757625

18

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

patented technology in its own products without any further expenditure," (Ex. B, ¶ 36 (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F. 3d 1301, 1326 (Fed. Cir. 2009), he concedes that PSD would not get that benefit here, where Plaintiff has requested an injunction. Ex. B, ¶ 44, n.81; *see also* Ex. C at 96:6-97:17 (acknowledging that it would be "incorrect and inappropriate for PSD to pay a royalty that goes beyond the point when it would be allowed to make infringing sales"). As a threshold matter, therefore, Dr. Vigil's entire damages construct undermines the motivation PSD and Whitewater would supposedly have had to enter into a lump sum royalty license.

Because Dr. Vigil's testimony utterly fails to account for ██████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ the district court must exclude his lump sum calculation using its gatekeeper function. *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) (noting that district court must only "consider licenses that are commensurate with what the defendant has appropriated. If not, a prevailing plaintiff would be free to inflate the reasonable royalty analysis with conveniently selected licenses without an economic or other link to the technology in question."); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1018-19 (N.D. Cal. 2013) (excluding expert testimony on any effective running royalty rate calculated form a lump sum agreement because the lump sum agreements were "not admissible for the purpose of calculating a reasonable royalty rate").

> b.   **Dr. Vigil's Reasonable Royalty Analysis Does Not Apportion Value to the Benefits of the '589 Patent.**

Dr. Vigil's reasonable royalty analysis is inherently unreliable because it does not apportion value to the patented benefits of the '589 patent relative the

Troutman Sanders
LLP
580 California Street,
Suite 1100
San Francisco, CA  94104

36757625                          19                      CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

other, unrelated patents and know-how included in the "comparable" licenses. A patent owner must, in every case, "give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative[.]" *Uniloc*, 632 F.3d at 1318 (citations, quotations omitted). "The essential requirement is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D-Link Sys.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

Dr. Vigil failed to make ***any*** adjustment to account for the fact that the "comparable" licenses he considered all related to ***entire patent portfolios*** in addition to other intellectual property such as know-how and trademarks, and not to a single patent like the hypothetical license. *Id.*, ¶ 160 ("It is not clear how many of the 23 U.S. patents included in these licenses were actually used or needed by the licensees other than the '589 Patent."). Dr. Vigil merely assumed—because he did not conduct any analysis or independent investigation—that the royalty rate would remain the same for a license to a single patent rather than multiple patents. This was error. *See, e.g.*, *Dataquill Ltd. v. High Tech Computer Corp.*, No. 08cv543 - IEG (BGS), 2012 U.S. Dist. LEXIS 53164, at *24-26 (S.D. Cal. Apr. 16, 2012) (excluding expert's reliance on a license covering a multitude of patents that "is much larger in scope than the license that would have been reached at the hypothetical negotiation"); *Lucent*, 580 F.3d at 1328 (prior agreement for multiple patents covering broad technologies was "a vastly different situation than the hypothetical licensing scenario of the present case involving only one patent").

It was incumbent on Dr. Vigil to determine what portion of the royalties from those portfolio licenses might be attributable to the '589 patent alone. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1324 (Fed. Cir. 2014) (noting that in all cases, "proof of damages must be carefully tied to the claimed invention itself") (citations omitted); *Uniloc*, 632 F.3d at 1317 ("To be admissible, expert testimony

Troutman Sanders LLP
580 California Street,
Suite 1100
San Francisco, CA 94104

36757625

20

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

opining on a reasonable royalty 'carefully tie proof of damages to the claimed invention's footprint in the market place.'" (citation omitted)).

Dr. Vigil acknowledged that, because the "comparable" licenses covered numerous patents, he needed to "assess[] what royalties would be due just for use of a single patent." Ex. C at 195:25-196:2. But, Dr. Vigil clearly did not even ***attempt*** to apportion value to the '589 patent relative to the rest of the licensed portfolio. Rather, he merely ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████ *Id*. at 195:16-23. Then Dr. Vigil assumed, based on inapposite testimony of Whitewater's President and CEO Mr. Chutter, that the royalty rate attributable to each of the patents in the "comparable" licensing agreements must have been the ***full royalty rate*** because Plaintiff never did any analysis to determine whether they used any of those patents. *Id.* at 197:23-198:9 ██████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████ ; *see also* Ex. B, ¶ 160 (██████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████

But, the very fact that Mr. Chutter and Whitewater did not do that analysis makes relying on their opinion improper. *See Apple Inc.*, 757 at 1324-25 (finding it was improper for damages expert rely on opinion of licensing expert to conclude that entire royalty rate negotiated in actual portfolio licenses could be attributed to only the patents-in-suit where the licensing expert, "admitted that he knew nothing about the SEP portfolio at issue and did not even purport to link the 40%-50% rate to the claimed invention"); *see also Golden Bridge Tech. v. Apple Inc.*, No. 5:12-

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA  94104

36757625                                21                    CASE NO. 3:17-CV-1118
                   DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

cv-04882-PSG, 2014 U.S. Dist. LEXIS 76339, at *4-5 (N.D. Cal. June 1, 2014*)* ("an expert may not rely on broad licenses that cover technologies far beyond the patents-in-suit without accounting for the differences in his calculations") (citation omitted). Dr. Vigil does not even know ███████████████████████ ████████████████████████████████████████████████████████ ████████ Moreover, even if Mr. Chutter's testimony could be relied upon, it simply demonstrates that ████████████████████████████████ ████████████████████

Dr. Vigil's opinion that the '589 patent accounts for the entire royalty percentage (and therefore that all the other patents in the licensing agreements are essentially worthless) is not tied to any reliable analysis and should be excluded.

### F.     Mr. Godici's Opinions Speculating About the Content of Communications Plaintiff Deliberately Withheld as Privileged Are Unreliable and Should Be Excluded

Plaintiff offers the opinions of Mr. Nicolas Godici in rebuttal to Defendants' defense of inequitable conduct, including Defendants' argument that the '589 patent was reinstated through inequitable conduct.  Mr. Godici concludes that he is "not aware of anything in the record indicating that Mr. Squier [*i.e.*, the attorney who committed the inequitable conduct] failed to conduct a reasonable inquiry under proper PTO procedures or that his execution of the certified statement of unintentional delay in the reinstatement petition was in any way inaccurate or improper." Ex. G, Godici Report, ¶ 77.

In so concluding, Mr. Godici simply accepted at face value Mr. Squier's testimony that he received "details and instructions" from Mr. Taché, who in turn "had conversations directly with the client." *Id.* at ¶ 77, ¶ 89. But Mr. Godici was not privy to the substance of the communications between Mr. Taché and the client" that were supposedly the basis of the "details and instructions" Mr. Squier acted upon. *See* Ex. H, Godici Tr. 222:12-224:2. Quite the contrary, Mr. Godici admits he could not possibly know what "details and instructions" were provided

Troutman Sanders
LLP
580 California Street,
Suite 1100
San Francisco, CA  94104

36757625                               22                        CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

by Mr. Taché to Mr. Squier, because Plaintiff asserted attorney-client privilege. *Id.* at 110:9-13, 111:2-6, 114:5-23. Plaintiff cannot on one hand seek to introduce evidence of such communications through Mr. Godici to support its argument that Messrs. Taché and Squier conducted a necessary investigation as to its "details and instructions," while on the other hand simultaneously asserting privilege over the very same "details and instructions" and underlying communications. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege . . . may not be used both as a sword and a shield.")

Aside from speculation about what Mr. Taché and Mr. Squier may have said or been told, Mr. Godici contends that "[t]he redacted email communications cited by Mr. Carmichael in at least paragraphs 182-185 further support these details and instructions." Ex. G, ¶ 78.  But those redacted emails plainly do nothing to identify what "details and instructions" were provided to Mr. Squier (Ex. I, FRSW0002952) and Plaintiff's counsel asserted attorney-client privilege over these communications during Mr. Godici's deposition, ensuring that these crucial "details and instructions" would never be disclosed in this case. Ex. H at 110:9-13, 111:2-6, 114:5-23. In the disclosed portions of the email thread, Mr. Taché simply asserts (while notably not asking) that the '589 patent ███████████████████ ██████████████████████████████████ ██████████████████████████████████ ██████████████████████████████████ Ex. I, FRSW0002951-2.

Because Mr. Godici testified that he does not know the substance of the "details and instructions" of Mr. Taché's and Mr. Squier's privileged communications, his opinions regarding the investigation into intentionality of the delay of the maintenance fee payment lack any factual basis and must be excluded. *See Herrera v. Eli Lilly & Co.*, No. 2:13-cv-02702-SVW-MAN, 2015 U.S. Dist. LEXIS 187145, at *15-17 (C.D. Cal. Aug. 3, 2015) (excluding expert testimony

Troutman Sanders
LLP
580 California Street,
Suite 1100
San Francisco, CA 94104

36757625

23

CASE NO. 3:17-CV-1118

DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

where "Plaintiffs fail to submit any evidence indicating that the method by which Glenmullen arrived at his conclusion is the product of a reliable method reliably applied to the facts of this case"); *United States ex rel. Jordan v. Northrop Grumman Corp.*, No. CV 95-2985 ABC (Ex), 2003 U.S. Dist. LEXIS 29055, at *10-12 (C.D. Cal. Feb. 24, 2003) (excluding testimony that merely "summarized selected documents and made assumptions where convenient to arrive at the desired result"). Because Plaintiff did not disclose this essential information in discovery, Mr. Godici's opinion is untestable and should be excluded from the trial in this case. *Cf.*, *Fox v. California Sierra Financial Services*, 120 F.R.D. 520, 530 (N.D. Cal. 1988) ("If the holder intends to consent to waiver of the attorney-client privilege at trial, such intention must be disclosed during the discovery stage and any information as to which the privilege will be waived must be made available to the opposing party through discovery so as not to afford the one party an unfair advantage at trial.").

Mr. Godici also opined about the plausibility of Mr. Taché missing a January 22, 2015 email in which he was informed that the '589 Patent had expired, well before Mr. Squier claimed to have independently discovered the expiration. Ex. G, ¶ 93; Ex. J, at KM00101-KM00103 (email from Knobbe Martens).

As Mr. Godici admits, his only basis for concluding that Mr. Taché missed the January 22, 2015 email was Mr. Taché's own declaration that "I have no recollection of ever receiving that email." *See* Ex. H, 163:19-165:4. Mr. Godici accepted unquestioningly Plaintiff's counsel's own representation: "Mr. Taché declared he was on leave of absence in January 2015 and was not aware of the January 22, 2015 email." Ex. G, ¶ 93; Ex. H 163:19-164:1. Counsel's own say-so is not the type of evidence an expert would typically rely on to draw his conclusions. *See U.S. v. Redlightning*, 624 F.3d 1090, 1112 (9th Cir. 2010) (district court did not err in excluding expert testimony where the expert "relied on statements made to him by counsel"); *Caruso v. Bon Secours Charity Health Sys.*, No. 14 CV 4447

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA  94104

36757625                                24                      CASE NO. 3:17-CV-1118
                    DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

(VB), 2016 U.S. Dist. LEXIS 104067, at *15-16 (S.D.N.Y. Aug. 5, 2016) ("[The expert's] testimony must be excluded as unreliable under *Daubert* because she relies solely on facts that plaintiff's counsel chose to share with her and did not conduct an independent review of evidence . . . .").

Mr. Godici's opinion is also not reliable because he never considered a host of prior emails from 2014 showing Knobbe's ████████████████ ███████████████████████████████████████████████████████ ████████████████████████ *See* Ex. H at 157:18-21; Ex. J at KM00092-KM00100. Because Mr. Godici did not even consider these 2014 emails, any opinions based on his untested "understanding" of the reasonableness of Mr. Taché allegedly missing the January 22, 2015 email is unreliable and irrelevant.

Lastly, Mr. Godici admits that he was "not familiar with [Mr. Taché's] procedure" for making sure that an email like the January 22, 2015 email from Knobbe was not missed during his six-month leave of absence or whether those steps were reasonable in light of Mr. Taché's duties as a law firm partner. Ex. H 80:10-82:1. Without such knowledge, Mr. Godici has nothing to reliably add beyond Mr. Taché's own testimony that he missed the January 22, 2015 email. *White v. BNSF Ry. Co.*, 726 Fed. Appx. 603, 604 (9th Cir. 2018) (district court did not err in excluding expert testimony where the "expert's initial report was not based on a significant review of the facts of [the] case" and noting that expert testimony must be based on sufficient facts or data). Because there is no reliable basis for Mr. Godici's opinion that Mr. Taché may have missed the January 22, 2015 email, his opinion must be excluded.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, PSD requests that the Court grant this motion.

Dated: November 2, 2018

**TROUTMAN SANDERS LLP**

By: */s/ Charanjit Brahma*
Charanjit Brahma
*Attorneys for Defendants*

TROUTMAN SANDERS
LLP
580 California Street,
Suite 1100
San Francisco, CA  94104

36757625                                25                      CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on November 2, 2018, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Civil Rule 5.4. Any counsel of record who have not consented to electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile, and/or overnight delivery.


*/s/ Charanjit Brahma*
Charanjit Brahma

TROUTMAN SANDERS
LLP
580 CALIFORNIA STREET,
SUITE 1100
SAN FRANCISCO, CA  94104

36757625                              26                    CASE NO. 3:17-CV-1118
DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE