**BUCHALTER**
A Professional Corporation
J. Rick Taché (SBN: 195100)
Roger L. Scott (SBN: 247165)
Erikson C. Squier (SBN: 275274)
18400 Von Karman Avenue, Suite 800
Irvine, CA  92612-0514
Telephone: 949.760.1121
Facsimile:  949.720.0182
Email:      rtache@buchalter.com
            rscott@buchalter.com
            ecsquier@buchalter.com

Attorneys for Plaintiff
Whitewater West Industries, Ltd.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEWATER WEST INDUSTRIES, LTD., a Canadian corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFIC SURF DESIGNS, INC., a Delaware corporation, and FLOW SERVICES, INC., a California corporation,<br><br>Defendants. | Case No. 3:17-cv-01118-BEN-BLM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION AND MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE (ECF NO. 208)** |

**1**

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ..................................................................................... 1

II.   LEGAL STANDARD ............................................................................. 2

III.  ARGUMENT ......................................................................................... 3

    A.   Dr. Stevick's and Dr. Vigil's Opinions on Causal Nexus Are Admissible ............................................................................... 3

        1.   Whitewater's Experts Are Permitted To Opine On Causal Nexus ............................................................................ 3

        2.   Defendants' Challenges To The Factual Basis Of Dr. Stevick's "Nexus" Opinions Go To Weight, Not Admissibility ...................................................................... 4

        3.   Defendants' Challenges To Dr. Vigil's "Nexus" Opinions Misstate His Report And Ignore His Proper Reliance On Fact Witnesses And Dr. Stevick ............................................ 6

    B.   Dr. Stevick's and Dr. Vigil's Opinions on Defendants' Ability to Design Around the '589 Patent Are Admissible ............................... 7

        1.   Defendants Deliberately Misstate Dr. Stevick's Deposition Testimony Regarding Defendants' Failed Design Around ........ 7

        2.   Defendants Deliberately Misstate Dr. Vigil's Opinions Relating To Defendants' Proposed Design Around ................... 9

    C.   Dr. Stevick's Opinions on Infringement Pursuant to 35 U.S.C. § 271(f) Are Admissible ......................................................... 10

    D.   Dr. Stevick's Claim Construction Methodology Is Reliable and Based on the Facts and Data of This Case .................................... 13

    E.   Dr. Vigil's Reasonable Royalty Analysis and Methodology Are Reliable and Based on the Facts and Data of This Case.................... 18

        1.   Dr. Vigil Is Permitted to Rely Upon Facts Learned From Fact Witnesses ...................................................................... 18

        2.   Dr. Vigil Properly Relied Upon Comparable License Agreements And Apportioned Value To The Benefits Of The '589 Patent ...................................................................... 20

    F.   Mr. Godici's Inequitable Conduct Opinions Are Relevant And Admissible ......................................................................... 23

IV.   CONCLUSION ..................................................................................... 25

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION**
**TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE**
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

# TABLE OF AUTHORITIES

**Cases**

*PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Sing.) Pte. Ltd.*, No. 10-00544
JW, 2011 U.S. Dist. LEXIS 133502, at *23-24 (N.D. Cal. Oct. 27, 2011) ..........11

*Adams v. Ameritech Services, Inc.*,
231 F.3d 414 (7th Cir. 2000) ........................................................................3, 12

*Advanced Fiber Techs. Tr. v. J&L Fiber Servs.*,
674 F.3d 1365 (Fed. Cir. 2012) ...........................................................................14

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) ...........................................................................23

*Bergen v. F/V St. Patrick*,
816 F.2d 1345 (9th Cir. 1987) .............................................................................25

*Caruso v. Bon Secours Charity Health Sys.*,
No. 14 CV 4447(VB), 2016 U.S. Dist. LEXIS 104067
(S.D.N.Y. Aug. 5, 2016) .......................................................................................25

*Copelan v. Techtronics Indus.*,
No. 12-01285-BAS(MDD), 2015 U.S. Dist. LEXIS 54126
(S.D. Cal. Apr. 24, 2015) ..........................................................5, 7, 10, 12, 25

*Dataquill Ltd. v. High Tech Computer Corp.*,
887 F. Supp. 2d 999 (S.D. Cal. 2011) ..............................................................6, 7

*Daubert v. Merrell Dow Pharms., Inc.*,
43 F.3d 1311 (9th Cir. 1995) .................................................................................2

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ...........................................................................................2, 4

*E.I. Dupont De Nemours & Co. v. Unifrax I LLC*,
No. 14-1250-RGA, 2017 U.S. Dist. LEXIS 146949 (D. Del. Sep. 12,
2017) ........................................................................................................................4

*Fosmire v. Progressive Max Insurance Co.*,
277 F.R.D. 625 (W.D. Wash. 2011) ....................................................................19

*Golden Bridge Technology v. Apple Inc.*,
No. 12-04882-PSG, 2014 U.S. Dist. LEXIS 76339 (N.D. Cal. June 1,
2014) ......................................................................................................................23

*Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075 (Fed. Cir. 1983) ...........................................................................22

*In re High-Tech Emple. Antitrust Litigation*,
No. 11-02509-LHK, 2014 U.S. Dist. LEXIS 47181 (N.D. Cal. Apr. 4,
2014) ................................................................................................................3, 12

ii

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION
TO DEFENDANTS' MOTION FOR SANCTIONS
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

*Kennedy v. Collagen Corp.*,
  161 F.3d 1226 (9th Cir. 1998)...................................................................2

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137, 119 S. Ct. 1167 (1999).............................................11, 12

*Lewert v. Boiron, Inc.*,
  212 F. Supp. 3d 917 (C.D. Cal. 2016) .....................................................9

*Lucent Techs., Inc. v. Microsoft Corp.*,
  No. 07-2000 H(CAB), 2011 U.S. Dist. LEXIS 75504 (S.D. Cal. July 13,
  2011).........................................................................................................21

*Mendenhall v. Cedarapids*,
  5 F.3d 1557 (Fed. Cir. 1993) ..................................................................12

*Minority Television Project, Inc. v. F.C.C.*,
  649 F. Supp. 2d 1025 (N.D. Cal. 2009) ..................................................19

*Multimedia Patent Tr. v. Apple, Inc.*,
  No. 10-2618-H(KSC), 2012 U.S. Dist. LEXIS 165928 (S.D. Cal. Nov.
  20, 2012).......................................................................................21, 22, 23

*Obrey v. Johnson*,
  400 F.3d 691 (9th Cir. 2005)...............................................................3, 12

*Odyssey Wireless, Inc. v. Apple, Inc.*,
  No. 15-01735-H-RBB, 2016 U.S. Dist. LEXIS 187982 (S.D. Cal. Sep.
  14, 2016)...................................................................................................23

*Open Text S.A. v. Box, Inc.*,
  No. 13-04910-JD, 2015 U.S. Dist. LEXIS 10644 (N.D. Cal. Jan. 28,
  2015).........................................................................................................23

*Ormco Corp. v. Align Tech., Inc.*,
  609 F. Supp. 2d 1057 (C.D. Cal. 2009) ..................................................13

*Oyarzo v. Tuolumne Fire District*,
  No. 11-01271-SAB, 2013 U.S. Dist. LEXIS 150367 (E.D. Cal. Oct. 18,
  2013)...........................................................................................................4

*Polara Engineering, Inc. v. Campbell Co.*,
  237 F. Supp. 3d 956 (C.D. Cal. 2017) .....................................................3

*San Diego Comic Convention v. Dan Farr Products*,
  No. 14-1865-AJB-JMA, 2018 U.S. Dist. LEXIS 143802 (S.D. Cal. Aug.
  23, 2018)...................................................................................................19

*Shalaby v. Irwin Indus. Toll Co.*,
  No. 07CV2107-MMA(BLM), 2009 U.S. Dist. LEXIS 134954 (S.D. Cal.
  July 2, 2009).............................................................................................18

*TDN Money Sys. v. Everi Payments, Inc.*,
  No. 15-2197 JCM(NJK), 2017 U.S. Dist. LEXIS 183223 (D. Nev. Nov.

iii

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**PLAINTIFF'S OPPOSITION**
**TO DEFENDANTS' MOTION FOR SANCTIONS**
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

6, 2017)...........................................................................................................9

*TrekEight, LLC v. Symantec Corp.*,
   No. 04-1479 H(BLM), 2006 U.S. Dist. LEXIS 102300 (S.D. Cal. May
   23, 2006)...................................................................................................24

*United Energy Trading, LLC v. Pac. Gas & Elec. Co.*,
   No. 15-02383-RS, 2018 U.S. Dist. LEXIS 178076 (N.D. Cal. Oct. 16,
   2018)....................................................................................................24, 25

*United States v. 1014.16 Acres of Land*, 558 F. Supp. 1238, 1242 (W.D. Mo.
   1983)..........................................................................................................7

*United States v. Llerenas*,
   No. 16-30215, 2018 U.S. App. LEXIS 20248 (9th Cir. July 20, 2018) .............18

*United States v. Redlightning*,
   624 F.3d 1090 at 1111-12 (9th Cir. 2010) ....................................................19, 25

*United States v. Wells*,
   877 F.3d 1099 (9th Cir. 2017)........................................................................12

*Veeco Instruments, Inc. v. SGL Carbon, LLC*,
   No. 17-cv-2217 PKC, 2017 U.S. Dist. LEXIS 181935 (E.D.N.Y. Nov. 2,
   2017)..........................................................................................................4

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
   200 F.3d 795 (Fed. Cir. 1999)...................................................................14, 15

*Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*,
   609 F.3d 1308 (Fed. Cir. 2010)......................................................................20

**Statutory Authorities**

35 U.S.C. § 271(f)..............................................................................10, 11, 13

**Rules and Regulations**

Fed. R. Evid. 701(c) .............................................................................19

Fed. R. Evid. 702...........................................................................2, 11, 12

Fed. R. Evid. 703...................................................................................18

Local Rule 5.4.......................................................................................27

**Additional Authorities**

U.S. Patent No. 6,491,589 ...........................................................................1

iv

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**PLAINTIFF'S OPPOSITION**
**TO DEFENDANTS' MOTION FOR SANCTIONS**
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

# I.    **INTRODUCTION**

Defendants Pacific Surf Designs, Inc. and Flow Services, Inc.'s (collectively "Defendants") omnibus motion to exclude the testimony of three of Plaintiff Whitewater West Industries, Ltd.'s ("Whitewater") experts on various topics is premised almost entirely on misleading statements of law and repeated misrepresentations of the experts' reports and deposition testimony to the point where Defendants often claim the experts said the exact opposite of what the experts actually stated. As set forth fully below, Whitewater's experts' opinions were properly disclosed and are relevant and admissible. Specifically,

- Whitewater's experts are permitted to opine on the "causal nexus" between Defendants' infringing products and product sales. The law is clear that direct evidence of customer desire is not required to demonstrate a causal nexus.

- Defendants' efforts to exclude opinions and testimony regarding Defendants' failed efforts to design around U.S. Patent No. 6,491,589 (the " '589 Patent") are based on flagrant mischaracterizations of the opinions and testimony of Drs. Stevick and Vigil. The actual opinions and testimony do not support exclusion.

- Dr. Stevick's opinions regarding Defendants' export of components from the U.S. for use in infringing foreign installations is properly based on Dr. Stevick's application of his own extensive engineering experience to Defendants' drawings and other documents depicting Defendants' products.

- Dr. Stevick appropriately applied clearly disclosed and reliable claim construction methodology. Defendants' arguments to the contrary are based on misrepresentations of Dr. Stevick's opinions and testimony.

- Dr. Vigil is expressly permitted to rely on facts obtained from third parties in support of his reasonable royalty analysis. Further, that analysis is based on a clear explanation of how Dr. Vigil determined comparable license agreements and how he apportioned value to the '589 Patent.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *EX PARTE* MOTION
FOR LEAVE TO FILE SECOND MSJ
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

- • Nicholas Godici's rebuttal opinion that the evidence does not support inequitable conduct is properly based on the sworn statements of Erikson Squier and J. Rick Taché.  Any challenged to Mr. Godici's opinions are the proper subject of examination at trial, not exclusion.

Thus, the Court should deny Defendants' motion to exclude in its entirety.

## II.   **LEGAL STANDARD**

Under Rule 702, a witness "qualified as an expert by knowledge, skill, experience, training, or education, may testify" . . . if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91 (1993).  "[T]he test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology."  *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("Daubert II").  In other words, the test is "whether or not the reasoning is scientific and will assist the jury.  If it satisfies these two requirements, then it is a matter for the finder of fact to decide what weight to accord the expert's testimony."  *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1231 (9th Cir. 1998). "Disputes as to the strength of [an expert's] credentials, faults in his use of [a particular] methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony.'"  *Id.*

**PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE**
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

III.   **ARGUMENT**

    A.    <u>Dr. Stevick's and Dr. Vigil's Opinions on Causal Nexus Are</u>
<u>Admissible</u>

        1.    **Whitewater's Experts Are Permitted To Opine On Causal**
**Nexus**

As an initial matter, Defendants improperly argue that Dr. Stevick's and Dr. Vigil's opinions should be excluded because their opinions do not conclusively establish a causal nexus.  However, "neither Rule 702 nor *Daubert* requires that an expert's testimony, in part or in whole, singlehandedly prove an element of the offering party's case for it to be admissible." *In re High-Tech Emple. Antitrust Litig.*, No. 11-02509-LHK, 2014 U.S. Dist. LEXIS 47181, at *105 (N.D. Cal. Apr. 4, 2014); *Obrey v. Johnson*, 400 F.3d 691, 695 (9th Cir. 2005) (noting expert evidence need not establish any element of a claim or defense to be admissible under *Daubert*); *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 425 (7th Cir. 2000) ("[T]he question before us is not whether the reports proffered by the plaintiffs prove the entire case; it is whether they were prepared in a reliable and statistically sound way, such that they contained relevant evidence that a trier of fact would have been entitled to consider.").  As set forth below, the opinions of Dr. Stevick supply the technological basis for a causal nexus, and the opinions of Dr. Vigil supply the economic basis for that nexus.  Thus, both experts' opinions are well founded and relevant, and should not be excluded.

Defendants also argue that Whitewater's experts are not permitted to opine on causal nexus because they did not rely on direct evidence of customer preference, such as customer interviews.[1]  This is legally unsupported.  Direct evidence of customer decisions is not required to establish a causal nexus.  *See*,

---

[1] *See*, ECF No. 208 at 10:20-22 (Dr. Stevick did not opine on PSD's customers decisions); 11:3-5 (Dr. Stevick did not speak to PSD's customers); 12:8-9 (Vigil's opinion "has nothing to do with PSD's customers").

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

*Polara Eng'g, Inc. v. Campbell Co.*, 237 F. Supp. 3d 956, 988 (C.D. Cal. 2017) (granting injunction without direct evidence of customer preference where parties were direct competitors and defendant developed its infringing product to compete with plaintiff's product); *Veeco Instruments, Inc. v. SGL Carbon, LLC*, No. 17-cv-2217 PKC, 2017 U.S. Dist. LEXIS 181935, *82-90 (E.D.N.Y. Nov. 2, 2017) (granting injunction without direct evidence of customer preference based on market domination by products with patented feature, substantial elimination of non-practicing products from the market, and patented feature allowed for increased capacity and decreased costs of goods); *E.I. Dupont De Nemours & Co. v. Unifrax I LLC*, No. 14-1250-RGA, 2017 U.S. Dist. LEXIS 146949, *3 (D. Del. Sep. 12, 2017) (granting injunction without evidence of customer preference noting "Where two companies are in direct competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions").[2] Thus, Dr. Stevick and Dr. Vigil's opinions need not be based on direct customer information to be admissible.

## 2.   Defendants' Challenges To The Factual Basis Of Dr. Stevick's "Nexus" Opinions Go To Weight, Not Admissibility

Defendants' remaining challenges to the opinions of Drs. Stevick and Vigil also fail.  For example, Defendants admit that Dr. Stevick based his opinions regarding "nexus" on, among other things, his expert analysis of the purpose of the invention claimed by the '589 Patent.  *See*, ECF No. 204-4 ("Stevick Rep."), ¶ 31

███████████████████████████████████████████

---

[2] *See also, Oyarzo v. Tuolumne Fire Dist.*, No. 11-01271-SAB, 2013 U.S. Dist. LEXIS 150367, at *45-46 (E.D. Cal. Oct. 18, 2013) (declining to exclude expert for failing to interview individuals because "Mr. Stein is clearly qualified as an expert," and "Defendants' argument regarding the scope of his review goes to the weight of his opinion, not whether it is admissible"); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993) ("an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation").

**PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE**

Case No. 3:17-cv-01118-BEN-BLM

BN 34630186v5



5                 ”).  Dr. Stevick also opines that water ride attractions

6 that did not use the '589 nozzle covers would be less desirable.  *Id*. at ¶ 30

7 (“

8                              .”).

9          Further, Dr. Stevick testified that he based his opinions on the benefits

10 described in the '589 Patent, ECF No. 204-1 at 252:25-253:5, and fundamental

11 engineering principles involving economic analysis.  *Id*. at 253:9-15 (“

12

13

14

15                              .”).  Although Dr. Stevick is not

16 an economic expert, he explains that “

17            ,” and that he regularly encounters economic considerations in his

18 engineering work.  *Id*. at 253:21-254:5 (“

19

20                              .”).

21          Any challenge to these factual underpinnings of Dr. Stevick's opinions go to

22 the weight, not the admissibility of his opinions.  *Copelan v. Techtronics Indus.*,

23 No. 12-01285-BAS(MDD), 2015 U.S. Dist. LEXIS 54126, at *11 (S.D. Cal. Apr.

24 24, 2015) (“mere weakness in the factual basis of an expert witness' opinion bear

25 on the weight of the evidence rather than on its admissibility”).  Thus, Dr. Stevick's

26 causal nexus opinions are relevant and admissible.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

### 3. Defendants' Challenges To Dr. Vigil's "Nexus" Opinions Misstate His Report And Ignore His Proper Reliance On Fact Witnesses And Dr. Stevick

Defendants falsely claim that Dr. Vigil failed to disclose opinions regarding "nexus" in his report.  To the contrary, Dr. Vigil clearly explained in his report that the nozzle cover drives demand for the accused product in the marketplace:



ECF No. 204-2 ("Vigil Rep."), ¶ 58.[3]  Further, Dr. Vigil properly based his opinion on his review of testimony and communications from Whitewater representatives (*id.* at ¶¶ 59-61, 63, 65); Whitewater's marketing materials and websites  (*id.* at ¶¶ 62, 64-66); Defendants' marketing materials (*id.* at ¶¶ 64-65); statements from Whitewater's customers (*id.* at ¶ 67); and, his knowledge and understanding of economic principles.  *Id.* at ¶¶ 66, 68.  In addition, Dr. Vigil is expressly permitted to rely on the opinions of Whitewater's technical expert, Dr. Stevick, in forming his own opinions.  *Dataquill Ltd. v. High Tech Computer Corp.*, 887 F. Supp. 2d 999,

---

[3] Dr. Vigil elaborated on this opinion at deposition.  *See* ECF No. 204-3 at 30:13-31:18.

6

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

1026 (S.D. Cal. 2011) ("It is routine and proper for a damages expert in a technical patent case to rely on a technical expert for background.").  "An expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinions of experts in other fields as background material for arriving at an opinion." *Id* (quoting *United States v. 1014.16 Acres of Land*, 558 F. Supp. 1238, 1242 (W.D. Mo. 1983)).  Defendants do not contest that Dr. Stevick is qualified to offer technical opinions.  And, as Defendants acknowledge, Dr. Vigil admittedly does not possess technical expertise sufficient to opine on the technical advantages of the '589 Patent.  ECF No. 204-3 at 116:11-14 ("███████████████████████████████████████████████████████████████████████████████████████████████.").

To the extent that Defendants object to the factual evidence that Dr. Vigil relied upon in forming his opinions, Defendants' objections go to weight rather than admissibility of Dr. Vigil's opinions.  *Copelan*, 2015 U.S. Dist. LEXIS 54126 at *11 ("mere weakness in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility").

In sum, Dr. Stevick and Dr. Vigil are permitted to opine on causal nexus, and their opinions are well founded, relevant, and admissible.  Thus, the Court should deny Defendants' motion.

**B.** **Dr. Stevick's and Dr. Vigil's Opinions on Defendants' Ability to Design Around the '589 Patent Are Admissible**

Defendants' effort to exclude expert testimony regarding their failed effort to design around the '589 Patent are based entirely on misstatements of the experts' reports and deposition testimony.  Further, Defendants' legal argument and analysis are based solely on these false "facts" and should be ignored.

**1.** **Defendants Deliberately Misstate Dr. Stevick's Deposition Testimony Regarding Defendants' Failed Design Around**

At deposition, Dr. Stevick clearly and repeatedly rejected the viability of

7

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

Defendants' proposed design around. Frustrated by their inability to obtain Dr. Stevick's acceptance of their theory, Defendants mischaracterize his testimony to claim he "refused to offer an opinion" as to whether Defendants' design around was non-infringing. ECF No. 208 at 13:24-27. Far from "refus[ing] to offer an opinion" Dr. Stevick explained exactly why Defendants' proposed design around would not work:



ECF No. 204-1 at 172:11-21 (objections omitted). Dr. Stevick went on to explain that ▮▮▮▮▮▮▮▮▮▮. *Id.* at 173:2-13.

Trying a different tack, Defendants then presented Dr. Stevick with a design document that was not produced in discovery or provided as part of Mr. Alleshouse's "expert" disclosure, of a diagram purporting to depict a design around concept for a "rigid" nozzle flap. ECF No. 204-1 at 173:21-174:2 (Identifying Exhibit 4 as an unproduced "mock[] up"); Scott Decl., Ex. 1. Dr. Stevick again rejected Defendants' diagram as a valid design around, explaining that, as depicted, "▮▮▮▮▮▮▮." *Id.* at 174:19-23.[4] Defendants went on to demand that Dr. Stevick "speculate" about ▮▮▮▮▮▮▮; Dr. Stevick properly refused to

---

[4] Defendants' assertion that Dr. Stevick was "not prepared to talk about" any ▮▮▮▮▮▮▮▮ tevick speculate about the ▮▮▮▮▮▮▮. ECF No. 204-1 at 178:12 ("▮

8

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

do so. *Id.* at 178:12-22 (Q. "██████████████████████████████████

██████████████████████████████████████.").

Based on Dr. Stevick's deposition testimony, there can be no dispute that Dr. Stevick properly disclosed his opinions regarding Defendants' proposed design around. *TDN Money Sys. v. Everi Payments, Inc.*, No. 15-2197 JCM (NJK), 2017 U.S. Dist. LEXIS 183223, at *12 (D. Nev. Nov. 6, 2017) (an expert report is merely a "means of providing adequate notice to the other side to enable it to challenge the expert's opinions and prepare to put on testimony of its own."); *Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 932 (C.D. Cal. 2016) (Rule 26 "'does not limit an expert's testimony simply to reading his report' and 'contemplates that the expert will supplement, elaborate upon, and explain his report in his oral testimony'"). Refusing to admit Dr. Stevick's opinions would be reversible error. *TDN Money Sys.*, 2017 U.S. Dist. LEXIS 183223, at *12-13 ("[t]estimony of an expert on matters within the expert's expertise but outside of the expert's report is not only permissible at trial, but the exclusion of such testimony may be reversible error"). Thus, Defendants' motion should be denied.

### 2. Defendants Deliberately Misstate Dr. Vigil's Opinions Relating To Defendants' Proposed Design Around

Dr. Vigil does not provide, or attempt to provide, any opinion on the technical feasibility of Defendants' proposed design around. Instead, Dr. Vigil opines as to the economic aspects of that proposed design around. Specifically, Dr. Vigil rebuts Mr. Alleshouse's assertion that the proposed design around "█████

████████████████████████████████████████████████

████████████████████████████████████████████

████████." Vigil Rep., ¶ 74.

Further, and contrary to Defendants arguments, Dr. Vigil did not opine that Defendants' design around was not feasible because it was not implemented. Dr. Vigil opines that ████████████████████████████████████████████

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

1   ███████████████████████████████████████████████████

2   ████████████████████████. Vigil Rep., ¶ 74 ("████████████

3   ██████████████████████████████████████████████

4   ████████████████████████████.") (emphasis added); ECF No. 204-3 at

5   38:12-15.  Dr. Vigil's opinions are properly based on Defendants' own marketing

6   materials and Dr. Vigil's uncontested economic expertise.  *Id*. at ¶¶ 75-77.

7       Dr. Vigil's opinions regarding the *economic* theory behind a potential design

8   around (i.e. whether it is cheaper to design around or continue to infringe) is well

9   within Dr. Vigil's unchallenged expertise as an economist and directly relevant to

10   Whitewater's position that Defendants cannot present a feasible, non-infringing,

11   alternative design.  Defendants' rely solely on cases where experts are excluded for

12   testifying in areas outside of their expertise.  Since Dr. Vigil does not attempt to

13   offer anything other than economic opinions, these cases are inapposite.

14       Defendants' arguments as to what economic factors Dr. Vigil did and did not

15   consider (what damages or litigation costs Defendants could have avoided through

16   a design around) go to the weight and credibility of Dr. Vigil's testimony, but do

17   not merit exclusion.  *Copelan, supra*, 2015 U.S. Dist. LEXIS 54126, at *11 ("mere

18   weakness in the factual basis of an expert witness' opinion bear on the weight of the

19   evidence rather than on its admissibility").  Thus, the Court should deny

20   Defendants' motion to exclude Whitewater's experts' testimony regarding

21   Defendants' design around.

22       **C.**    <u>**Dr. Stevick's Opinions on Infringement Pursuant to 35 U.S.C. §**</u>

23       <u>**271(f) Are Admissible**</u>

24       An expert's opinions have "adequate support to be admissible" when they

25   "derive from his personal knowledge and experience, as well as his personal review

26   of patents and technologies at issue in this case" in light of his "extensive

27   background in the area of [] engineering."  *PixArt Imaging, Inc. v. Avago Tech.*

28   *Gen. IP (Sing.) Pte. Ltd.*, No. 10-00544 JW, 2011 U.S. Dist. LEXIS 133502, at

10

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE**
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

*23-24 (N.D. Cal. Oct. 27, 2011); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156, 119 S. Ct. 1167 (1999) ("no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience"); Fed. R. Evid. 702 Advisory Committee Notes (2000 Amend.) (a design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he used and the conclusions he reaches.").

Consistent with these standards, Dr. Stevick's opinions relating to infringement pursuant to 35 U.S.C. § 271(f) are reliable, relevant, and admissible. Dr. Stevick opines that:



Stevick Rep., ¶ 35 (emphasis in original).  Dr. Stevick testified that his opinion was based on his review of Defendants' drawings, pictures, and videos of the accused products, and the accused products themselves.  ECF No. 204-1 at 41:12-23, 43:1-2, 62:5-12; Scott Decl., Ex. 2 at 50:17-21, 51:15-22.  Dr. Stevick also relied on his engineering knowledge and experience, Scott Decl., Ex. 2 at 46:18-47:20, 50:23-51:14, 52:17-23, *United States v. Wells*, 877 F.3d 1099, 1132 (9th Cir. 2017)

11

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

("Federal Rule of Evidence 702's reliability requirement asks whether an expert's testimony has 'a reliable basis in the knowledge and experience of the relevant discipline.'") (quoting *Kumho*, *supra*, 526 U.S. at 149).  When questioned regarding hypothetical components, Dr. Stevick noted that his opinions depended on the distinct characteristics of the component, how the component may have been manufactured, modified, or prepared, and his engineering knowledge.  ECF No. 204-1 at 60:7-61:8.  Thus, Dr. Stevick's opinions are admissible under Rule 702.[5]

Defendants remaining challenges to Dr. Stevick's opinions relating to Section 271(f) are not a proper basis to exclude Dr. Stevick's testimony.  For example, Defendants argue that Dr. Stevick was not versed in the law relating to Section 271(f) and did not apply legal factors to his analysis.  This argument effectively reverses the standard for admissible expert testimony.  "An expert's opinion on the ultimate legal conclusion is neither required nor indeed 'evidence' at all."  *Mendenhall v. Cedarapids*, 5 F.3d 1557, 1574 (Fed. Cir. 1993).  Similarly, Defendants object that that Dr. Stevick's report and testimony do not conclusively establish Section 271(f) infringement.  However, "neither Rule 702 nor *Daubert* requires that an expert's testimony, in part or in whole, singlehandedly prove an element of the offering party's case for it to be admissible."  *In re High-Tech Emple. Antitrust Litig.*, 2014 U.S. Dist. LEXIS 47181 at *105; *Obrey*, 400 F.3d at 695 (noting expert evidence need not establish any element of a claim or defense to be admissible under *Daubert*); *Adams*, 231 F.3d at 425 ("[T]he question before us is not whether the reports proffered by the plaintiffs prove the entire case; it is whether they were prepared in a reliable and statistically sound way, such that they

---

[5] Defendants only objection to the factual basis of Dr. Stevick's opinion is that he did not review specifications or a parts list for the accused products, or evidence showing that Defendants had cut and modified materials of the accused products abroad.  ECF No. 208 at 16:26-17:12.  However, such arguments bear on the weight of the Dr. Stevick's opinions, not its admissibility.  *Copelan*, 2015 U.S. Dist. LEXIS 54126 at *11.  As such, they do not provide a proper basis to exclude his opinions under Rule 702.

12

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

1  contained relevant evidence that a trier of fact would have been entitled to

2  consider.").

3       Dr. Stevick's opinion that ride materials were fabricated for the specific

4  purpose of constructing Defendants' infringing rides is a relevant *fact* that supports

5  Whitewater's argument that Defendants' products infringe by meeting the standards

6  of Section 271(f).  Whitewater is entitled to rely on Dr. Stevick's expert opinion in

7  conjunction with other facts—such as the components necessary to make an

8  infringing nozzle flap and the fact that all or substantially all of those components

9  were shipped from the United States—to establish the elements of infringement

10 under Section 271(f).  *Ormco Corp. v. Align Tech., Inc.*, 609 F. Supp. 2d 1057,

11 1068 (C.D. Cal. 2009) ("35 U.S.C. § 271(f) creates liability for anyone who

12 'supplies or causes to be supplied in or from the United States' one or more

13 components of a patented invention 'where such components are uncombined in

14 whole or in part, in such manner as to actively induce the combination of such

15 components outside of the United States in a manner that would infringe the patent

16 if such combination occurred within the United States.'") (citations omitted).  Thus,

17 Dr. Stevick's opinions supply the technological basis for supporting the claimed

18 infringement, are clearly relevant, and should not be excluded.

19    **D.    Dr. Stevick's Claim Construction Methodology Is Reliable and**

20         **Based on the Facts and Data of This Case**

21       Dr. Stevick plainly disclosed—both in his report and at deposition—his

22 application of claim construction to his infringement and invalidity analysis.  In an

23 improper effort to argue otherwise, Defendants once again deliberately ignore or

24 misstate Dr. Stevick's opinions and testimony.  Defendants then apply cases that

25 only have relevance if their distorted version of facts were true.

26       First, Dr. Stevick plainly disclosed the constructions of all terms which he

27 applied in his analysis.  For example, Dr. Stevick expressly opined and testified that

28 "covering," as used in the '589 Patent, means "████████████████████████

13

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████.”  Stevick Rep., ¶¶ 57; ECF No., 204-1 at 106:17-107:2.

Defendants' argument to the contrary is based on a portion of testimony where

Defendants attempted to force Dr. Stevick to opine on a hypothetical embodiment

"███████████████████████████████████.”  ECF No. 204-1 at 107:4-13

(emphasis added).  But, Dr. Stevick explained (at length) that such an embodiment

was not disclosed in the '589 Patent (*id*. at 107:11-108:5); Defendants' hypothetical

embodiment was beyond the scope of his report (*id*. at 108:21-110:6 and 113:15-

25); the word "attached" does not appear in the '589 Patent (*id*. at 111:22-112:2 and

113:10-13); and, that answering Defendants' question would require him to

speculate.  *Id*. at 106:8-15.  Dr. Stevick is not required to provide expert opinion

concerning irrelevant language devised by Defendants, but not included in any of

the asserted claims.  *Advanced Fiber Techs. Tr. v. J&L Fiber Servs.*, 674 F.3d 1365,

1373 (Fed. Cir. 2012) ("we do not ordinarily construe words that are not in

claims"); *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir.

1999) ("only those terms need be construed that are in controversy and to the extent

necessary to resolve the controversy").

     Similarly, Dr. Stevick plainly disclosed his understanding of "biased

downward against the flow of water" as "████████████████████,”

(Stevick Rep., ¶ 65), so that "████████████████████████

███████████████████████████████████████████████████

████”  *Id*. at ¶ 69.  Dr. Stevick later devoted an entire section of his report to the

differences between that language in Claim 1 and the language of Claim 37.

Stevick Rep., ¶¶ 337-339 ("████████████████████████████

███████████████████████████████████████████

█████████").  At deposition, he referred Defendants to the applicable section

of his report.  *Id*. at 240:2-9.  Dr. Stevick went on to explain that the use of the

14

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE**
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

different terms "biased downward against the flow of water" and "biasing said tongue downward to squeeze said tongue against the flow of water" served to expand the types of nozzle flaps covered by the '589 Patent.  ECF No. 204-1 at 241:23-242:2 ("█████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ █████████████████████████████████████.").

Second, Dr. Stevick applied and disclosed an appropriate definition of the term "flexible."  Stevick Rep., ¶ 63 ("t████████████████████████████████████ █████████████████████████████████████████████████████████ ██████.").  Dr. Stevick elaborates "[██████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████.'" *Id* (emphasis in original).  Dr. Stevick's definition of "flexible" does not render the term meaningless, but rather highlights the importance of the term as a separate and additional limitation of the claim.

Defendants' objection to Dr. Stevick's testimony is not based on Dr. Stevick's definition of flexible, but on his refusal to opine on what precisely Defendants would need to do to design around the '589 Patent's flexible tongue requirement. [6]  As explained above, at deposition, Defendants presented Dr. Stevick with a previously undisclosed diagram of a "rigid" nozzle flap and demanded that Dr. Stevick analyze it on the spot to determine whether it might infringe the '589 Patent.  When Dr. Stevick said it likely would, Defendants demanded that Dr.

---

[6] Defendants cite the same testimony to allege that Dr. Stevick "refused to offer an opinion" regarding infringement (*see* ECF No. 208 at 13:24-27), but here argue that Dr. Stevick rendered an opinion that is somehow improper.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION      Case No. 3:17-cv-01118-BEN-BLM
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Stevick "speculate" about ███████████████████████ in a design around to avoid infringement of the '589 Patent; Dr. Stevick properly refused to do so.  ECF No. 204-1 at 178:12-22 (Q. "████████████████████████████ ████████████████████████████████.") (objections omitted). Defendants cite no authority for the proposition that Defendants can require Whitewater's expert to speculate as to how to remedy defects in their design around, and Whitewater has found none.

Third, Dr. Stevick properly construed the limitation of a "flexible tongue which is biased downward against the flow of water."  The '589 Patent discloses a "spring-loaded" means to accomplish that bias, but it also provides that "***other suitable resilient means*** can be efficaciously used to bias or urge the tongue-like pad 150 (or tongue 160) in a downward direction towards the ride surface."  Scott Decl., Ex. 3, '589 Patent at 10:47-50 (emphasis added).  Indeed, this Court acknowledged that "[t]here is no limit on what those 'other suitable resilient means' may be," ECF No. 88 at 8:13-14, Flowrider Action.[7]  A hinge and gravity constitute "other suitable resilient means" to meet the claim limitation.

Dr. Stevick testified that the use of hinges to create flexibility is a common, well-known concept that has been used for decades in engineering.  Scott Decl., Ex. 2 at 195:4-12. For example, the American Heritage Dictionary defines "hinge" as "[a] jointed or ***flexible*** device that allows the turning or pivoting of a part, such as a door or lid, on a stationary frame."  ECF No. 200-22 (emphasis added).

Both this Court and the PTAB discussed what type of force was required to "bias" or "urge" the tongue downward, including gravity.  In its Claim Construction Order, this Court held that "neither the claims nor the specification requires a mechanical force," (ECF No. 88 at 8:10, Flowrider Action); in fact, "you could have the tongue of a resilient material, but the weight of the material itself could

---

[7] This Court adopted the Claim Construction Order entered in the prior action, titled *Flowrider Surf Ltd. v. Pacific Surf Designs, Inc.*, No. 15-01879 (the "Flowrider Action").  *See* ECF No. 39.

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

force the tongue downward." Scott Decl., Ex. 4 at 18:20-23. In other words, this Court held that gravity could force the tongue downward. *See id.* In its decision denying institution of *inter partes* review, the PTAB expressly held that "'biased downward' and 'urged downward' should be construed as 'to cause to be oriented downward by any force, such as gravity.'" Scott Decl., Ex. 5 at 10.

In other words, Dr. Stevick construed the "flexible tongue" limitation using two useful and common examples of methods to make something "flexible." Defendants' argument that "[t]he only reason why Dr. Stevick would be discussing a hinge or gravity in his construction of the limitation would be an effort to improperly incorporate features of the accused rides" improperly reverses the cause and effect of Dr. Stevick's analysis. ECF No. 208 at 20:13-17. Dr. Stevick did not analyze "hinge" and "gravity" because Defendants' products use them. It is because Defendants' products use a hinge and gravity that Dr. Stevick concluded that they infringe on the '589 Patent.

Finally, Dr. Stevick's opinions and testimony demonstrate that he did not improperly import claim limitations based on preferred embodiments. Contrary to Defendants' assertion, Dr. Stevick explicitly disclaims any such construction, particularly with respect to the definition of "mobile." Stevick Rep., ¶¶ 257-259



("[ ████████████████████████████████████████████████████ ████████████████████████████ " (*id.* at ¶ 257), "█████ ████████████████████████████████████████████ " (*id.* at ¶ 258), "████████████████████████████████████████████ ██████████████████ " (*id.* at ¶ 259)). At deposition, when Defendants attempted to force Dr. Stevick into accepting the claim specification as a definition of "mobile," Dr. Stevick rejected their effort and stated that the specification was only exemplary. ECF No. 204-1 at 15:13-20 ("Q. ████████████████████████ ████████████████████████████████████████████████████ ████████████████████████ ").

17

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

Similarly, in direct contradiction of Defendants' arguments, at deposition, Dr. Stevick clearly explained that, Claim 1 does ***not*** require a rideable area beyond the nozzle cover.  ECF No. 204-1 at 233:4-20 ("Q. ███████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████") (emphasis added).  Accordingly, Dr. Stevick's constructions are properly disclosed, properly construed, and admissible under Rule 702.

### E. <u>Dr. Vigil's Reasonable Royalty Analysis and Methodology Are Reliable and Based on the Facts and Data of This Case</u>

#### 1. Dr. Vigil Is Permitted to Rely Upon Facts Learned From Fact Witnesses

Experts are expressly permitted to rely on facts, even testimonial hearsay that would otherwise be inadmissible.  Fed. R. Evid. 703; *United States v. Llerenas*, No. 16-30215, 2018 U.S. App. LEXIS 20248, at *5-6 (9th Cir. July 20, 2018) ("Experts may offer opinions based on otherwise inadmissible testimonial hearsay if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject.'"); *Shalaby v. Irwin Indus. Toll Co.*, No. 07CV2107-MMA (BLM), 2009 U.S. Dist. LEXIS 134954, at *4-5 (S.D. Cal. July 2, 2009) ("it is not necessary to determine the admissibility of the various witness statements in order to address Plaintiffs' contentions that the Court should strike the findings and conclusions of the defense experts to the extent they are based on these statements.  Federal Rule of Evidence 703 provides that an expert may rely upon hearsay or other inadmissible evidence to form the basis of his opinion.").

Dr. Vigil permissibly relied on conversations with David Keim, Kris Mack, and Marshall Myrman regarding factual issues.  Basic factual information about the

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

businesses they work for is at most lay testimony and not "scientific, technical or specialized knowledge" within the scope of Rule 702 because it was obtained by virtue of the employees' position in the respective Defendants' businesses.  Fed. R. Evid. 701(c), Advisory Committee Notes (2000 Amend.) ("particularized knowledge that the witness has by virtue of his or her position in the business" is not "scientific, technical, or other specialized knowledge," even if it involves knowledge that the average person would have to consult an expert about, like the "value or projected profits of a business" or that a substance "appeared to be a narcotic"); *see also*, *Minority Television Project, Inc. v. F.C.C.*, 649 F. Supp. 2d 1025, 1032 (N.D. Cal. 2009) (allowing employee to hypothesize about impact that "commercial advertising" might have on the operations of other public radio stations because "[m]ost, if not all of [the witness's] testimony [was] based upon his particularized knowledge" gained by virtue of his position in the business).[8]

Dr. Vigil relied on conversations and testimony from David Keim regarding ███████████████████████████████████████████████████████, in forming his reasonable royalty opinions.  Vigil Rep. ¶¶ 104, 107, 144-148, 153-155, 160.  Similarly, Dr. Vigil permissibly relied upon conversations with Kris Mack[9] regarding ██████ ████████████████████████████████████████████████████████.

---

[8] Defendants cite no case where an experts' reliance on third parties for such basic factual underpinnings have been excluded.  *United States v. Redlightning*, 624 F.3d 1090 at 1111-12 (9th Cir. 2010) (excluding expert testimony based on "advice of counsel rather than facts provided by a party or witness."); *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-1865-AJB-JMA, 2018 U.S. Dist. LEXIS 143802, *25-26 (S.D. Cal. Aug. 23, 2018) (excluding expert who rendered "personal opinion that 'Comic Con' is generic" that "required no expertise"); *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 629-30 (W.D. Wash. 2011) (expert may not rely on the opinions of ***another expert*** in same subject area).
[9] To the extent that Defendants argue they did not have notice of Mr. Mack's status as a potential fact witness.  Dr. Vigil's report, which first issued on May 18, 2018, plainly disclosed his reliance on conversations with Mr. Mack.  Scott Decl., Ex. 7, ¶ 9 Dr. Vigil issued a revised report on August 17, 2018, again plainly disclosing his reliance on conversations with Mr. Mack.  Vigil Rep. ¶ 8.  Discovery in this matter did not close until August 17, 2018.  Despite knowing that Dr. Vigil relied on conversations with Mr. Mack for months, Defendants never noticed his deposition.

19

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE

Case No. 3:17-cv-01118-BEN-BLM

BN 34630186v5

ECF No. 204-3 at 86:18-87:3.  And, Dr. Vigil permissibly relied on conversations with Marshall Myrman regarding ███████████████████████████████ ████████████████████████████████.  Scott Decl., Ex. 6 at 20:23-21:17; ECF No. 204-3 at 22:17-24.  Dr. Vigil considered these facts provided by Messrs. Keim, Mack, and Myrman, but also conducted independent analysis before reaching his opinions.  *See* Scott Decl., Ex. 6 at 20:23-21:17, 124:14-125:17; ECF No. 204-3 at 22:17-24, 87:1-3.  Thus, the facts Dr. Vigil learned from these individuals assisted him in forming the basis for his opinions regarding reasonable royalty damages.

Messrs. Keim, Mack, and Myrman never offered Dr. Vigil any facts beyond basic information known to them about their own business.  Thus, Dr. Vigil is entitled to rely on the information he received from Messrs. Keim, Mack, and Myrman.

## 2. Dr. Vigil Properly Relied Upon Comparable License Agreements And Apportioned Value To The Benefits Of The '589 Patent

Dr. Vigil's damages analysis is properly based on running royalties, appropriate comparable licenses, and royalty value properly apportioned to the '589 Patent.

First, the Federal Circuit and this Court have expressly held that running-royalty agreements are relevant to lump-sum agreements as long as some basis for comparison exists in the evidence presented to the jury.  *Wordtech Sys., Inc. v. Integrated Network Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010); *accord Lucent Techs., Inc. v. Microsoft Corp.*, No. 07-2000 H (CAB), 2011 U.S. Dist. LEXIS 75504, at *20-21 (S.D. Cal. July 13, 2011) ("Running-royalty agreements can be relevant to lump-sum damages, but 'some basis for comparison must exist in the evidence presented to the jury.'").  Dr. Vigil makes this comparison "████ ███████████████████████████████████████████████████████████ ████████."  Vigil Rep., ¶ 160, Form of Royalty.

20

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

Second, Dr. Vigil properly analyzed the comparability of the licenses.  Dr. Vigil observed that each of the comparable license agreements "█████████████ ███████████████████████████████████████."  *Id*. at ¶ 160, Minimum Royalties.  Where ████████████████████ ██████████████████████████████████████, Dr. Vigil posited that ████████████████████████████████████████████ ████████████████████████████."  *Id*.  Thus, Dr. Vigil opines that "████████████████████████████████" in the hypothetical negotiation because "████████████████████████████ ████████."  *Id*.  Consistent with each of its comparable licenses, "████████ ███████████████████████████████████████" *Id*.  This was not only standard practice for Whitewater, but also for the industry.  *Id*.  Further, Dr. Vigil justified the amount of the lump-sum royalty by explaining that "████ ███████████████████████████████████████████████ █████████████████████████."  *Id*.

Even if the Court found differences, "[a] damages expert may rely on comparable licenses that are different from the hypothetical agreement so long as he 'account[s] for the technological and economic differences between them.'"  *Multimedia Patent Tr. v. Apple, Inc.*, No. 10-2618-H (KSC), 2012 U.S. Dist. LEXIS 165928, at *28 (S.D. Cal. Nov. 20, 2012) (internal quotations omitted).  Here, Dr. Vigil evaluated the exclusivity, licensed products, timing, minimum royalties, parties, form of royalty, legal strength of the patents, and scope of intellectual property transferred in each agreement.  *See* Vigil Rep., ¶¶ 144-160.  For each of these categories, Dr. Vigil accounts for the differences between the comparable license agreements and the hypothetical agreement, and explains how these differences do or do not affect his reasonable royalty calculation.  *See id*.  Moreover, Dr. Vigil dedicates considerable time to explaining the different economic considerations between the comparable licenses and the hypothetical

21

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION       Case No. 3:17-cv-01118-BEN-BLM
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

license, including the benefits and risks to the licensor and licensee associated with each.  *See* Vigil Rep., ¶¶ 36-44.  Dr. Vigil explains that the licensor's purpose in granting each of the comparable licenses was "████████████████████ ████████████████████████████," while the purpose of the hypothetical negotiation would be to minimize the licensor's losses.[10]  *See id.* at ¶¶ 38, 44.

Finally, Defendants argue that Dr. Vigil's testimony should be excluded because Dr. Vigil does not determine what portion of royalties from the comparable licenses were attributable to the '589 Patent alone.  However, Dr. Vigil explained that ████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████."  *Id.* at ¶ 160, Scope of IP Transferred.  Dr. Vigil observed that this was true even ██████████████████████████████████████████████████████ ██████████████████████████████████████.  *Id.* "████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████."  *Id.*  Such an accounting is sufficient under Rule 702.  *See e.g., Multimedia Patent Tr., supra,* 2012 U.S. Dist. LEXIS 165928 at *28-29 (finding expert testimony admissible when expert "explain[ed] that MPT's licensing practice was not dependent on the number of patents being licensed").  "[T]his is not a case where the expert 'did not

---

[10] Defendants collaterally challenge that they would not have been willing to enter into a lump-sum royalty agreement because Whitewater sought an injunction.  *See* ECF No. 208 at 25:24-26:4.  Defendants' argument ignores that the hypothetical negotiation may not be based on hindsight, but rather what the infringer expected to gain at the time of the negotiation.  *See Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1081 (Fed. Cir. 1983).  As Dr. Vigil explains, Defendants expected to earn ██████████████████████████████████████████.  *See* Vigil Rep., ¶¶ 49-54.

22

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

offer any testimony to explain how [the] payments could be converted to a royalty rate.'" *Id*. at *29.[11]

Further, "the fact that a license is not perfectly analogous generally goes to the weight of the evidence, not its admissibility." *Odyssey Wireless, Inc. v. Apple, Inc.*, No. 15-01735-H-RBB, 2016 U.S. Dist. LEXIS 187982, at *13 (S.D. Cal. Sep. 14, 2016); *Open Text S.A. v. Box, Inc.*, No. 13-04910-JD, 2015 U.S. Dist. LEXIS 10644, at *5 (N.D. Cal. Jan. 28, 2015) ("The solution to Open Text's concern is not to bar Box from seeking a lawful lump sum royalty rate but to prove to the jury that the proper measure of damages in this case is a running royalty."). The differences between the licenses are more appropriately addressed by way of cross-examination than exclusion. Thus, the Court should deny Defendants' motion to exclude Dr. Vigil's opinions and testimony.

## F.   Mr. Godici's Inequitable Conduct Opinions Are Relevant And Admissible

Whitewater retained its expert Nicholas Godici to rebut Defendants' expert's conclusion as to whether Whitewater and its counsel engaged in inequitable conduct before the United States Patent and Trademark Office (the "PTO"). Mr. Godici will testify as to the rules and procedural requirements governing prosecution and maintenance of patents, and the rules, practices, and procedures concerning the duty of candor, good faith, and disclosure related to allegations of inequitable conduct. ECF No. 204-7, "Godici Rep.," ¶ 16. Defendants do not challenge Mr. Godici's expertise in these areas. Thus, Mr. Godici's testimony is

---

[11] Defendants' cases are inapposite. In *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014), the expert was excluded because he "admitted he knew nothing about the SEP portfolio at issue and did not even purport to link the 40%-50% rate to the claimed invention." *Id*. at 1324-25. In *Golden Bridge Tech. v. Apple Inc.*, No. 12-04882-PSG, 2014 U.S. Dist. LEXIS 76339 (N.D. Cal. June 1, 2014), the expert was excluded because he relied on licenses that "cover technologies far beyond the patent-in-suit without accounting for the differences." *Id*. at *4-5. Here, Dr. Vigil expressly addressed the technology of the comparable licenses and the hypothetical license, finding them to be "very similar," and Dr. Vigil accounted for the differences in price. Vigil Rep. ¶ 160, Licensed Products.

23

Buchalter
A Professional Corporation
Irvine

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

relevant and will assist the trier of fact in understanding the applicable rules and practices before the PTO. *TrekEight, LLC v. Symantec Corp.*, No. 04-1479 H (BLM), 2006 U.S. Dist. LEXIS 102300, at *4 (S.D. Cal. May 23, 2006) ("'[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue,' an expert 'may testify thereto'").

Mr. Godici's conclusion that he is "not aware of anything in the record indicating that Mr. Squier failed to conduct a reasonable inquiry under proper PTO procedures or that his execution of the certified statement of unintentional delay in the petition to reinstate the '589 Patent was in any way inaccurate or improper" means just that. Godici Rep., ¶ 77. It does not mean Mr. Godici "speculated" about any particular fact, it means that the facts in the record do not, in Mr. Godici's expert opinion, support a finding of inequitable conduct.

In rendering his opinions, Mr. Godici properly relied on Mr. Squier's deposition testimony regarding why he declared the delay to be unintentional, or Mr. Taché's declaration as to why he did not recall receiving the January 22, 2015 email from Knobbe—both of which were provided under penalty of perjury. Absent evidence rebutting Messrs. Squier and Taché's sworn statements, Mr. Godici's opinions cannot be excluded. *United Energy Trading, LLC v. Pac. Gas & Elec. Co.*, No. 15-02383-RS, 2018 U.S. Dist. LEXIS 178076, at *13-14 (N.D. Cal. Oct. 16, 2018) (refusing to exclude expert testimony where challenging party "fail[ed] to demonstrate why it is unreasonable for an expert to rely on statements made in a sworn, signed declaration absent evidence rebutting the underlying statements"). Defendants' argument that Mr. Godici is not permitted to rely on the statements of counsel ignores that, in cases on which Defendants rely, the experts relied on unsworn statements by counsel transmitting evidence from third parties. *United States v. Redlightning*, 624 F.3d 1090 at 1111-12 (excluding expert testimony based on "advice of counsel rather than facts provided by a party or

24

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

witness."); *Caruso v. Bon Secours Charity Health Sys.*, No. 14 CV 4447 (VB), 2016 U.S. Dist. LEXIS 104067, at *15-16 (S.D.N.Y. Aug. 5, 2016) (expert's "testimony must be excluded as unreliable under *Daubert* because she relies solely on facts that plaintiff's counsel chose to share with her and did not conduct an independent review of evidence").  Here, Messrs. Squier and Taché have been accused of inequitable conduct.  The evidence Mr. Godici was required to—and did—review included Messrs. Squier's and Taché's sworn testimony.

The remainder of Defendants' arguments challenge the factual underpinnings, rather than the methodology, of Mr. Godici's opinions.  This is not a proper basis to exclude expert testimony.  *Copelan*, 2015 U.S. Dist. LEXIS 54126 at *11 (the "mere weakness in the factual basis of an expert witness' opinion bear on the weight of the evidence rather than on its admissibility"); *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987) ("The weakness in the underpinnings of [expert] opinions may be developed upon cross-examination," as "such weakness goes to the weight and credibility of the testimony" as opposed to its admissibility) (internal citations omitted).  For example, if Defendants believe that the evidence Mr. Godici relied upon was insufficient, that he failed to consider prior emails from Knobbe (that did not disclose the maintenance fee due date for the '589 Patent) or the reasonableness of Mr. Taché's email protocols, they may cross-examine Mr. Godici on those issues at trial.  Similarly, Defendants may cross-examine Mr. Godici on what he did *not* rely on including attorney-client privileged communications Whitewater properly withheld in the face of Defendants' repeated, and failed, efforts to argue for waiver of that privilege.  Thus, the Court should deny Defendants' motion to exclude Mr. Godici's opinions and testimony.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' *Daubert* motion and motion *in limine* to exclude expert testimony and evidence.

BUCHALTER
A Professional Corporation
Irvine

DATED:  November 26, 2018

BUCHALTER
A Professional Corporation


By: /s/ Roger L. Scott
                              J. Rick Taché
                              Roger L. Scott
                              Erikson C. Squier
                         Attorneys for Plaintiff
                    Whitewater West Industries, Ltd.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION
TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE**
BN 34630186v5

Case No. 3:17-cv-01118-BEN-BLM

1

# **CERTIFICATE OF SERVICE**

2          The undersigned hereby certifies that a true and correct copy of the above

3    and foregoing document has been served on November 26, 2018, to all counsel of

4    record who are deemed to have consented to electronic service via the Court's

5    CM/ECF system per Civil Local Rule 5.4.  Any counsel of record who have not

6    consented to electronic service through the Court's CM/ECF system will be served

7    by electronic mail, first class mail, facsimile and/or overnight delivery.

8

9                                    */s/ Roger L. Scott*_____

10                                   Roger L. Scott

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27

BUCHALTER
A Professional Corporation
Irvine

**PLAINTIFF'S OPPOSITION TO *DAUBERT* MOTION**                                    Case No. 3:17-cv-01118-BEN-BLM
**TO EXCLUDE EXPERT TESTIMONY AND EVIDENCE**
BN 34630186v5