UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| WHITEWATER WEST INDUSTRIES, LTD., Plaintiffs, v. PACIFIC SURF DESIGNS, INC. AND FLOW SERVICES, INC., Defendants. AND RELATED COUNTERCLAIMS | Case No.: 17cv1118-BEN (BLM) **ORDER DENYING DEFENDANTS' MOTION TO REOPEN DISCOVERY AND COMPEL EVIDENCE** **[ECF No. 266]** **REDACTED** |
|---|---|

Currently before the Court is Defendants' March 8, 2019 Motion to Reopen Discovery and Compel Evidence [see ECF No. 266-1 ("Mot.")], Plaintiff's March 15, 2019 opposition to the motion [see ECF No. 267 ("Oppo.")], and Defendants' March 20, 2019 reply [see ECF No. 268 ("Reply")]. For the reasons set forth below, Defendants' motion is **DENIED**.

## BACKGROUND

This case was initiated following the dismissal of Flowrider Surf Ltd. v. Pacific Surf Designs, Inc., 15cv1879-BEN(BLM) for lack of standing. On August 3, 2017, District Judge Roger T. Benitez issued an Order Denying Plaintiff's Motion to Consolidate the instant matter with the Flowrider matter. ECF No. 39. In his order, Judge Benitez stated that the Court's "claim

1

construction order in the FlowRider action (ECF No. 88) and all discovery from the FlowRider action apply to the instant case." Id. at 2. Defendants answered the complaint and filed a counterclaim on October 24, 2017. ECF No. 53. Plaintiff answered the counterclaim on November 14, 2017. ECF No. 67. The Flowrider matter was closed on May 8, 2018. The same counsel appear in the instant matter and the Flowrider matter. See Dockets.

On December 7, 2017, in accordance with the Court's order, the parties filed a Joint Case Management Statement. ECF No. 80. In the statement, Plaintiff noted its position that there was no need for additional discovery beyond what was requested in the previous action while Defendants proposed limited additional discovery including five interrogatories, twenty-five requests for admission, and eight depositions. Id. at 7-11. On December 14, 2017, the Court held a telephonic, attorneys-only Case Management Conference ("CMC"). ECF No. 81. After the CMC, the Court issued a Case Management Order Regulating Discovery and Other Pretrial Proceedings in a Patent Case. ECF No. 82. In that order, the Court set the close of fact discovery for April 6, 2018 and the close of expert discovery for June 29, 2018. Id. at 2-3. Paragraph five of the order stated that "[t]he initial date for the substantial completion of document discovery including electronically stored information ("ESI") is January 15, 2018. See Patent L.R. 2.1(a)(1)." Id. at 2. Paragraph six of the order stated that

> All fact discovery shall be completed by all parties on or before April 6, 2018. The parties disagree as to whether or not there should be additional fact discovery in this matter given that discovery that has already taken place in related case Flowrider Surf, Ltd. et al v. Pacific Surf Designs, Inc., 15cv1879-BEN(BLM). Plaintiff argues that no additional discovery is needed while Defendants propose limited additional discovery, including "5 interrogatories, 25 requests for admission (between the two actions), and 8 depositions." ECF No. 80 at 5. As discussed with counsel during the CMC, the Court will permit limited additional discovery as follows: <u>5 interrogatories, 25 requests for admission (between the two actions), and 5 depositions</u>.

Id. (emphasis in original).

On January 12, 2018, the parties contacted the Court regarding a dispute over the interpretation of the Court's CMC Order and whether or not it permitted additional ESI discovery or if ESI was limited to discovery from the previous case. Defendants took the position that

additional ESI was permitted under the CMC Order while Plaintiff argued that it was not. During that call, the Court informed the parties that ESI discovery was permitted as part of the additional discovery authorized in paragraph six of the CMC Order.[1]

Although the deadlines for fact and expert discovery were initially set for April 6, 2018 and June 29, 2018 respectively, the parties filed numerous motions (both joint and *ex parte*) to continue the deadlines which the Court granted so the actual close of fact and expert discovery was July 20, 2018 and October 12, 2018. See ECF Nos. 88 (order continuing fact discovery deadline by three weeks and expert discovery deadline by one week), 107 (order continuing fact discovery deadline by one month), 133 (order continuing fact discovery deadline by almost two

---

[1] In its June 8, 2018 order granting in part and denying in part Defendants' motion to compel, the Court noted that there was a miscommunication between the parties and the Court and stated

> When the parties contacted the Court in January regarding their dispute over the CMC Order, the Court believed that Defendants were seeking ESI that was responsive to the discovery permitted under paragraph six of the CMC Order (5 interrogatories, 25 requests for admission (between the two actions), and 5 depositions). The Court's response was intended to allow both parties to obtain ESI if it was responsive to the authorized discovery. The Court did not anticipate that either party would issue RFPs seeking either ESI or other documents. The Court's understanding and intent was based, in part, on the fact that neither party requested the authority to issue RFPs. See ECF No. 80 at 7-11 (Plaintiff requested no discovery of any type and Defendants requested only interrogatories, RFAs and depositions). Both parties apparently interpreted the Court's response as authorizing unlimited RFPs and on January 15, 2018, Plaintiff served its RFPs and on January 25, 2018, Defendants served their RFPS. Oppo. at 23; see also MTC at 9-11, Brahma Decl. at Exhs. B-C, and Reply at 4. After initially objecting, Defendants responded to Plaintiff's RFPs. Oppo. at 23. Despite receiving Defendants' substantive responses to Plaintiff's RFPs, Plaintiff now attempts to argue that RFPs are not allowed. In light of the miscommunication and given the conduct of the parties, the Court overrules Plaintiff's objection on the basis that the CMC Order does not permit RFPs.

ECF No. 133 at 6.

3

months), 140 (order continuing expert discovery deadline by three months), 180 (order continuing expert discovery deadline by one week). In other words, the parties had more than seven months to conduct fact discovery in this case (December 14, 2017 – July 20, 2018) plus an additional sixteen months to conduct discovery in the Flowrider case (December 3, 2015 – April 28, 2017), all of which applied to the instant matter. ECF Nos. 39, 133; see also Docket in 15cv1879-BEN(BLM) at ECF Nos. 22, 196. Additionally, the parties had ten months to complete expert discovery in this case (December 14, 2017 – October 12, 2018) plus an additional nineteen months to conduct expert discovery in the Flowrider case (December 3, 2015 – July 14, 2017). ECF Nos. 39, 82, 180; see also Docket in 15cv1879-BEN(BLM) at ECF Nos. 22, 115.

Discovery in the instant case was contentious and the Court issued numerous discovery orders including permitting Defendants to seek the issuance of a letter of request to obtain limited discovery through the Singapore Supreme Court [see ECF Nos. 84 and 117], granting in part and denying in part Defendants' motion to compel [see ECF No. 133], denying Defendants' motion for terminating sanctions for Plaintiff's failure to comply with the Court's discovery orders [see ECF No. 170], and denying Defendants' request to file a motion for alternative sanctions for the same behavior alleged in the motion for terminating sanctions [see ECF No. 174].

On February 27, 2019, counsel for Defendants, Christopher Franich and Charanjit Brahma, and counsel for Plaintiff, Roger Scott, jointly contacted the Court regarding Defendants' desire to reopen and compel discovery. ECF No. 263. In response, the Court issued a briefing schedule. Id. The parties timely filed their pleadings in accordance with the briefing schedule. See Mot, Oppo., and Reply.[2]

---

[2] On September 27 and 28, 2018, the Court denied Defendants' motion for summary judgment and Plaintiff's renewed motion for preliminary injunction. ECF Nos. 181-182. There are currently several pending motions including various motions to seal and motions *in limine* [see ECF Nos. 189, 193-196, 198, 201, 203, 206, 208, 213, 218, 221, 224, 226, 234, 237, 240, 343, 245, 249, 253], a motion for leave to file a second motion for summary judgment [see ECF No. 192], a motion to strike or exclude the report and testimony of James T. Carmichael [see ECF No. 197], and a motion for summary judgment [see ECF No. 200]. The final pretrial conference is set for May 13, 2019. ECF No. 262.

## RELEVANT DISCOVERY BACKGROUND

On March 29, 2018, Defendants issued a subpoena duces tecum to Knobbe Martens Olson & Bear LLP ("Knobbe") seeking documents and communications related to the expiration or revival of U.S. Patent No. 6,491,589 ("the '589 patent") and related maintenance fees. ECF No. 154 at 12; see also ECF No. 154-2, Declaration of Christopher M. Franich in Support of Defendants' Motion for Sanction at ¶ 10, Exh. J. On April 13, 2018, Knobbe declined to produce responsive documents pending the resolution of the parties' dispute regarding the relevance of the expiration and revival of the '589 patent. ECF No. 158 at 14.

On April 20, 2018, Defendants filed a motion to compel seeking in part, discovery from Plaintiff related to Defendants' inequitable conduct claims and defenses surrounding the revival of the '589 patent. ECF No. 105. Specifically, Defendants sought an order compelling Plaintiff to permit Mr. Erikson Squier to be deposed regarding misrepresentations made to the United States Patent Office ("PTO") in the course of reviving the '589 patent, and to "provide discovery relating to the revival of the '589 patent that [was] withheld on grounds of attorney-client privilege or attorney work product, as those privileges [were] waived." Id. at 2. On June 8, 2018, the Court granted Defendants' request to compel response to deposition questions posed to Mr. Erikson Squire regarding "█████████████████████████████████████████████████████████████████████████████████████████████████████" and ordered that Plaintiff pay the costs of the follow-up deposition of Mr. Squier. ECF No. 133 at 24. The Court denied Defendants' request for (1) discovery relating to the revival of the '589 patent that was withheld on grounds of attorney-client privilege or attorney work product, (2) fees and expenses related to the first deposition of Mr. Squier, and (3) sanctions for the costs of bringing the motion. Id.

On July 11, 2018, Defendants informed Knobbe of the Court's June 8, 2018 order. ECF No. 158 at 15; see also ECF No. 158-4, Declaration of James Shean In Support of Opposition to

Motion for Sanctions at ¶ 2, Exh. 13. On July 19, 2018, Knobbe produced several emails from Knobbe to Plaintiff's counsel, Mr. Tache, ████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████. Id. at 13 n. 7.

Defendants state that six months later, on January 23, 2019, they discovered "public information suggesting that Plaintiff allowed both a U.K. counterpart of the '589 patent, UK 1 210 155, and a German counterpart, DE 1 210 155, to go abandoned for non-payment of maintenance fees." Mot. at 10-11. Defendants explain that the information found on the website maintained by the European Patent Office, was redacted and incomplete, however, Defendants were able to see that Mr. Timothy Kwasnicki, Plaintiff's former Vice-President, executed a declaration indicating that Plaintiff would be responsible for maintaining the intellectual property, including the UK patent, affected by the execution of an IP License Agreement between Flowrider Surf, Ltd. and Surf Park PTE, Ltd.[3] Id. at 11, n.5; see also ECF No. 266-2, Declaration of Christopher Franich in Support of Defendants' Motion to Repoen Discovery and Compel Evidence ("Franich Decl.) at Exh. 5. Mr. Kwasnicki further declared that Plaintiff received renewal reminders for "the Patent" from CPA Global ("CPA") who also monitored "renewal fees for their portfolio." Id. at 11; see also Franich Decl. at Exh. 5. In the current motion, Defendants argue that the terms "portfolio" and "intellectual property" include the '589 patent, that CPA therefore monitored the '589 patent, and that Plaintiff improperly failed to produce evidence regarding the UK and German patent expirations and reinstatements and CPA's involvement. Mot. at 10-14; 16-18.

---

[3] Defendants received the unredacted petitions to reinstate the UK and German patents in February 2019. Mot. at 12-13; see also Franich Decl. at ¶ 9 and ¶12 and Exhs. 9 and 12.

6

Defendants contacted Plaintiff on January 28, 2019 regarding their initial findings and asserted that the documents and/or information should have been provided to them in response to discovery requests propounded in November 2016. Id. at 14; see also Franich Decl. at Exh. 6. Plaintiff responded that Defendants were disrupting their trial preparation for Whitewater West Industries, LTD. v. Alleshouse et al., 17cv501-DMS(NLS) and Defendants agreed to postpone the issue until after trial. Id. at 14-15; see also Franich Decl. at Exhs. 13 and 14. Defendants continued their efforts to obtain the documents from their UK and German counsel and reached out to Plaintiff at the end of the last day of trial seeking an unredacted copy of the declaration and petition documents. Id. at 15; see also Franich Decl. at Exh. 15. On February 8, 2019, Plaintiff wrote to Defendants stating that Plaintiff had no reason to believe the documents were in its possession. Id.; see also Franich Decl. at Exh. 16. On February 11, 2019, Defendants informed Plaintiff that they were still waiting for complete unredacted documents from their foreign counsel, but that it appeared Plaintiff's statements to the GPTO were inconsistent with the representations Plaintiff made in this case. Id.; see also Franich Decl. at Exh. 17. On February 12, 2019, Plaintiff responded that its statements were not inconsistent - highlighting that discovery in this matter is limited to the '589 patent and has never included foreign counterparts and that CPA did not monitor the '589 patent. Id. at 16; see also Franich Decl. at Exh. 19. Plaintiff gave Defendants a declaration from Amanda Cash, North America Renewals Director for CPA, which stated that CPA had never monitored the '589 patent for Light Wave or Plaintiff. Id.; see also Franich Decl. at Exh. 20.

### A. REOPENING DISCOVERY

Once a Rule 16 scheduling order is issued, dates set forth therein may only be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); ECF No. 82 at 8 (scheduling order stating that dates will not be modified absent "good cause"). The Rule 16 "good cause" standard focuses on the "reasonable diligence" of the moving party. Noyes v. Kelly Services, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007). Essentially, "the focus is upon the moving party's reasons for seeking modification," however, a court also may consider the

"existence or degree of prejudice to the party opposing the modification." Johnson v. Mammoth Recreations, 975 F.2d 604, 609 (9th Cir. 1992). "In the context of motions to reopen discovery, the Ninth Circuit Court of Appeals ("Court of Appeals") has held that good cause requires the movant to show it 'diligently pursued its previous discovery opportunities' and that allowing additional discovery will preclude summary judgment." Lexington Ins. Co. v. Scott Homes Multifamily, Inc., 2015 WL 751204, at *4 (D. Ariz. Feb. 23, 2015) (quoting Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1026 (9th Cir. 2006)) (citing Panatronic USA v. AT & T Corp., 287 F.3d 840, 846 (9th Cir.2002)). There are several factors that a court may consider in deciding whether to reopen discovery: "1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence." Id., at *4 (quoting U.S. ex rel. Schumer v. Hughes Aircraft Co., 63 F.3d 1512, 1526 (9th Cir.1995), vacated on other grounds sub nom; see also Hughes Aircraft Co. v. U.S. ex rel. Schumer, 520 U.S. 939 (1997). "Whether to reopen discovery rests in the court's sound discretion." Bleek v. Supervalu, Inc., 95 F. Supp. 2d 1118, 1120 (D. Mont. 2000) (citing U.S. ex rel. Schumer, 63 F.3d at 1526).

1. Defendants' Position

Defendants seek to reopen discovery. Mot. at 7-8. If discovery is reopened, Defendants seek an order that

> (1) Plaintiff, CPA and Wave Loch/Light Wave/Lochtefeld be compelled to produce all documents related to steps taken to ensure payment of the maintenance fees for the patents identified as licensed in the IP License Agreement, including any instructions to CPA regarding any of the patents in that portfolio; (2) Defendants be granted leave to depose Ms. Amanda Cash, the declarant and representative of CPA who Plaintiff apparently worked with to produce statements in response to Defendants' questions; and (3) Defendants be granted leave to submit a supplemental expert report from their inequitable conduct expert, Mr. James Carmichael.

8

Mot. at 17-18. Defendants argue that the factors the Court may consider when reopening discovery weigh in favor of discovery being reopened in this matter. Id. at 18. Specifically, Defendants note that trial is not imminent as the pretrial conference has been continued to May 13, 2019 and no trial date has been set which provides plenty of time for the requested discovery to be produced, depositions to be taken, and expert reports to be supplemented. Id. Defendants note that their request "is limited to the single issue of Defendants' inequitable conduct claims and defenses." Id. Defendants also argue that Plaintiff would not be prejudiced by the reopening of discovery and that any such prejudice is of Plaintiff's own making because the documents should have been produced in the ordinary course of discovery. Id. at 19. Defendants further argue that they have been diligent and note that the delay in bringing this matter to the Court was due to Plaintiff's request to wait until after the trial in the parties' other case and that they promptly raised the issue with Plaintiff when they learned of it in January. Id. Defendants argue that the additional discovery was unforeseeable when discovery was open as "Defendants had no reason to believe that Plaintiff was self-servingly construing Defendants' discovery requests narrowly to avoid producing documents and information that generally related to the portfolio of patents covered by the IP License Agreement but that did not explicitly call out '589 patent at issue in this case." Id. Finally, Defendants argue that the information is likely to lead to relevant evidence. Id. Defendants note that throughout this case they have maintained that Plaintiff intentionally allowed the '589 patent to expire and deceived the USPTO rendering the '589 patent unenforceable and that they should be able to "explore those inconsistencies." Id. at 20.

2. Plaintiff's Position

Plaintiff contends that Defendants have not met the standard to reopen discovery. Oppo. at 20. First, Plaintiff notes that they oppose Defendants' motion which is a factor to be considered by the courts when deciding whether to reopen discovery. Id. Second, Plaintiff argues that it will be prejudiced if Defendants' motion is granted. Id. Specifically, Plaintiff explains that it will face increased litigation costs to conduct the requested discovery and to

rebut Defendants' new theory and notes that the parties have been actively litigating this case and the previous action for four years. Id. at 20-21. Plaintiff further explains that the prejudice is not the result of its conduct as Defendants never requested discovery related to foreign patents. Id. at 21.

Third, Plaintiff contends that Defendants were not diligent in seeking the discovery they are now requesting and state that simply raising the issue of newly discovered evidence as soon as it is discovered is insufficient to establish diligence when that evidence is discovered six months after the close of discovery and the case has been litigated for the more than four years. Id. at 21-22. Plaintiff argues that Defendants were aware in November 2016 that other patents may have expired due to non-payment of fees and yet chose not to conduct any relevant discovery. Id. at 22. Plaintiff asserts that:

> (i) Defendants knew that Whitewater had obtained responsibility to maintain and enforce numerous U.S. and foreign patents through the Contribution Agreement and the concurrently executed IP License Agreement, (ii) Defendants knew that both the '589 Patent had lapsed and been reinstated, and (iii) Mr. Kwasnicki expressly admitted that other Whitewater patents may have expired due to non-payment of maintenance fees, stating, 'Truthfully, there may be others slipping.'

Id. at 22. Plaintiff notes that despite having this information, Defendants failed to depose Mr. Kwasnicki regarding the expiration of the '589 and other patents and failed to ask Mr. Benac, Plaintiff's Fed. R. Civ. P. 30(b)(6) witness, about Plaintiff's "general patent portfolio, how Whitewater tracked or maintained its patents, or how tracking or maintenance of patents listed in the IP License Agreement was transferred from Mr. Lochtefeld to Whitewater" during his deposition. Id. at 23. Finally, Plaintiff notes that Defendants failed to explain why they waited until six months after the close of discovery to seek information regarding foreign patents. Id. at 24.

Fourth, Plaintiff contends that the discovery Defendants seek was foreseeable during the course of discovery. Id. at 25. Defendants were aware that other patents may have expired and should have known that Plaintiff would have given statements to U.S. or foreign patent

offices to have those patents reinstated. Id. Defendants also could have sought files related to Plaintiff's patent portfolio generally or patents that were subject to the IP License Agreement if they believed the files were relevant. Id. at 26.

Finally, Plaintiff contends that the discovery sought will not lead to relevant evidence as the manner in which non '589 patents were monitored are not relevant to this case. Id.

3. Analysis

The only factor in favor of reopening discovery is that trial is not imminent. While the pretrial conference is set for May 13, 2019, there is no trial date set. ECF No. 262. Every other factor that courts typically consider when deciding whether to reopen discovery favors a finding that discovery should remain closed. First, the request is strongly opposed by Plaintiff. Oppo.

Second, the Court finds that Plaintiff would be greatly prejudiced if the Court were to reopen discovery. Discovery in this case closed more than eight months ago. Experts reports have been prepared and exchanged, one motion for summary judgment has been briefed and denied [see ECF No. 181], another motion for summary judgment has been filed and fully briefed [see ECF Nos. 200, 251], several motions *in limine* have been filed and fully briefed [see ECF Nos. 196, 193, 195, 194, 251], and the pretrial conference is one month away. Moreover, the requested discovery would take a significant amount of time to complete because Defendants have not previously requested the discovery they now seek to compel. Defendants argue that interrogatory No. 1 and request for production No. 2 seek information regarding foreign counterparts. Defendants are incorrect; the identified discovery requests are limited to the '589 and '016 patents at issue in this litigation. Defendants want to depose Ms. Cash and to obtain the production of "all documents related to steps taken to ensure payment of the maintenance fees for the patents identified as licensed in the IP License Agreement[4], including any instructions to CPA regarding any other patents in that portfolio." Mot. at 17. The amount of time required for Defendants to properly serve the discovery requests they are contemplating, Plaintiff to

---

[4] This appears to include at least fifty patents. Oppo. at 28; see also Reply at 10.

respond to said requests, for the parties to meet and confer regarding the responses, for Defendants to properly notice and depose Ms. Cash, and for Defendants to supplement their expert reports, likely would further delay the pretrial conference and trial and significantly prejudice Plaintiff.

Third, the Defendants were not diligent in obtaining discovery within the guidelines established by the court. Defendants never propounded discovery concerning foreign patents or the expiration and reinstatement of other patents in Plaintiff's portfolio and the identified interrogatory and request for production do not request information this information. Also, despite engaging in numerous discovery disputes, Defendants never raised the issue of foreign patents or the expirations of patents apart from the '589 patent or tried to compel such information. Defendants also failed to seek such discovery when they deposed Plaintiff's corporate representative despite designating thirty-six topics. Oppo. at 23; see also ECF No. 267-1, Declaration of Roger L. Scott in Support of Plaintiff's Opposition to Defendants' Motion to Reopen Discovery and Compel Evidence ("Scott Decl.") at Exh. 4. As explained above, Defendants have had almost two years to conduct fact discovery and, in that time, they have never attempted to seek discovery regarding the foreign patents licensed in the Contribution Agreement until now. Scott Decl. at ¶ 9. The Court further finds that Defendants were not diligent because as early as November 2016, they were in possession of an email from Mr. Kawsnicki indicating that the '589 patent had expired and that other patents were also likely to be "slipping," but chose not to follow-up by deposing him or conducting other discovery regarding the other slipping patents. Scott Decl. at ¶ 6 and Exh. 3.

Fourth, the Court finds that Defendants were allowed a generous amount of time by the district court to conduct discovery and the need for the additional discovery was foreseeable. Contrary to Defendants' position, the Court does not find that the discovery was unforeseeable because "Plaintiff was self-servingly construing Defendants' discovery requests narrowly to avoid producing documents and information that generally related to the portfolio of patents covered by the IP License Agreement but that did not explicitly call out '589 patent." Mot. at 19.

12

Plaintiff's interpretation of Defendants' discovery requests was reasonable as the requests were limited to the patents at issue in this litigation. Defendants have focused on the alleged inequitable conduct for years now and should have foreseen the desire to conduct discovery regarding Plaintiff's alleged pattern of failing to properly monitor and timely renew their patents. This conclusion is further supported by the fact that as of November 2016, Defendants had Mr. Kwasnicki's email stating that "there may be other [patents] slipping" and that he does not have the time to quickly follow up on all the patent issues. Scott Decl. at ¶ 6 and Exh. 3.

Finally, the Court finds that the discovery sought by Defendants would be minimally relevant. Plaintiff has voluntarily provided Defendants with a declaration from Ms. Cash stating "CPA Global has never monitored the '589 Patent for any client, has never made annuity payments for the '589 Patent, and has never sent any correspondence or reminders related to the '589 Patent." Id. Franich Decl. at Exh. 20. Therefore, it is unlikely that deposing Ms. Cash will lead to relevant information. In addition, Defendants have extensive discovery regarding the circumstances surrounding the expiration and reinstatement of the '589 patent, are aware that the UK and German patents were restored, and that Mr. Kwasnicki opined that other patents may have slipped. As such, the requested time-consuming discovery would provide minimal, if any, additional relevant evidence.[5]

### B.  MOTION TO COMPEL

Because fact discovery in this matter closed more than eight months ago, because there are no outstanding discovery requests for which the Court can compel a response, and because the Court is denying Defendants' request to reopen discovery, the Court **DENIES** Defendants'

---

[5] The Court understands that Defendants believe that the relevance of the discovery being sought is not just about the '589 patent vs. the foreign patents, but is also about the statements that Plaintiff has made to reinstate other patents that conflict with Plaintiff's position in the instant matter. Scott Decl. at Exh. 5. However, this does not change the Court's position because, as explained above, Plaintiff opposes this motion, Plaintiff would be prejudiced if this motion was granted, Defendants have not been diligent in their pursuit of the evidence, and the need for the evidence was foreseeable.

motion to compel.

## C. SANCTIONS

If a motion to compel discovery is denied, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Federal Rule of Civil Procedure 37(a)(5)(B). See Brown v. Hain Celestial Group, Inc., 2013 WL 5800566, *5 (N.D. Cal. Oct. 28, 2013) ("[t]he party that loses the motion to compel bears the affirmative burden of demonstrating that its position was substantially justified") (internal citations omitted). "Discovery conduct is substantially justified if it is a response to a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." Izzo v. Wal-Mart Stores, Inc., 2016 WL 409694, at *7 (D. Nev. Feb. 2, 2016) (citing Pierce v. Underwood, 487 U.S. 552, 565 (1988)).

### 1. Parties' Positions

Plaintiff seeks to recover its costs in opposing this motion. Oppo. at 28. Plaintiff argues that Defendants' motion to compel is not substantially justified as the discovery they seek is not responsive to the discovery requests issued in this action or the Flowrider action (15cv1879). Id. at 29. Plaintiff notes that it attempted to address Defendants' concerns by providing additional facts and a declaration from CPA explaining that it had never monitored the '589 patent, never made payments on the '589 patent, and never sent or received correspondence regarding the '589 patent. Despite these efforts, Defendants filed the instant motion. Id.

Defendants contend that Plaintiff's request for attorneys' fees should be denied because "the pending motion is substantially justified." Reply at 10.

### 2. Analysis

For the reasons set forth above, the Court denies Defendants' motion to reopen and compel discovery. Because the Court does not find that Defendants' motion was substantially justified or that other circumstances make an award of sanctions unjust, Plaintiff's request for

sanctions is **GRANTED**. On or before **April 22, 2019**, Plaintiff's counsel must file a declaration in support of the attorneys' fees and costs incurred in opposing Defendants' motion [see ECF No. 266]. Defendant must file any objection or opposition to Plaintiff's declaration on or before **May 6, 2019**. Plaintiff's reply, if any, must be filed by **May 13, 2019**. Upon completion of the briefing, the Court will take the matter under submission and issue a written order.

**D.     CONCLUSION**

Defendants' motion to reopen and compel discovery is **DENIED**. Plaintiff's motion for sanctions is **GRANTED**.

**IT IS SO ORDERED**.

Dated:  4/8/2019

Hon. Barbara L. Major
United States Magistrate Judge