<pre>
 1                    United States District Court

 2              for the Southern District of California

 3                                      )
 4   WHITEWATER WEST INDUSTRIES,        )
     LTD., a Canadian Corporation,      )   No. 17cv1118-BEN
 5                                       )
             Plaintiff,                 )   December 3, 2019
 6                                       )
                  v.                    )   San Diego, California
 7                                       )
     PACIFIC SURF DESIGNS, INC., a      )
 8   Delaware Corporation, and FLOW     )
     SERVICES, INC., a California       )
 9   Corporation,
10       Defendants.
11                           VOLUME 1A
12                     TRANSCRIPT OF JURY TRIAL
               BEFORE THE HONORABLE ROGER T. BENITEZ
13                 United States District Judge
14   APPEARANCES:
15   For the Plaintiff:      SNELL & WILLMER LLP
                                  WILLIAM S. O'HARE
16
                             BUCHALTER
17                                ROGER L. SCOTT
18   For the Defendants:     THOMAS WHITELAW & KOLEGRAFF LLP
                                  JOSEPH E. THOMAS
19                                WILLIAM J. KOLEGRAFF
20
21
22
23   Court Reporter:         Dana Peabody, RDR, CRR
                             District Court Clerk's Office
24                           333 West Broadway, Suite 420
                             San Diego, California 92101
25                           DanaPeabodyCSR@gmail.com
</pre>

|       |    |                                                            |
|-------|----|------------------------------------------------------------|
|       | 1  | San Diego, California, December 3, 2019                     |
|       | 2  | *  *  *                                                    |
|       | 3  | THE COURT:  Okay.  Good morning.                           |
|       | 4  | THE CLERK:  1 on calendar, 17CV1118, WhiteWater West       |
| 09:35 | 5  | Industries, Ltd., versus Pacific Surf Designs, Inc., et al.,|
|       | 6  | jury trial, Day 1.                                         |
|       | 7  | THE COURT:  Counsel, please register your appearances     |
|       | 8  | for the record.                                            |
|       | 9  | MR. O'HARE:  Good morning, Your Honor.  Bill O'Hare        |
| 09:35 | 10 | for the plaintiff, WhiteWater West Industries.  I'm here with|
|       | 11 | my colleagues Roger Scott and Rick Taché, and I see Christina|
|       | 12 | Trinh has left the courtroom but will be here.  We've also got|
|       | 13 | our nonlawyer member of our team here, Lee Miles, and from our|
|       | 14 | client, Marsh Myrman is here in court as well.             |
| 09:35 | 15 | THE COURT:  All right.                                     |
|       | 16 | MR. THOMAS:  Good morning, Your Honor.  Joseph Thomas      |
|       | 17 | of Thomas Whitelaw & Kolegraff for the defendants.  I have with|
|       | 18 | me my partner, William Kolegraff, seated to my left.  To my|
|       | 19 | right is Tierra Mendiola, our senior paralegal.  And across|
| 09:35 | 20 | from Ms. Mendiola is Richard Alleshouse of the defendants and|
|       | 21 | Yong Yeh of the defendants.                                |
|       | 22 | And I do need to mention, just in case this comes up,      |
|       | 23 | Mr. Alleshouse is expecting his third child any minute of any|
|       | 24 | day, and he may be required to leave the courtroom to be   |
| 09:36 | 25 | available for the birth of his child, so if he has to leave --|

|       |    |                                                                        |
|-------|----|------------------------------------------------------------------------|
|       | 1  | THE COURT:  That's not an excuse.  I'm kidding.                         |
|       | 2  | Fooled you all.  Congratulations.  When is the baby due?               |
|       | 3  | MR. ALLESHOUSE:  Two weeks.                                             |
|       | 4  | THE COURT:  All right.  Well, you let us know.  Okay?                   |
| 09:36 | 5  | All right.  Great.                                                      |
|       | 6  | MR. O'HARE:  Your Honor, incidentally, we have a less                   |
|       | 7  | joyful excuse for possible excusing.  Mr. Myrman from time to           |
|       | 8  | time, due to some medical concerns, not the same circumstances         |
|       | 9  | as Mr. Alleshouse, may also need to leave the courtroom, and            |
| 09:37 | 10 | it's no disrespect.                                                     |
|       | 11 | THE COURT:  All right.  Well, I'll take no disrespect                   |
|       | 12 | from it.                                                                |
|       | 13 | All right.  Good enough.  Okay.  So let's see.  Let's talk             |
|       | 14 | about some scheduling issues quickly.                                   |
| 09:37 | 15 | First of all, counsel, you're going to have to pare down              |
|       | 16 | your case, so let me tell you what is going on.                        |
|       | 17 | I am sadly, as of right now -- I am scheduled to be at a               |
|       | 18 | dental appointment on the 11th.  Nothing I can do about that.           |
|       | 19 | My wife's not expecting a baby, but I am having a crown,               |
| 09:37 | 20 | permanent crown, put in, and I'm working on not even a                  |
|       | 21 | temporary since my temporary came off, so I really can't wait           |
|       | 22 | much longer before they put the permanent crown in.  And that          |
|       | 23 | will take me all day because I travel to Brawley, California,           |
|       | 24 | to have my dental work done.  So that means that December 11th          |
| 09:38 | 25 | I will not be available.                                                |

09:38

09:39

09:39

09:40

09:40

1       Now, there's one caveat for that, and that is that my wife

2    is currently attempting to see if we can schedule that for

3    Monday, the 9th.  So if we can schedule it for Monday, the 9th,

4    that would work better for me and probably better for the

5    trial.  Why?  Because then on the 13th, I'm scheduled to sit

6    with the Ninth Circuit in Seattle, which means that I will not

7    be here on the 13th.  Okay?  Now, that means that we have

8    basically today, the 4th, 5th, 6th, 9th, 10th, and 12th to get

9    this case to the jury.  Okay?  So it could be that it's

10   the -- we switch the 9th and the 11th.  But this case doesn't

11   strike me as being that complex that we can't try it -- if we

12   stick to the issues and not bicker too much, I think we should

13   be able to get this case tried in that amount of time.

14       All right.  Secondly, on Thursday, the 5th, we'll be

15   finishing early at 4:00.

16       All right.  Third thing.  I have two late-filed motions in

17   lim.  Motion in lim to exclusion discussions that occurred

18   during settlement discussions.  That motion is granted.

19       There was a motion to essentially require an attorney to

20   testify.  Judge Major has already ruled on that motion, and

21   Judge Major's ruling upholding the attorney-client privilege

22   will be upheld by this Court, so that motion is denied.  Okay?

23   Good.

24       Now, I'm going to use the questionnaire, which I thought

25   was fairly -- not fairly well.  I thought it was very well

1    done.  I'm going to use that for voir dire.  I think I can

2    probably get voir dire done easily this morning.

3        So unless there's anything else that any of you have to

4    just feel compelled to address at this point in time, I will

09:40  5    ask my clerk to summon the jury and bring them in.

6        I intend to pick eight jurors.  Hopefully we won't need to

7    replace any of them, but if we do, we'll have two to spare

8    anyway, and that's pretty much it.

9        Do we have anything we need to address right now?

09:41  10           MR. THOMAS:  Yes, quickly, Your Honor.

11           THE COURT:  What's that?

12           MR. THOMAS:  With regard to the motion about

13   settlement communications, we received that.  As the Court

14   knows, it was filed yesterday.  We were going to file an

09:41  15   opposition.

16           THE COURT:  Yes, Judge Major already decided that.

17   This very same issue was brought up to her, and she made a

18   ruling on it.

19           MR. THOMAS:  There are two different motions.  We're

09:41  20   talking about the motions filed by the plaintiffs regarding

21   settlement communications.

22           THE COURT:  Right.

23           MR. THOMAS:  And I don't believe that was part of

24   the --

09:41  25           THE COURT:  Oh, I see.  You're right.  I confused the

1    two.  No, but settlement communications are privileged and

2    exempted, so no.  Okay?  Good.

3        Glenn, do me a favor.  Go get the jury.

4           MR. THOMAS:  Sir, one last question.  How many

09:42    5    peremptories?  Are we getting any extra peremptories?

6           THE COURT:  Three each.

7        Anybody have any objection to that thing being there?

8           MR. SCOTT:  We discussed with counsel that it be

9    covered during jury selection.

09:42    10           THE COURT:  Great.  Good.  Cover it up.

11           MR. THOMAS:  The last thing is that it's going to be

12    uncovered for purposes of the opening used.  It's by

13    stipulation.  It's on wheels.  We need to have -- ask for

14    permission of Court at -- during my opening to move that closer

09:42    15    to the jury.

16           THE COURT:  Oh, yes, sure.  No problem.

17        By the way, Counsel, just so that you know, you can address

18    the jury anywhere you want.  You can use the lectern if you

19    want to.  You can step into the well if you want to.  I don't

09:42    20    want you getting any closer to the jury than the line that

21    would extend if you took this line and followed it out that

22    way, and that's as far as I'd like for you to get to the -- as

23    close as I'd like you to get to the jury.  Okay, great.

24        Glenn, do me a favor and bring the jury in.

09:43    25           THE CLERK:  Yes, Judge.

1          THE COURT:  Thank you.

2      (Recess.)

3      (Proceedings held in the presence of the jury panel.)

4          THE COURT:  Well, good morning.  Good morning.  I just

10:15   5  came back from grandparents' day at my grandkids' school, so

6  I'm following suit.  Hope you all had a nice Thanksgiving.

7      Ladies and gentlemen, my name is Roger Benitez.  I'm the

8  judge that's assigned to try this case.  This case is entitled

9  WhiteWater West Industries, Ltd., versus Pacific Surf Designs,

10:15  10  Inc., and Flow Services, Inc.

11      Before we start and go any further, I'd like to have the

12  parties introduce themselves and their attorneys.  So starting

13  with the plaintiff, WhiteWater West Industries, would you

14  please stand up and introduce yourself to the potential jurors.

10:16  15          MR. O'HARE:  Good morning, Your Honor, and good

16  morning, ladies and gentlemen, all of you.  My name is

17  Bill O'Hare, and I represent WhiteWater West Industries, and

18  here at the table is Roger Scott and a nonlawyer colleague,

19  Lee Miles, and I think we ran out of space.  Another lawyer in

10:16  20  our group, Christina Trinh, is back there.  Brenda Lin, she's

21  one of the paralegals, and then from our client, WhiteWater, is

22  Mr. Marsh Myrman sitting on the end of the row here.

23      Thank you, Your Honor.

24          THE COURT:  All right.  And if we could have Pacific

10:16  25  Surf Designs and Flow Services, Inc., introduce themselves.

1          MR. THOMAS:  Thank you, Your Honor.

2      Joseph Thomas on behalf of defendants Pacific Surf Designs

3  and Flow Services, Inc.  With me to my left is my partner,

4  William Kolegraff.  You'll be hearing from him at trial.  And

10:16  5  to my right is Tierra Mendiola, who is assisting us throughout

6  the trial.  Across from Ms. Mendiola is Richard Alleshouse.

7  He's the president of the defendants, together with Yong Yeh,

8  who is also a principal with the defense, defendants, as well.

9      Thank you.

10:17  10          THE COURT:  All right.  Thank you.

11      All right.  So let's start out by having you raise your

12  hand if you've ever sat on a jury previously.  Please raise

13  your hand.  I'd say probably a little more than half of you.

14  Okay.  So we have some pretty good idea of what's going to

10:17  15  happen.

16      All right.  Let me, first of all, tell you what we're going

17  to do today.  We're going to try and find -- well, we're not

18  going to try, we are going to find eight of you who will be

19  able to sit as jurors in this case.  Your job will be to hear

10:17  20  the evidence as it is presented to you and then to apply the

21  law as I state it to you whether you agree with the law or not.

22  I have to warn you about that because sometimes -- I don't

23  think it's going to happen in this case, but sometimes it

24  happens that people don't like the law and they want to apply

10:18  25  the law that they like rather than the law that is the law and

1       that I tell them they have to live by.  But in any event, your

2       job is simply to listen to the evidence, look at the evidence,

3       and then listen to the law as I will give it to you, and then

4       to apply the evidence to the law without any biases or

10:18   5       prejudices or sympathies that might affect your judgment.

6            It's a relatively straightforward job, but sometimes,

7       sometimes it happens that there are people that we call to jury

8       duty that, for whatever reason, they may not be able to sit as

9       jurors in a particular case.

10:18   10      And so what we're going to do this morning is we're going

11      to ask some questions.  I promise you, it's not going to hurt a

12      bit.  We're going to ask you some questions to try to find out

13      a little bit about you and to see whether or not there might be

14      something that might possibly affect your ability to be fair

10:19   15      and impartial in this case.

16           Before I go any further, I'm going to give you a very brief

17      summary of what this case is about.  It's very, very brief.  I

18      don't have all day, and so I'm just going to make it very, very

19      simple for you.

10:19   20           In this case, the plaintiff, Whitewater West Industries,

21      Ltd., is suing the defendants for infringement of a patent,

22      which will be known as the '589 patent.  Under 35 United States

23      Code Section 271(a) or alternatively, infringement under the

24      doctrine of equivalents.  Now, for most of you, that may all

10:19   25      sound like Greek to you, but we will try to explain this all to

1    you further down the line.

2        Specifically, the plaintiff contends that two lines of

3    Pacific Surf Design's products infringe certain claims of

4    plaintiff's '589 patent.

10:20   5        Furthermore, the plaintiff also contends that FSI's, Flow

6    Services, Inc., refurbishment and maintenance of nozzle

7    assemblies on sheet wave water attractions infringe Claim 17 of

8    the '589 patent.

9        The defendants deny their activities infringe the '589

10:20   10   patent willfully or otherwise and that plaintiff is not

11   entitled to enforce its U.S. patent against any of their

12   attractions in foreign countries.

13       So that's, in a nutshell, what this case is about.

14       Now, in order for me to make sure that we have a fair and

10:20   15   impartial jury, I'm going to be asking you some questions, and

16   I need to make sure that you understand that you're required to

17   tell me truthful and complete answers to my questions.

18       So in order to do that, I'm going to have you all please

19   rise and raise your right hand, and my courtroom deputy will

10:21   20   administer an oath to you.

21       (The jurors were sworn.)

22           THE CLERK:  Please be seated.

23           THE COURT:  Okay.  Now, let me tell you about

24   scheduling.  By the way, let me tell you, I think this is going

10:21   25   to be an interesting trial.  Of all the types of trials that we

1   have, I think it's an interesting one.  Now, it's going to take

2   about, give or take, maybe seven to ten days to try this case,

3   okay, which means that it's a relatively short trial.  Not as

4   short as some, but shorter than others.

5       Our scheduling is going to work like this:  We're going to

6   go today until 4:00.  We're going to come back tomorrow at

7   9:00.  And we're going to go probably until about 4:00.  Then

8   we're going to come back, and we're going to do this all week

9   long except for Thursday.  Thursday -- well, Thursday we'll

10   break at 4:00 again.  And then Friday we'll break at 4:00.

11       Now, I have confirmed that I will be gone on the 9th,

12   Monday, the 9th.  So just because I'm a really nice guy, I'm

13   going to give you all a three-day weekend.  So we will not be

14   here on the 9th.  We'll come back on the 10th at 9:00 a.m.

15   Again, we will go until 4:00.  Wednesday again at 9:00 a.m.

16   until 4:00.  And Thursday 9:00 a.m. until 4:00.  Assuming that

17   this case is not concluded before the 12th, we will not be here

18   on the 13th.  We'll come back on the 16th.  On the 13th, I'm

19   sitting with the Ninth Circuit Court of Appeals, and there's

20   nothing I can do about rescheduling that, so I apologize.  But

21   hopefully, the lawyers, as I'm sure that they will endeavor to

22   do, will work hard at trying to get this case to you for jury

23   deliberations.

24       Now, if any of the days when I said I would not be here --

25   it's possible that I may have you come in if you're

1  deliberating.  Okay?  So let's assume the case has been

2  concluded, it has been submitted to the jury for deliberations.

3  Even though I may not be here, if I can find another judge to

4  cover for me, I will then have you be here on that day.  But

10:24   5  for the time being, just assume that the schedule that I have

6  given you is the schedule that we will follow.  Okay?

7  Understood?  All right.  Good.

8       Anyone -- by the way, if you cannot live with that

9  schedule, I will be happy to excuse you; however, I should tell

10:24  10  you that just because I excuse you does not mean that you're

11  done with jury service because what will happen is I will send

12  you back to where you came from, to the jury commissioner's

13  office, and there they may assign you to a different case,

14  which may be a shorter trial or it could be a longer trial.  So

10:24  15  there you have it.  Okay?

16       Now, are there any of you who would have a problem with the

17  schedule as I've laid it out for you?  Wow, look at you.

18       Okay.  Well, Glenn, do me a favor and deliver the

19  microphone over here to this young lady.

10:25  20       By the way, as a rule, the first thing that you should say

21  anytime that you speak to me is your juror number.  You've been

22  given a juror number.  We give you a number not because we're

23  trying to dehumanize you in any way.  It's simply easier for my

24  court reporter, who is transcribing everything that is said in

10:25  25  the courtroom -- it's simply easier for her to use numbers than

1    to try to use names.  There are some names that are more

2    difficult than others.

3        Okay.  What's your juror number?

4            PANEL MEMBER:  Juror Number 2.

10:25   5            THE COURT:  What's your problem?

6            PANEL MEMBER:  My grandfather had a seizure this

7    Saturday, so I'm the oldest granddaughter, so I have to take

8    care of him, so I'm trying to schedule with my mother, but

9    because it was a family emergency, I couldn't notify the jury

10:25  10   about it, so I need to be excused for this court.

11           THE COURT:  I'm sorry.  I didn't quite follow you.

12   Okay.  So your grandfather had a seizure, right?  And you're

13   the oldest granddaughter?

14           PANEL MEMBER:  And I take care of him with my mother.

10:26  15           THE COURT:  And you take care of him with your mother.

16           PANEL MEMBER:  Yes.

17           THE COURT:  Meaning what?  Meaning --

18           PANEL MEMBER:  My schedule is -- I can't be here with,

19   like, the schedule that you said previously.

10:26  20           THE COURT:  Okay.  So can you be here at all?

21           PANEL MEMBER:  I don't think so.

22           THE COURT:  Did you let the jury commissioner know

23   that when you were over there?

24           PANEL MEMBER:  I did, and they told me to come here.

10:26  25           THE COURT:  They told you they'd pass the buck on to

1    me, didn't they?  Boy, that figures.  Okay.  Well, all right.

2    Let me make a note of this.  I'll see what we can do about it.

3    Okay?

4                 PANEL MEMBER:  Okay.

10:26    5                 THE COURT:  All right.

6         All right.  I believe Juror Number 3 had --

7                 PANEL MEMBER:  Yes, I'm Juror Number 3.

8                 THE COURT:  Yes.

9                 PANEL MEMBER:  I will have extreme financial

10:27    10   difficulties to serve.  I'm self-employed, massage therapist.

11                THE COURT:  Yes.

12                PANEL MEMBER:  I also work part-time at a spa, and

13   I -- without me being there, I will have trouble making money.

14   And on December 12th and 13th, we're headed to NAU in Flagstaff

10:27    15   for my nephew and my niece's graduation from college.

16                THE COURT:  Okay.  Well, unfortunately, neither one of

17   those will get you out of this trial.  The financial hardship,

18   it's one of the things that happens, and the graduation, you

19   know, it's just not something that I can excuse you for.  Okay?

10:28    20   Thank you.

21        Now, there were some other people that raised their hands.

22   Okay.  The folks in the back, I'm not going to talk to you

23   right now.  It's not because I don't like you.  It's just that

24   I have a feeling, and I'm an optimist, and I believe that I

10:28    25   probably can pick a jury without even talking to you folks in

1    the back.  That doesn't mean you should fall asleep or not

2    listen to what we're saying, but for the time being, I'm not

3    going to talk to you.  Okay?

4        All right.  Was there anybody else in the front row?  I

5    thought I saw a hand, but --

6              THE CLERK:  Your Honor.

7              THE COURT:  Oh, you have a problem.  Okay.  What's

8    your juror number?

9              PANEL MEMBER:  I'm Juror Number 6.

10             THE COURT:  Okay.

11             PANEL MEMBER:  And I'm not sure if this will make a

12   difference, but my employer only pays for five days of jury

13   service.

14             THE COURT:  Sorry.

15             PANEL MEMBER:  Okay.

16             THE COURT:  Doesn't work.

17       All right.  Someone else?

18             PANEL MEMBER:  Juror Number 10, Your Honor.

19             THE COURT:  Yes.

20             PANEL MEMBER:  My wife is presently suffering from

21   acute depression and anxiety and not at work right now.  We

22   don't have children or anyone else to care for her, so I'm

23   responsible for taking her to her therapy and psychiatrists and

24   other --

25             THE COURT:  How often is she going to therapy?

1          PANEL MEMBER:  At present, about once a week.

2          THE COURT:  Okay.  And is she scheduled to go this

3    week?

4          PANEL MEMBER:  Her next appointment would be December

10:29   5    the 13th for her psychiatrist.  We have not -- she was supposed

6    to have had a therapy appointment yesterday.  We rescheduled it

7    because she had a breakdown and could not go.

8          THE COURT:  Okay.  All right.  Thank you.

9       Okay.  Anyone else?  All right.  Over there in the corner.

10:30  10          PANEL MEMBER:  Hi.  I'm Juror Number 15.  On this

11   Friday, I have surgery, and next week, I have a business trip

12   that I could not move.

13          THE COURT:  Wait.  You have surgery?

14          PANEL MEMBER:  I have surgery on Friday, and I have to

10:30  15   leave for L.A. on Monday.

16          THE COURT:  You have surgery this Friday?

17          PANEL MEMBER:  Uh-huh.

18          THE COURT:  This coming Friday?

19          PANEL MEMBER:  Uh-huh.

10:30  20          THE COURT:  But you're going on a business trip on

21   Monday?

22          PANEL MEMBER:  Yeah.

23          THE COURT:  Okay.

24          PANEL MEMBER:  And I did try to move the business

10:30  25   trip, but they won't move it.

1          THE COURT:  I'm sorry?

2          PANEL MEMBER:  I did try to move the business trip,

3   but they won't move it.

4          THE COURT:  Who's they?

10:30   5          PANEL MEMBER:  My company.

6          THE COURT:  Well, I don't care.  Are you really going

7   to have surgery on --

8          PANEL MEMBER:  I really am having surgery.  I'm a

9   little embarrassed to talk about what it is, but I should be

10:30  10  fine by Monday.

11          THE COURT:  Okay.  All right.  So we're going to be in

12   session on Friday.

13          PANEL MEMBER:  Yeah.

14          THE COURT:  We can't have you here if you're in

10:31  15   surgery, right?

16          PANEL MEMBER:  No.

17          THE COURT:  Okay.  We'll keep that in mind.

18          THE CLERK:  One more, Judge.

19          THE COURT:  Okay.

10:31  20          PANEL MEMBER:  Good morning, Your Honor.  I'm Juror

21   Number 27.  I have two very elderly parents.  My dad currently

22   has lymphoma, and he's taken a turn, like, in the last three

23   weeks.  I had made an appointment to meet with my folks so they

24   can put me on their bank accounts this Friday because time's,

10:31  25   kind of, of the essence.  That would be one day that I wouldn't

1  be able to be here, but I would like to serve if it's a

2  possibility.

3        THE COURT:  Okay.  Well, can't you do it after 4:00?

4        PANEL MEMBER:  They live in Orange County.

10:31  5        THE COURT:  You live in Orange County?

6        PANEL MEMBER:  No, I live here.  My folks live in

7  Orange County.

8        THE COURT:  Oh, they live in Orange County, so you've

9  got to get up there to do this.  How about doing it on Monday?

10:32  10  Because I'm not going to be here on Monday.

11        PANEL MEMBER:  You're not.  Do you want to call my

12  boss and tell her to give me that day off?  I got Friday off.

13  Actually, I think my dad has a doctor's appointment Monday.  He

14  told me Friday would be good.  I'll do whatever is required.

10:32  15        THE COURT:  Okay.  All right.  Well, let us think

16  about it.  Okay?

17        PANEL MEMBER:  Very good.  Thank you.

18        PANEL MEMBER:  Good morning.  I am Juror Number 29.  I

19  would like to request a financial hardship.  I am an hourly

10:32  20  employee, and my employer does not pay for any time off for

21  jury duty service.

22        THE COURT:  Okay.  Well, I appreciate that, but again,

23  that's one of those things that the law does not provide as an

24  excuse, unfortunately.

10:33  25        PANEL MEMBER:  Understood.

19

1          THE COURT:  All right.  Thank you.  Okay.

2          PANEL MEMBER:  Sorry.  One more.  I'm Juror Number 32.

3    I have a business trip on Friday that cannot be changed or

4    canceled with a nonrefundable ticket.

10:33   5          THE COURT:  Tell me about your business trip.

6          PANEL MEMBER:  I'm going to Denver to meet with my

7    colleagues in my company, and it's been on the books for some

8    time, so -- do you want to know what we're going to talk about?

9    What kind of information do you want?

10:33  10          THE COURT:  Yeah, you know, before I became a judge, I

11   was a business lawyer for many years, so I know quite a bit

12   about business, and there's business meetings and there's

13   business meetings.  So why don't you tell me a little bit about

14   your business meeting.

10:34  15          PANEL MEMBER:  Sure.  I work for the cable company,

16   Spectrum Cable.

17          THE COURT:  I'm sorry?

18          PANEL MEMBER:  Spectrum Cable.

19          THE COURT:  Okay.

10:34  20          PANEL MEMBER:  We're remote teams of people across 41

21   states, so I have other colleagues that are flying in from

22   other states to host this meeting, and it's an annual planning

23   meeting to talk about our 2020 plans.

24          THE COURT:  Okay.  All right.  Well, thank you.

10:34  25       Okay.  Now, we've got that out of the way.  Let's see.  So

1    let me ask you some questions.

2        First of all, how many of you have ever been involved in a

3    lawsuit; that is, you have sued someone or someone has sued

4    you?  It didn't take you but a nanosecond.  Wow.  Did you know

10:35    5    what I was going to ask?  You were going to raise your hand no

6    matter what.  I'm going to do this in order.  All right.  Have

7    any of you ever been involved in a lawsuit, been sued or have

8    sued someone?

9        All right.  Glenn, do me a favor.  Deliver the microphone,

10:36    10    please, to the gentleman in the paisley shirt.

11        All right, sir.  What's your juror number?

12            PANEL MEMBER:  Juror Number 4.

13            THE COURT:  All right.  Tell me about that.

14            PANEL MEMBER:  I was -- I worked with the City of

10:36    15    Poway for 30 years as the operations manager and landscape

16    manager, and I was involved in a number of lawsuits over the

17    years.

18            THE COURT:  As a plaintiff or as a defendant?

19            PANEL MEMBER:  As the defendant.

10:36    20            THE COURT:  Okay.  Anything about that experience that

21    would keep you from being able to sit as a juror in this case?

22            PANEL MEMBER:  No.

23            THE COURT:  All right.  Thank you.

24        Anybody else?

10:36    25            PANEL MEMBER:  Juror Number 5, and I was involved in a

1  lawsuit from -- that we lost our house in the 2003 Cedar Fire,

2  and we joined other plaintiffs against Allstate.

3        THE COURT:  All right.  Did the case settle?

4        PANEL MEMBER:  No.

10:37  5        THE COURT:  Did you go to trial?

6        PANEL MEMBER:  Dropped.

7        THE COURT:  It was dropped?  Anything about that

8  experience that would prevent you from being a fair and

9  impartial juror if you're selected?

10:37  10        PANEL MEMBER:  No.

11        THE COURT:  Okay.  Thank you.

12     Anyone else?  Yes, sir?

13        PANEL MEMBER:  Juror Number 8.  We sued our developer

14  in a high-rise for a rooftop terrace that was never installed.

10:37  15        THE COURT:  Okay.  Did the case settle or go to trial?

16        PANEL MEMBER:  It went to trial.

17        THE COURT:  All right.  And anything about that

18  experience that would keep you from being able to be fair and

19  impartial to both sides?

10:37  20        PANEL MEMBER:  No.

21        THE COURT:  All right.  Anyone else?  We skipped one.

22  All right.

23        PANEL MEMBER:  I'm Juror Number 7.

24        THE COURT:  Yes.

10:37  25        PANEL MEMBER:  My experience is I have been sued by

```
 1    ADA compliance.
 2              THE COURT:  Oh, you've been a defendant in an ADA
 3    case?
 4              PANEL MEMBER:  Yes, Your Honor.
 5              THE COURT:  Okay.  So anything about that experience
 6    that would keep you or prevent you from being fair and
 7    impartial?
 8              PANEL MEMBER:  To me, kind of not fair.
 9              THE COURT:  Yeah, well, it might not have been fair in
10    your case, right?
11              PANEL MEMBER:  It's not fair.
12              THE COURT:  But you'd agree, it has nothing to do with
13    this case?
14              PANEL MEMBER:  I had to pay.
15              THE COURT:  You had to pay?
16              PANEL MEMBER:  Yes, Your Honor.
17              THE COURT:  Okay.  But listen to my next question.  My
18    question is, so you didn't think it was fair when you were
19    sued.  All right.  I'll grant you that.  That doesn't have
20    anything to do with this case, does it?
21              PANEL MEMBER:  I don't know.
22              THE COURT:  Well, I told you what this case is about.
23    This case is about a patent.  It has nothing to do with ADA.
24    It has nothing to do with you.
25              PANEL MEMBER:  Maybe not.
```

|       |    |                                                                          |
| ----- | -- | ------------------------------------------------------------------------ |
|       | 1  | THE COURT:  No?                                                          |
|       | 2  | Okay.  Anyone else?  All right.                                          |
|       | 3  | PANEL MEMBER:  Juror Number 15.  A car accident case.                    |
|       | 4  | It was settled.  And the second one is a patent infringement             |
| 10:39 | 5  | case.                                                                     |
|       | 6  | THE COURT:  Seriously?                                                   |
|       | 7  | PANEL MEMBER:  Yes.                                                       |
|       | 8  | THE COURT:  Out of 3 million people in San Diego                         |
|       | 9  | County.  Were you the plaintiff or the defendant?                        |
| 10:39 | 10 | PANEL MEMBER:  We are -- my company as a whole.  I                       |
|       | 11 | don't own the company.  I work for an electronics company, and           |
|       | 12 | we happen to be the defendants.                                          |
|       | 13 | THE COURT:  Okay.  I think as the saying goes, you're                    |
|       | 14 | out of here.  Free for surgery.                                          |
| 10:40 | 15 | All right.  Who's next?  I'm not talking to you people in                |
|       | 16 | the back.  All right.                                                    |
|       | 17 | PANEL MEMBER:  I'm Juror Number 25.  And I was                           |
|       | 18 | involved in a wrongful death suit probably 30, 40 years ago.  I          |
|       | 19 | can't remember.                                                          |
| 10:40 | 20 | THE COURT:  Were you the plaintiff, defendant?                           |
|       | 21 | PANEL MEMBER:  I worked for a company where a girl was                   |
|       | 22 | killed by her husband at the office that I supervised, and --            |
|       | 23 | THE COURT:  So you were named as a defendant?                            |
|       | 24 | PANEL MEMBER:  You know, it was settled before we                        |
| 10:40 | 25 | went -- we didn't go to court.                                           |

1          THE COURT:  Okay.

2          PANEL MEMBER:  I don't really know.  I was very young.

3          THE COURT:  Okay.

4          PANEL MEMBER:  I wasn't -- I was a major witness,

10:41    5   but . . .

6          THE COURT:  Okay.  Well, let me ask you this:  Is

7    there anything about that experience that would keep you from

8    being able to sit as a juror?

9          PANEL MEMBER:  No.  It was frightening, but no.

10:41   10          THE COURT:  Okay.  Great.  Thank you.

11        Okay.  Anyone else?  Did I miss anyone?  Okay.  Have any of

12   you or your spouse or your significant other or life partner

13   ever owned a business?  I'll bet I know what business -- no?

14        Okay.  Glenn, do me a favor.  Give the microphone to Juror

10:42   15   Number 3, please.

16        Tell me about what did you own.

17          PANEL MEMBER:  We were franchise owners of Quiznos.

18          THE COURT:  Okay.  And how long did you own that

19   business?

10:42   20          PANEL MEMBER:  Four to five years.

21          THE COURT:  And just so that we all know, what was the

22   business of Quiznos?

23          PANEL MEMBER:  Making sub sandwiches.

24          THE COURT:  Okay.  Okay.  Great.

10:42   25        Anyone else?  Juror Number 4.

1        PANEL MEMBER:  Juror Number 4.  I owned a consulting

2   firm for about three years.  Facilities management for

3   municipalities.

4        THE COURT:  Okay.  Anyone else?  The gentleman over

10:43   5   here at the very corner.

6        PANEL MEMBER:  Juror Number 7.  I own a donut shop.

7   Me and my wife work in the store.

8        THE COURT:  How long did you own that?

9        PANEL MEMBER:  More than ten years.

10:43   10        THE COURT:  Do you still own it?

11        PANEL MEMBER:  Yes, Your Honor.

12        THE COURT:  Are they good donuts?

13        PANEL MEMBER:  I make myself, yeah.

14        THE COURT:  Okay.  All right.

10:43   15     At the very end.

16        PANEL MEMBER:  Your Honor, Juror Number 14.  My wife

17   owned her own daycare for, like, five years.

18        THE COURT:  She must have a lot of patience.

19        PANEL MEMBER:  More than I do, sir.

10:44   20        THE COURT:  All right.  Okay.  Anyone -- no, you can't

21   raise your hand.

22        PANEL MEMBER:  It's not me, it's him.

23        PANEL MEMBER:  Juror Number 16, Your Honor.  I owned a

24   very small consumer electronics sales and service business here

10:44   25   in San Diego from 1981 to 1993.

10:45

10:45

10:45

10:45

10:46

1    THE COURT:  Consumer electronics?

2    PANEL MEMBER:  That is correct.

3    THE COURT:  Were you ever involved in any patent

4  applications?

5    PANEL MEMBER:  No, sir.

6    THE COURT:  All right.

7    Anyone else?

8    THE CLERK:  One second, Judge.

9    PANEL MEMBER:  Your Honor, Juror Number 28.  I'm an

10 owner of a law firm here in San Diego.

11    THE COURT:  A law firm?

12    PANEL MEMBER:  Correct.

13    THE COURT:  What kind of law do you practice?

14    PANEL MEMBER:  Could I use the terminology "coverage"?

15    THE COURT:  Coverage?

16    PANEL MEMBER:  I'm a coverage lawyer.

17    THE COURT:  Insurance coverage?

18    PANEL MEMBER:  Correct.

19    THE COURT:  Okay.

20    PANEL MEMBER:  And I should add that I specialize in

21 this area in many respects.

22    THE COURT:  When you say "specialize in this area" --

23    PANEL MEMBER:  I create insurance programs for these

24 types of losses and oversee the adjustment of those claims as

25 well as the determination of where they're covered under the

1    policy.

2              THE COURT:  All right.  Well, that brings up a good

3    point I should talk to the jury about.

4         Ladies and gentlemen, first of all, there is no insurance

10:46   5    issue in this case nor should you in any way, shape, or form

6    assume or take into account in your deliberations whether or

7    not there is insurance to cover anyone involved in this case.

8    Okay?

9         So in fact, I had no idea that there were such insurance

10:46  10    policies, but since apparently there are, you shouldn't in

11    deliberations think to yourself, well, shoot, you know, there's

12    insurance to cover this, and so, therefore, what's the harm or

13    what's the -- who cares, right?  So you're not to consider that

14    in any way, shape, or form.  And do you think you would have

10:47  15    any problems following that?  No?  Okay.  Good.  I'm going to

16    hold you to that.  All right.

17         Next.

18              PANEL MEMBER:  Juror Number 32.  I owned a small

19    business that's a kids' gym called JW Tumbles -- it was a

10:47  20    franchise -- for two and a half years, from 2005 to 2007 and a

21    half.

22              THE COURT:  Okay.  Thank you.

23         All right.  Have any of you ever worked in accounting?

24         Glenn, don't walk away.

10:47  25              THE CLERK:  Oh, no.

```
                   1        THE COURT:  And what did you do in accounting?

                   2        PANEL MEMBER:  I still work in accounting.

                   3        THE COURT:  What's your juror number?

                   4        PANEL MEMBER:  I have worked in accounting for 30-plus

10:48              5   years.  I do payables, cash management, payroll, those types of

                   6   accounting duties.

                   7        THE COURT:  What's your juror number?

                   8        PANEL MEMBER:  I am Juror Number 29.

                   9        THE COURT:  29.  Okay.  Thank you.

10:48             10     Anyone else?  Oh, my goodness.  Okay.

                  11        PANEL MEMBER:  Hello.  Juror Number 22.  I worked as

                  12   an accounting -- accountant for Sprouts Farmers Market for two

                  13   years part-time.  No longer, though, but I did payroll and

                  14   receiving invoices and stuff like that.

10:48             15        THE COURT:  Okay.  Thank you.

                  16     Anyone else?

                  17        PANEL MEMBER:  Juror Number 3.  I was an accounting

                  18   supervisor for a computer memory manufacturer in Irvine called

                  19   Simple Technology, and I overlooked the payables and

10:49             20   receivables.

                  21        THE COURT:  Okay.  Anyone else?

                  22     All right.  Anybody had any training in or worked in

                  23   economics or valuation of damages?

                  24        THE CLERK:  We have one, Judge.

10:49             25        THE COURT:  Never mind.  We've already talked to her.
```

1    It's not that we don't like you or anything.  We already know.

2    You already told us.

3         Anybody worked in engineering?

4         Glenn.

10:50   5         PANEL MEMBER:  Juror Number 8.  I'm a federal employee

6    with the Department of Navy and Civil Engineering command.  I

7    am not an engineer.

8              THE COURT:  You're not an engineer?

9              PANEL MEMBER:  Correct.

10:50  10              THE COURT:  But you work in engineering?

11              PANEL MEMBER:  The command is an engineering command.

12    We manage all the facilities and all the Navy bases, the

13    infrastructures, so we have engineers, architects, things like

14    that, but I work in staffing, training, things like that.

10:50  15              THE COURT:  Anybody work for a government agency?

16    Gotcha.  Never mind.  We already got you.

17         Somebody else here said that they worked in engineering,

18    right?

19              PANEL MEMBER:  Yes, Your Honor, Juror Number 10.

10:50  20    Presently employed by a telecommunications firm.  I have held

21    the title of an engineer.  I presently do not hold it, but I am

22    in the engineering department.

23              THE COURT:  You are not an engineer?

24              PANEL MEMBER:  I am not.  I've held that title before.

10:51  25    We went through some reorganization in which I was reassigned

1    as a technician.

2              THE COURT:  Okay.

3              PANEL MEMBER:  But I do work for an engineering

4    department.

10:51    5              THE COURT:  All right.  Great.  Thank you.

6         Sir?

7              PANEL MEMBER:  Juror Number 14, Your Honor.  I did

8    technical writing support in an engineering department for over

9    five years.  I was -- didn't hold the title of engineer, but I

10:51   10   did engineering-type analysis and document development in an

11   engineering environment.

12             THE COURT:  Okay.  Anyone in the back row?

13             PANEL MEMBER:  Juror Number 31.  I am an engineer, and

14   I'm an electrical engineer by training and by schooling.  I

10:52   15   work in the wireless telecommunications industry also.  And I

16   am a PE in electrical engineering also in the state of

17   California.

18             THE COURT:  All right.  Thank you.

19        Okay.  So I sort of kiddingly asked the one juror if

10:52   20   anybody worked for a governmental agency.  So let me ask, does

21   anybody else work for a governmental agency?

22        Okay, Glenn, over there.

23             PANEL MEMBER:  City of Poway.  Worked for the City of

24   Poway for about 30 years, worked -- was a veteran four years

10:53   25   before that, and then later in my consulting, I worked for

various cities, including the City of San Marcos and Rialto and
such.

THE COURT:  All right.  Thank you.

The gentleman over there.

PANEL MEMBER:  Juror Number 14 again, Your Honor.  If
it counts, I'm a retired veteran.

THE COURT:  Okay.  Well, thank you for your service.

Someone in the back raised -- there she is.

PANEL MEMBER:  Juror Number 22.  I currently work for
the State of California Department of Parks and Recreation.

THE COURT:  Okay.

Yes, sir.

PANEL MEMBER:  Juror Number 24, Your Honor.  Retired
Navy and retired U.S. Postal Service worker as well.

THE COURT:  All right.  Well, again, thank you for
your service, sir.

All right.  Anybody here worked in intellectual property,
like patents or copyrights or product design or development or
research and development?  No?  Okay.

Have any of you ever designed or invented or created
something or patented something?  No, I'm not talking to the
people behind in the back.  There, that gentleman over there.

PANEL MEMBER:  Juror Number 31.  I have applied for a
patent, but it's in process right now, so it's not been
granted.

```
 1              THE COURT:  How long have you been involved in the
 2    patent process?
 3              PANEL MEMBER:  This particular patent, one year.
 4              THE COURT:  When you say "this particular patent,"
 5    that leads me to conclude that you've been involved in other
 6    patents.  Is that --
 7              PANEL MEMBER:  I've been involved, but I'm not a named
 8    inventor on them.
 9              THE COURT:  So tell me a little bit about your
10    involvement in those other ones.  What did you do?
11              PANEL MEMBER:  Research, contributions on technical
12    questions.
13              THE COURT:  Okay.  The current patent, that's
14    apparently pending before the patent office?  Is that a fair
15    statement?
16              PANEL MEMBER:  Yes, it's been applied for, yes.
17              THE COURT:  So are you fairly familiar with the patent
18    process?
19              PANEL MEMBER:  Fairly familiar, yes.
20              THE COURT:  But you've never had a patent granted to
21    you, correct?
22              PANEL MEMBER:  No.
23              THE COURT:  All right.
24              PANEL MEMBER:  But that's correct, yes.
25              THE COURT:  All right.  Thank you.
```

10:55
10:55
10:55
10:55
10:56

1    Any of you ever been accused of taking, copying, or using

2    someone else's idea in applying for a patent or copyright?  No?

3    Okay.

4    All right.  So I'm just simply going to tell you that this

10:56    5    lawsuit involves a larger company versus a smaller company, a

6    company that's home-based in Canada and a company that's

7    home-based in San Diego.

8    Any of you have any problems deciding this case based on

9    the facts and the law as I state them to you without regard to

10:57    10    the fact that one company is a larger company, one company is a

11    smaller company, one company is based in Canada, one company is

12    based here?  How many of you have any problems doing that?  In

13    other words, are any of you going to be more likely to be

14    biased towards the larger company?  Or the smaller company?

10:57    15    Biased toward the San Diego company?  Biased towards a Canada

16    or Canadian company?  No?  All right.  You can all be adults,

17    and you understand that none of that has a single, solitary

18    thing to do with the outcome of this case?  Agreed?

19            PANEL MEMBER:  Yes.

10:57    20            THE COURT:  Okay.  Good.  Anybody here surf?

21            PANEL MEMBER:  Boogie board.

22            THE COURT:  Close enough.  You're a Boogie-border.

23    What's your juror number?

24            PANEL MEMBER:  Oh, 30.  I'm sorry.

10:58    25            THE COURT:  30.  How often do you go Boogie-boarding?

1        PANEL MEMBER:  Oh, in the summer, a few times in the

2   summer.  Maybe when my girlfriend's son wants to go

3   Boogie-boarding, I go with him.

4        THE COURT:  Do you ever go to one of these water

10:58   5   parks?

6        PANEL MEMBER:  No.

7        THE COURT:  All right.  How about you?  What's your

8   juror number?

9        PANEL MEMBER:  Juror Number 32.  I surf probably once

10:58  10   a week in the summer.  Obviously, not in the cold water, right

11   now, winter.

12        THE COURT:  Do you ever go to the water parks?

13        PANEL MEMBER:  No, I've not been to the water parks.

14        THE COURT:  Are you serious?  All these people from

10:59  15   San Diego, and I have one person who Boogie-boards and one

16   person who surfs?  Really?  Okay.  All right.

17        MR. O'HARE:  We've got some more surfers, Your Honor.

18        THE COURT:  Okay.  I didn't see those hands.  Okay.

19   Look, you've got to put your hand up.  Don't be shy.  Nobody's

10:59  20   going to hurt you.  Okay.  So what's your juror number?

21        PANEL MEMBER:  22.

22        THE COURT:  All right.  Are you a good surfer or a bad

23   surfer?

24        PANEL MEMBER:  I used to be great.

10:59  25        THE COURT:  Used to be.  I used to be a German

1    shepherd too.

2         PANEL MEMBER:  Once upon a time, an avid surfer, but

3    now I get out once a month or so.

4         THE COURT:  All right.  How about -- there was

5    somebody else along there.

10:59

6         PANEL MEMBER:  Juror Number 19.  I grew up in

7    San Diego probably surfing from the time I was ten until into

8    my 30s.

9         THE COURT:  Did you ever go to one of these surf

10   parks?

11:00

11        PANEL MEMBER:  No.

12        THE COURT:  Any of you ever been on any of these

13   cruise ships that have the wave, surfing wave?

14        PANEL MEMBER:  No.

15        THE COURT:  Anyone?  No one?  No?  Okay.

11:00

16      By the way, you could be a twin for the chief judge of the

17   Ninth Circuit.  From over here, when I look at you, you look

18   just like Judge Thomas.

19        PANEL MEMBER:  Your Honor?

20        THE COURT:  Oh, somebody.  I missed somebody.

11:00

21        PANEL MEMBER:  I've taken my grandchildren, my two

22   grandchildren, to one of those hotel-type surfing things.

23        THE COURT:  Did they have fun?

24        PANEL MEMBER:  One was scared and the other one had

25   fun.  Yeah, they did.

11:00

```
 1              THE COURT:  What hotel was that?

 2              PANEL MEMBER:  Is there one at MGM?

 3              THE COURT:  MGM?

 4              PANEL MEMBER:  I don't remember.  I'm sorry.

 5              THE COURT:  Where was it?

 6              PANEL MEMBER:  It was at a hotel in Vegas.  That's all

 7    I know.

 8              THE COURT:  In Vegas.  Okay.

 9              PANEL MEMBER:  Yeah, definitely Vegas.

10              THE COURT:  One of a million hotels in Vegas.  What's

11    your juror number?

12              PANEL MEMBER:  27.

13              THE COURT:  27.  Okay.

14              PANEL MEMBER:  As long as we're on the topic, I did

15    grow up in Newport Beach, and I'm very familiar with the

16    surfing culture, all kinds of different surfboards, et cetera.

17              THE COURT:  Okay.  Great.

18         Okay.  Let me ask -- so here's what I'm going to do.  I'm

19    going to ask the lawyers -- and I just need one lawyer from

20    either side.  I don't need a whole troop.  Okay?  I'm going to

21    ask the lawyers to come up.  I'm going to talk to them for just

22    a minute.  Please try not to listen.  You think I'm kidding,

23    but believe it or not, I've been in jury selection when I bring

24    the lawyers up here, and the jurors are going like this, you

25    know.  Don't do that.  Don't do that because what we have to
```

11:00 (line 5)
11:01 (line 10)
11:01 (line 14-15)
11:01 (line 20)
11:02 (line 25)

1   talk about could possibly influence your decision-making in the

2   case.  So if you're going to do anything, do this.  All right?

3   But try not to talk among yourselves.  In fact, don't talk

4   among yourselves.  I need you to be quiet because my reporter

11:02   5   is going to try and take down what we're saying.  Okay?

6        So, counsel, if you'd please come up to sidebar for a

7   minute.

8        (The following proceedings were heard at the bench.)

9        THE COURT:  All right.  Counsel, so I'd propose that

11:03   10   we excuse some jurors now.  Next thing I'm going to do is I'm

11   going to ask them to tell us a little bit about themselves and

12   so on, and rather than spend some time with these jurors, I'd

13   just as soon excuse them and let them go.

14        Juror Number 2 seems to have a family health issue.  Same

11:03   15   for Juror Number 10.  Juror Number 15.  I'd rather like to keep

16   her because she seems like she'd be a great juror, but she's

17   having surgery on Friday, and I don't think that would be

18   right.  And then Juror Number 27 needs to do something about

19   her dad, so I would propose that we excuse these jurors, send

11:03   20   them home.  I think we're going to have plenty of jurors, if

21   I'm not mistaken, to pick.

22        THE CLERK:  At least 28, Your Honor, so we're using

23   only eight.

24        MR. THOMAS:  27 or 28?

11:04   25        THE COURT:  27.

38

```
 1              MR. THOMAS:  Mr. Thomas.

 2              THE COURT:  27.  She said that she needed to do

 3      something about her dad, as I recall.  Her dad had some health

 4      issue.

 5              MR. THOMAS:  Would you consider Number 28 as well?

 6              THE COURT:  What was 28's issue?

 7              MR. THOMAS:  He's the lawyer from the insurance

 8      company.

 9              THE COURT:  Oh, yeah.  Good idea.

10              MR. THOMAS:  Save ourselves.

11              THE COURT:  Great.

12              MR. O'HARE:  I think we're probably on the same page

13      there.  Otherwise -- this is Bill O'Hare speaking -- we'd

14      probably have a lot more questions.

15              THE COURT:  Yes.  Okay.  Great.  Thanks.

16          (Proceedings held in the presence of the jury panel.)

17              THE COURT:  So what I'm going to do now is I'm going

18      to excuse some of you in the interest of time.  I know your

19      time is valuable, and I don't want to keep you any longer than

20      I have to.

21          Before I do that, I want to thank you on behalf of the

22      parties here, on behalf of my staff, on behalf of the chief

23      judge of our district, Judge Larry Burns, and certainly on my

24      behalf for giving us your time.

25          So Juror Number 2, you're excused.  Go back to the jury
```

1   lounge, though, and tell them, and they may reschedule you for

2   another time.

3       Juror Number 10.  Thank you, sir.  I hope your wife gets

4   through her crisis.

11:05  5       Juror Number 15.  I hate to lose you, but you had at least

6   two strikes, as I recall, so we'll see you.

7       And Juror Number 27.  Again, I hope you deal with your

8   family crisis.

9       And Juror Number 28, you're gone.  You take care.  Goodbye.

11:06  10      All right.  We're going to find out a little bit about you.

11      Glenn, do me a favor, deliver the microphone to Juror

12   Number 1.

13      Now, Juror Number 1, I'd like for you to answer some

14   questions for me.  And I'll help you along if you need it, but

11:06  15   I'd like to know a couple of things.

16      First of all, I'd like to know whether you're married or

17   have a significant other; number two, I'd like to know what

18   your profession or occupation is; if you're married or have a

19   significant other, I'd like to know what his or her occupation

11:06  20   is; I'd like to know if you have any children who are adults,

21   and if so, what do they do; I'd like to know whether you have

22   sat on a jury before, whether it was a civil or criminal case,

23   and whether you reached a verdict.  I don't want to know -- I

24   don't want you to tell me that it was a murder or a DUI or

11:06  25   whatever.  Just tell me if you know whether it was a civil or

1    criminal case, and I don't want to know what the verdict was.

2    I just want to know that you reached a verdict.  And then

3    lastly, I'd like to know what's the highest grade of school

4    that you completed, if you have a bachelor's, a master's, a

11:07    5    doctorate, whatever.  If you'd tell me that, I'd appreciate it.

6    Okay?  Got it?

7            PANEL MEMBER:  I think I got it all.  I am married, I

8    am a program manager by occupation, my wife is a registered

9    nurse.  We don't have any grown children.  We have a

11:07    10    six-year-old.  I've never sat on a jury or a trial before, and

11    my highest education, I have a bachelor's degree, currently

12    working on a master's degree.

13            THE COURT:  Okay.

14            PANEL MEMBER:  Did I cover them all?

11:07    15            THE COURT:  You did.  So what kind of hobbies do you

16    have, or what do you do in your spare time?  Knowing that you

17    have a six-year-old, I know you don't have much spare time, but

18    other than chasing your six-year-old around, what do you do in

19    your spare time?

11:08    20            PANEL MEMBER:  I don't surf.

21            THE COURT:  You don't surf.  Okay.

22            PANEL MEMBER:  I coach soccer.  And I like to run, and

23    I fish occasionally.  That's about it with the spare time.

24            THE COURT:  Great.  Good.  Thank you.

11:08    25        Ma'am?

```
 1              PANEL MEMBER:  Juror Number 2.

 2              THE CLERK:  No, you're 3.

 3              PANEL MEMBER:  I'm sorry.  I'm 3.  I saw an empty

 4   chair.

 5       I've been married 24 years.  My husband is a -- he works

 6   for a golf distributing company.  He's a district manager.  I

 7   have two boys.  One's 19.  He goes to Santa Barbara City

 8   College.  And I have a 16-year-old who is a junior.  I've never

 9   surfed before.

10              THE COURT:  And what's the highest grade of school you

11   completed?

12              PANEL MEMBER:  I graduated high school and then

13   training for massage therapy.

14              THE COURT:  Okay.  And what do you like to do in your

15   spare time?

16              PANEL MEMBER:  I like to run.  I do half marathons and

17   watch my kids play sports.  They both play baseball.

18              THE COURT:  Okay.  Thank you.

19       Sir?

20              PANEL MEMBER:  I'm married.  Both my wife and I are

21   both retired.  I have two children.

22              THE COURT:  What are you retired from?

23              PANEL MEMBER:  I retired from --

24              THE COURT:  Oh, yeah, I forgot.

25              PANEL MEMBER:  -- local government.  How's that?
```

11:08 (line 5)
11:09 (line 10)
11:09 (line 15)
11:09 (line 20)
11:09 (line 25)

1    Local government and consulting.

2            THE COURT:  What about your spouse?

3            PANEL MEMBER:  My spouse was a -- worked in a local

4    school.  She worked in the office doing attendance.  My son

11:09   5    works for a company here in San Diego, and he's a manager of

6    some sort -- for Intuit, actually.  My daughter is a pet

7    groomer.  Both married.  Have five grandchildren.  My highest

8    degree is I have an MBA.  What else?

9            THE COURT:  Jury duty.

11:10   10           PANEL MEMBER:  I've been on -- I've never been on a

11   jury.  I've been not selected.

12           THE COURT:  Okay.  Great.

13        What's your juror number?

14           PANEL MEMBER:  I'm Number 4.

11:10   15           THE COURT:  Wait.  What do you do in your spare time?

16           PANEL MEMBER:  I do a lot of hiking, tennis, play with

17   my grandchildren, and we swim.  Very active.  A lot of camping.

18   Travels.

19           THE COURT:  Okay.

11:10   20           PANEL MEMBER:  And that's why I'm here because we were

21   supposed to be here in September, and we were traveling, and

22   now we're home for a while.

23           THE COURT:  Okay.  Great.

24        Ma'am?

11:11   25           PANEL MEMBER:  Juror Number 5.  Yes, married.  I am a

```
        1   registered nurse, but I'm a director of operations for dialysis
        2   clinics.  My husband worked for NASSCO when -- was, is, a naval
        3   architect.  Four children.  One is a protein chemist, one is a
        4   baker, one is a nurse, one is a cashier.  Been on a jury.  It
11:11   5   was a criminal.  Did not reach a verdict.  And in my spare
        6   time, scuba dive, hike, travel, read, garden, whatever.
        7           THE COURT:  Okay.  Great.  Thank you.
        8       Ma'am?
        9           PANEL MEMBER:  Hi.  I'm Juror Number 6.  I work for a
11:12  10   pharmacy benefit management company.
       11           THE COURT:  I'm sorry.  A what?
       12           PANEL MEMBER:  Pharmacy benefit management company.
       13           THE COURT:  Okay.
       14           PANEL MEMBER:  My husband works in the beer industry.
11:12  15   I have one child who's a grown adult who is a vet technician.
       16           THE COURT:  Jury duty.
       17           PANEL MEMBER:  Oh, yes, sorry.  I've been on two civil
       18   suits, and both we were able to come to -- what do you call it?
       19           THE COURT:  A verdict?
11:12  20           PANEL MEMBER:  Yeah.
       21           THE COURT:  And what was the highest grade of school
       22   you completed?
       23           PANEL MEMBER:  I have an associate's degree, and I've
       24   worked way towards my bachelor's and then gave it up.
11:12  25           THE COURT:  Your associate's degree was in?
```

         1              PANEL MEMBER:  It was just in business.

         2              THE COURT:  Okay.  And your husband works in the beer

         3     industry?

         4              PANEL MEMBER:  Yes.

11:12    5              THE COURT:  And what does he do in the beer industry?

         6              PANEL MEMBER:  He does pricing coordination for a

         7     distributor.

         8              THE COURT:  Can you bring us a case?

         9              PANEL MEMBER:  Absolutely.

11:13   10              THE COURT:  I'm kidding.

        11          What do you do in your spare time?

        12              PANEL MEMBER:  I work out a lot.

        13              THE COURT:  Okay.  Great.  Pass the microphone down to

        14     this gentleman over here.

11:13   15              PANEL MEMBER:  I'm Number 7, I'm married, I have two

        16     children, and I have a small business.

        17              THE COURT:  Still have the donut shop?

        18              PANEL MEMBER:  Yes, Your Honor.

        19              THE COURT:  Okay.

11:13   20              PANEL MEMBER:  And I never go to school.

        21              THE COURT:  How about jury duty?  Served on a jury

        22     before?

        23              PANEL MEMBER:  No.

        24              THE COURT:  No?  And what do you do in your spare

11:13   25     time?  I bet you probably don't have much spare time if you

1   have a donut shop.

2           PANEL MEMBER:  No, I work every day.

3           THE COURT:  Okay.  All right.  Thank you.

4       Sir?

11:14   5           PANEL MEMBER:  I'm Juror Number 8, I'm a federal

6   employee, work for the Department of Navy, married, my wife's

7   retired from the federal government also, Department of Navy,

8   we have no kids, I've been on two juries, both of them were

9   criminal cases, and we did have verdicts reached, and I have a

11:14   10  bachelor's degree.

11          THE COURT:  In?

12          PANEL MEMBER:  That's in telecommunications, in

13  computers.

14          THE COURT:  And what do you do in your spare time?

11:14   15          PANEL MEMBER:  Genealogy and training for obstacle

16  course races.

17          THE COURT:  Training for obstacle --

18          PANEL MEMBER:  Like, Spartan races and things like

19  that.

11:14   20          THE COURT:  What is a Spartan race?

21          PANEL MEMBER:  It's where they have, like -- you have

22  to climb over walls, go under pits and barbed wire and monkey

23  bars.

24          THE COURT:  Like the American Ninja Warrior thing?

11:14   25  I've got grandkids, and they were just at home watching that.

1    You do that?

2         PANEL MEMBER:  Yes, we -- my brother and -- I have a

3    twin brother, and we both, when we turned 50 last year, we got

4    three of them, got our Trifecta, and we're doing it again this

11:15  5    year, and we do an ultra distance marathon in April.

6         THE COURT:  Well, more power to you.  Great.

7         Ma'am?

8         PANEL MEMBER:  Hi.  I'm Juror Number 9.  I am married,

9    and I used to be a restaurant manager.  My husband is a

11:15  10   computer tech.  We have no children.  My highest level of

11   education is one year at the university.  In my spare time I

12   like to go to the zoo, go to Balboa Park, and work out.

13        THE COURT:  How about jury service?

14        PANEL MEMBER:  Oh, yes.  I've been on a jury once.  It

11:15  15   was criminal, and the verdict was reached.

16        THE COURT:  Great.  Thank you.

17        Sir?

18        PANEL MEMBER:  I'm Juror Number 11, single, never been

19   married, no kids, education was high school, but from there, I

11:16  20   went from electronics, mechanical, just about any industrial

21   arts type, I've covered the bases.  Currently retired.  I have

22   served on a jury.  It was a criminal case.  I was the

23   alternative, so I never got a chance to listen to the outcome

24   of it.  And --

11:16  25        THE COURT:  Okay.  Well, so tell me -- so you said you

1  went from electronics, mechanical, and just about any

2  industrial arts type.  But what did you do?  Or what do you do?

3         PANEL MEMBER:  Well, just currently retired from doing

4  fire life safety; I've worked with PAs, security systems, alarm

11:16   5  systems, electronic devices.

6         THE COURT:  When you say you work with them, did you

7  design them?  Do you install them?  What did you do?

8         PANEL MEMBER:  Basically a repair technician.

9         THE COURT:  Okay.  All right.

11:17  10         PANEL MEMBER:  Well, I've done many electronics,

11  different jobs, so that was what I last left.  I've worked on

12  microelectronic industries; I've done carpentry work.  You name

13  it, I can work it on if it's out there.

14         THE COURT:  Okay.

11:17  15         PANEL MEMBER:  I still do a lot of troubleshooting for

16  people, even for myself.  I have a sea of different products,

17  and sometimes I think along the lines of how can you improve

18  it?  How can you make it better?

19         THE COURT:  I see.  You like to work and tinker with

11:17  20  things?

21         PANEL MEMBER:  Yes, that's my world.

22         THE COURT:  That's your world.  Okay.  Great.  Thank

23  you.

24    Ma'am?

11:18  25         PANEL MEMBER:  Juror Number 12, I work for a school

1   district with special needs children with behaviors.  I have

2   two children of my own.  One's 22.  One's almost 18.  I've

3   never served on a jury.  And some college.  No degree.

4   Divorced.  And --

11:18   5          THE COURT:  I think you got it.

6          PANEL MEMBER:  Did I get them all?

7          THE COURT:  What do you do in your spare time?

8          PANEL MEMBER:  I like to garden, crafts, hiking.

9          THE COURT:  Okay.  Good.  Thanks.

11:18   10      Ma'am?

11         PANEL MEMBER:  I'm Juror Number 13, not married, no

12   kids.  I just recently graduated with a bachelor's degree from

13   UCSD.

14         THE COURT:  Well, congratulations.

11:18   15         PANEL MEMBER:  Thank you.

16      So I'm currently just job searching, so I'm unemployed

17   currently.  I've never been on a jury.  I think that's --

18         THE COURT:  And what was your bachelor's degree in?

19         PANEL MEMBER:  Math computer science.

11:19   20         THE COURT:  Math computer science.  Okay.

21      And so what do you do in your spare time?

22         PANEL MEMBER:  I like crafty things, like crocheting

23   or, like, baking, and I like to travel too, when I get a

24   chance.

11:19   25         THE COURT:  Where was the last place you traveled to?

49

```
 1              PANEL MEMBER:  In, like, September, I went to
 2   Hong Kong and Korea.
 3              THE COURT:  Hong Kong's beautiful.
 4              PANEL MEMBER:  Yes.
 5              THE COURT:  Okay.
 6         Sir.
 7              PANEL MEMBER:  Yes, I'm Juror Number 14, married,
 8   three kids, all adults.  One of my kids was -- is in the
 9   preschool profession.  The other two work at a company that --
10   I guess you could call it a temp agency for nurses up in
11   Del Mar Heights area.  I've been on -- my wife is retired.  She
12   was in the daycare industry for some 30, 35 years.  I've been
13   on two trials.  I've been through the process.  One -- both
14   criminal.  One was -- outcome was reached.  The other one was
15   actually plead out before we actually went into the trial
16   phase.  It was plead out at after jury selection.
17              THE COURT:  Okay.
18              PANEL MEMBER:  I got a bachelor's degree in business,
19   and my hobbies include umpiring baseball, youth all the way up
20   to high school, and I've done some college level, and trying to
21   play golf.
22              THE COURT:  Trying.
23              PANEL MEMBER:  Trying to play golf.  I try to play.
24   And every once in a while, I do a little theater.  As a matter
25   of fact, I'm doing theater right now for the holidays.
```

11:19
11:20
11:20
11:20
11:21

1      THE COURT:  What are you doing?

2      PANEL MEMBER:  I'm doing a small part in a play in

3   Vista.

4      THE COURT:  What's it called?

11:21   5      PANEL MEMBER:  It's called Best Christmas Pageant

6   Ever, and I play an irate mailman in the first scene.  I'm

7   supposed to be as irate and ballistic as possible.

8      THE COURT:  Okay.  No irate, ballistic mailmen in this

9   courtroom.  Okay?

11:21  10      PANEL MEMBER:  Well, I guess I'm released then, right,

11   sir?

12      THE COURT:  All right.  Thank you.

13      PANEL MEMBER:  Juror Number 16.  I am married.  No

14   kids.  I currently work as a consultant for a local engineering

11:21  15   firm; however, I am not an engineer.  I am basically in charge

16   of digitizing some compliance forms for them.  I am a graduate

17   from UCSD.  I have previously served last year for the Superior

18   Court of San Diego for the Honorable Judge McGuire, and that

19   case ended up in a hung jury.

11:22  20      THE COURT:  Was it a civil or criminal case?

21      PANEL MEMBER:  It was a criminal case.

22      THE COURT:  Okay.

23      PANEL MEMBER:  In my spare time, my wife and I love

24   traveling, and I love to play music.

11:22  25      THE COURT:  Outstanding.

1      Sir?

2            PANEL MEMBER:  Juror Number 17.  I'm a restaurant

3      manager.  Married.  My wife is an instructional aide for a

4      school, I have a six-year-old, I've been in two criminal, two

11:22  5      civil, saw all of them through, spare time, spend it with my

6      family.

7            THE COURT:  What's the highest grade of school that

8      you completed?

9            PANEL MEMBER:  High school.

11:23  10           THE COURT:  Okay.  Is your wife employed outside of

11     the home?

12           PANEL MEMBER:  She's an instructional aide for a

13     school district in Imperial Valley.

14           THE COURT:  Did you say that?  All right.  Great.

11:23  15     Thank you.

16     Sir?

17           PANEL MEMBER:  Juror Number 18, married, three adult

18     children, oldest 38, he's a tattoo artist, 30 is -- 30 is my

19     second son.  He's -- works for Activision in L.A., graphic

11:23  20     designer for games.  26-year-old is a special ed teacher, and

21     my wife works for San Diego Unified.  I'm currently working as

22     a contractor for Pfizer Pharmaceuticals, shipping-receiving

23     warehouse.  12th grade education, musician, and I'm a crafter.

24     I like to quilt.  Can we keep that between all of us?

11:24  25           THE COURT:  Don't you remember Rosey Grier was

1       a -- wasn't he -- no, he was a --

2                  PANEL MEMBER:  I think he was a florist.

3                  THE COURT:  No, he crocheted or knitted or did

4       something like that.  You didn't want to make fun of his

11:24  5       knitting.  We'll keep it among ourselves.

6                  PANEL MEMBER:  Thank you.

7                  THE COURT:  Is your wife employed outside the home?

8                  PANEL MEMBER:  San Diego Unified, last 28 years.

9                  THE COURT:  Okay.  Great.  Thank you.

11:24  10                  PANEL MEMBER:  Thank you.

11                  THE COURT:  Judge Thomas.

12                  PANEL MEMBER:  Juror Number 19.  Single.  I have two

13      grown children.  One of them is a commercial insurance

14      salesman.  The other is a student.  45 years of construction

11:25  15      superintendent.  My spare time I do commercial and residential

16      upgrades and ADA upgrades for disabled veterans.  I've been to

17      several years of junior college.  I teach part-time, welding

18      technology.

19                  THE COURT:  What do you do in your spare time?

11:25  20                  PANEL MEMBER:  I do commercial and residential

21      upgrades.

22                  THE COURT:  That's what you do in your spare time?

23                  PANEL MEMBER:  Well, I take care of the property I

24      live on also.  I don't have much spare time.

11:25  25                  THE COURT:  Okay.  Got it.  All right.  Thank you.

1       Ma'am?

2               PANEL MEMBER:  I'm Juror Number 20.  I'm a geologist.

3       I work for an environmental consulting firm, I'm married, my

4       husband is a chemist, we have three children in high school and

11:26   5       college.  So they're students.  I have my bachelor's degree in

6       college.  And I've never served on a jury.  And in my spare

7       time, I like to garden, and I attempt to play cello.

8               THE COURT:  I'm sorry.  I didn't hear the last part.

9               PANEL MEMBER:  I attempt to play cello.

11:26   10              THE COURT:  You attempt to play cello.  Well, if

11      that's anything like a violin, let me tell you, that's quite a

12      feat.  Okay.  Well, thank you.

13      Sir?

14              PANEL MEMBER:  Juror Number 21, I'm married, three

11:26   15      children, two grandchildren, myself, I am retired, retired from

16      Northrop Grumman.  I worked as a technician and tool-making.

17      Also worked at Ryan Aeronautical, so about 35 years in that

18      industry.  Let's see.  Wife is an LVN, and she works in medical

19      research.  My son, one's in landscaping.  They're all grown.

11:27   20      31 to 35 years of age.  My daughter's a registered nurse, and

21      my son works in composites.

22              THE COURT:  Works in what?

23              PANEL MEMBER:  In composites.  In aerospace.  They do

24      Joint Strike Fighter stuff.  Hobbies are motorcycle travel.  My

11:27   25      wife and I both ride and --

54

```
 1              THE COURT:  What do you ride?

 2              PANEL MEMBER:  I ride a -- right now I've got a '99

 3    Gold Wing, but I just gave my son my 2005 1000 V-Strom Suzuki.

 4    I've had over 40 motorcycles my entire life, so started at

 5    eight years old, and I'm 59 now.  So pretty ingrained.  Best

 6    thing my dad could have ever have done for me, start me on

 7    that.  Loved it.  So highest grade is -- completed is high

 8    school, and what else did I miss?

 9              THE COURT:  Did you do jury duty?

10              PANEL MEMBER:  Oh, and I actually served on a jury.

11    It was a criminal case, and we reached a verdict.

12              THE COURT:  Okay.  Great.  Thank you.

13         Ma'am?

14              PANEL MEMBER:  Juror Number 22.  I am currently an

15    archeologist for California State Parks, my --

16              THE COURT:  An archeologist?

17              PANEL MEMBER:  Yes.  It's not as glorious as it

18    sounds.  People.  Humans.

19              THE COURT:  Really?

20              PANEL MEMBER:  Yes.

21              THE COURT:  How interesting.

22              PANEL MEMBER:  Married with no adult kids, but my

23    husband is an instructor for the carpenters union here in

24    San Diego.  Never served on a jury.

25              THE COURT:  What's your highest grade of school?
```

55

1    PANEL MEMBER:  Bachelor's degree.  Thank you.

2    THE COURT:  In archeology?

3    PANEL MEMBER:  Anthropology.

4    THE COURT:  Anthropology?

11:29 5    PANEL MEMBER:  I'm an archeologist by trade.

6    THE COURT:  Okay.

7    PANEL MEMBER:  And hobbies are definitely traveling

8 and hiking, and I swim a lot, part of an adult swim team.

9    THE COURT:  Okay.  What do you swim?

11:29 10    PANEL MEMBER:  I'm sorry?

11    THE COURT:  You said you're part of an adult swim

12 team?

13    PANEL MEMBER:  Yes, swim masters team.

14    THE COURT:  What distance?

11:29 15    PANEL MEMBER:  In an hour or so, I'll usually do about

16 2400 yards, but go about four or five times a week.

17    THE COURT:  What's your favorite stroke?

18    PANEL MEMBER:  The free stroke.  Nice and easy.  It's

19 my fastest.

11:29 20    THE COURT:  Okay.  Thanks.

21  Ma'am?

22    PANEL MEMBER:  Juror Number 23.  I'm an attorney.

23 Married.  My husband is also an attorney.  I do business real

24 estate law.  I'm an in-house counsel for a brokerage firm.  I

11:29 25 have two children.  They're ten and 13.  And I've never been on

```
 1   a jury.  My highest level of education is Juris Doctor.  And
 2   I'm not sure what the last one was.
 3                THE COURT:  Jury duty.
 4                PANEL MEMBER:  I've never done jury duty before.
 5                THE COURT:  Okay.  What's your husband do?  What kind
 6   of law does he practice?
 7                PANEL MEMBER:  He does business real estate
 8   litigation.
 9                THE COURT:  Okay.  So remember I asked everyone at the
10   very beginning, I told them that their job was to apply the
11   facts to the law as I state it to them, right --
12                PANEL MEMBER:  Yes.
13                THE COURT:  -- if you were to be selected on a jury,
14   to sit on this jury, would you be able to do that?
15                PANEL MEMBER:  Yes, because I don't know anything
16   about patent law.
17                THE COURT:  Okay.
18                PANEL MEMBER:  But beyond that, because you instruct
19   us to.
20                THE COURT:  Okay.  Did you tell me what your hobbies
21   were?
22                PANEL MEMBER:  No.  So we like to hike, we like to
23   travel.  I just got two boxer puppies.  They're seven months
24   old.
25                THE COURT:  You just got what?
```

11:30 (lines 5, 10, 15, 20, 25)

1          PANEL MEMBER:  Two boxer puppies.

2          THE COURT:  Two?

3          PANEL MEMBER:  Two.

4          THE COURT:  Two boxer puppies?  Do you know how much

5     energy those things have?

6          PANEL MEMBER:  I do.

7          THE COURT:  You got two for the price of one.

8          PANEL MEMBER:  Yeah, you know, we figured they would

9     entertain each other was the goal, and they do to some extent,

10    but they are a lot of energy.  They're really loving, though.

11    We also have a schnauzer, and she's a lot older.  It's kind of

12    a big shift from a dog that lays around all day and boxer

13    puppies, and everyone asks us if we like to run, but no, we

14    don't, but we hike, so they get their energy out that way.

15         THE COURT:  All right.  Let me talk to the lawyers for

16    just a second, if you don't mind.  Again, please try not to

17    listen to what we're talking about.  Okay.

18       (The following proceedings were heard at the bench:)

19         THE COURT:  In the interest of time, I suggest that we

20    stop here.  I think we have enough to pick our eight jurors.

21         MR. THOMAS:  I think we do, Your Honor.  We're up to

22    23.

23         MR. O'HARE:  Minus five.

24         MR. THOMAS:  Minus five.

25         THE COURT:  So 18.

1          THE CLERK:  That would leave 12 total.

2          MR. THOMAS:  So there's no indication, from what I see

3    so far up in that section, of any cause challenges.

4          MR. O'HARE:  Right, I don't either, Your Honor.

11:32  5          THE COURT:  So why don't I stop now.  What I'm going

6    to do is I'm going to send the other folks back to the jury

7    commissioner because who knows, they may need them today for

8    some other trial.

9          MR. THOMAS:  Okay.

11:32 10          THE COURT:  And then what I'm going to do is take a

11   break and let you folks decide on your peremptories, and we'll

12   come back, and this afternoon we'll start with the instructions

13   and opening statements.

14          MR. THOMAS:  And you want us to do blind strikes?

11:33 15          THE COURT:  Yes.  We have a list.  We'll give you a

16   list.

17          MR. THOMAS:  Okay.

18          THE COURT:  If I catch you cheating.  Okay.  Great.

19        (Proceedings held in the presence of the jury panel.)

11:33 20          THE COURT:  Okay.  All right.  So in order to expedite

21   matters, our district is either the busiest or in the top four

22   of the busiest districts in the country.  We have a lot of

23   trials that go out of this courthouse.  And so it may very well

24   be that the jury commissioner needs more jurors to fill panels

11:33 25   and other cases, so in the interest of time, what I'm going to

1    do is I'm going to send all of you folks sitting on this side

2    and all of you folks sitting in the back, back to the jury

3    commissioner and let them know that you have been excused from

4    this trial.  Again, I thank you very much on behalf of the

11:34    5    parties, on behalf of the chief judge, Judge Burns, and on my

6    behalf.  Take care.

7        Okay.  And now, for the rest of you who are here in the

8    courtroom, let me tell you what's going to happen next.  The

9    law provides that the attorneys have an opportunity to excuse a

11:34    10    certain number of you.  Okay.  Please don't try to guess as to

11    why any of you are excused or don't take it personally if the

12    person sitting next to you has been excused and you got to be

13    friends with him or her.  It's something that allows the

14    lawyers to try to make sure that they have a jury that they can

11:35    15    feel comfortable with, will be a good jury for their case.  But

16    in order for the lawyers to be able to exercise what are known

17    as peremptory challenges, they need a little bit of time.  They

18    need to go through their notes.  They've heard you all, they've

19    heard your background, they've heard your pastimes and so on.

11:35    20    They now need to go through those notes and, sort of, figure

21    out who they would like to keep and who they would like to

22    excuse.  So rather than have you sitting around here while

23    they're doing that, I'm going to take a 15-minute recess and

24    let them do that, and then you'll come back, and we'll exercise

11:35    25    the peremptories, and then I'll swear you in as jurors, and

1    then I'll send you out to lunch.  We'll come back, and we'll

2    get the case started.  Okay?

3        But before I let you go, let me tell you something that is

4    really, really, really, really important.  Okay?  And that is

11:36    5    this:  At no time, at no time, should you talk to each other or

6    with anyone else about the case or the parties or the issues

7    involved.  In fact, don't talk about anything having to do with

8    the case.  Okay?  When I say don't talk to anyone, that

9    includes talking to someone by an electronic format.  If you

11:36    10    happen to have a cell phone with you, don't get on your cell

11    phone or call your boss or spouse or friend or whatever and say

12    guess what?  I got on a jury, and this is going to be an

13    interesting case.  It's a patent case, et cetera.  Don't do

14    that.  Don't get on Facebook, don't get on Snapchat, don't get

11:36    15    on WhatsApp, don't get on any of those programs.  Do not

16    communicate with anyone about the case.  Nothing about the

17    case.  Okay?  Do not read, watch, or listen to any news

18    accounts in the case.  I don't think there will be any.  Please

19    do not do any independent research, so don't get out of here

11:37    20    and go outside and get on your phone or your iPad or whatever

21    and start researching patents or whatever.  Don't do it.  Don't

22    do it.  Okay?  Now, if you observe someone violating the rules

23    that I've just told you, it's your duty, your obligation, to

24    report it to me.  Write a note, date it, sign it, give it to my

11:37    25    courtroom deputy, who will then give it to me.  I will then

1   decide what, if anything, I need to do about that.  Okay?

2   There are some very bad things that can happen if you do what

3   I've just told you not to do.  One of those things would be

4   that I would have to start this process all over again.  That's

11:37   5   a waste of time.  It's a waste of taxpayer dollars.  We don't

6   want to do that.

7       Furthermore, if I should find that I -- that you did it

8   willfully, I could hold you in contempt.  That means that I

9   could fine you.  It means that I could actually put you in

11:38   10   custody.  We've got the holidays coming up.  You don't want to

11   be spending the holidays in custody, do you?  I've never had to

12   do this ever in my career.  I'm getting to the sunset of my

13   career.  I don't want to leave my career by saying oh, I had to

14   put someone in custody because they violated some very simple

11:38   15   rules.

16       Don't talk to anyone about the case, don't let anyone talk

17   to you about the case, don't do any research, don't read,

18   watch, or listen to any news accounts of the case, and please

19   make sure that you keep an open mind at all times until you go

11:38   20   into the jury deliberation room if you're selected as a juror.

21   Okay?

22       Now, with that, I'm going to ask you to be outside of those

23   doors at five minutes till 12:00.  Okay?

24       Now, I do want to say one more thing.  This is a small

11:39   25   courthouse actually, believe it or not, compared to some, and

```
 1   so we may run into each other.  You may run into the lawyers or

 2   even the parties or me and my staff, whatever, or each other,

 3   and it's okay if you talk to each other.  You can talk to each

 4   other about anything you want except for anything having to do

 5   with the case.  It's okay to say hi, good morning, how are you?

 6   Okay.  We don't want to be unfriendly, but just don't strike up

 7   a long conversation with any of the parties, the lawyers,

 8   myself, my staff.  Okay?  With that, see you at five minutes

 9   till 12:00.  Okay?  Thank you.

10       Counsel, we will give you a list.  Once you've exercised

11   your peremptories, please deliver your list to my courtroom

12   deputy, who will then exchange the list, and once that has

13   happened, I will come back, and we'll select a jury.  Okay?

14   Great.  Thank you.

15       (Recess.)

16       (Proceedings held outside the presence of the jury panel.)

17            THE COURT:  You're back.  Listen, I just realized that

18   I forgot to ask them about the witnesses, to see if any of them

19   knew any of these witnesses.  I should have done that.  I had

20   the witness list right here, but it got buried under something

21   else.  When they come back, I'm going to go through the witness

22   list, if you don't mind, just to see if, by chance, any of them

23   know any of these folks.  Okay?  And if we get answers that

24   lead us to conclude that maybe one of them or more of them know

25   any of these witnesses, I'll give you a chance to rework your
```

11:39
11:39
11:39
11:51
11:52

         1   list.  Okay?

         2             MR. O'HARE:  Thank you.  Sorry we didn't think of it

         3   either.

         4             THE COURT:  That's okay.  It happens.

11:52    5             THE CLERK:  In the meantime, I don't have plaintiff's

         6   list.

         7             THE COURT:  So you have your lists completed, right?

         8             MR. O'HARE:  About to.

         9             THE COURT:  About to.

11:52   10             MR. THOMAS:  We turned our list in.

        11             THE COURT:  Okay.

        12             MR. THOMAS:  Should I get it back or just leave it?

        13             THE COURT:  Just give your list to my courtroom

        14   deputy, and then if, in fact, it turns out that anyone knows

11:52   15   these witnesses, we'll play it by ear.  Okay?  Okay?

        16             MR. O'HARE:  Shall I?  Can I come through the well and

        17   approach?

        18             THE COURT:  Of course.  By the way, you don't need to

        19   ask for permission during the trial to approach.  Okay?  And so

11:53   20   anytime you've got a witness on the witness stand, you don't

        21   need to ask me for permission.  Okay?

        22       All right.  Glenn, do me a favor and bring the jury in.

        23       (Proceedings held in the presence of the jury panel.)

        24             THE COURT:  All right.  Please be seated.

11:55   25       All right, ladies and gentlemen of the jury:  I overlooked

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | doing something that I should have done earlier, and that is to |
|       | 2  | alert you to who the possible witnesses in this case might be. |
|       | 3  | And so I'm going to do that now.  Listen carefully.  If you   |
|       | 4  | know any of these folks, please let me know.  Okay?          |
| 11:56 | 5  | Andrew Thatcher.  That's T-H-A-T-C-H-E-R.  Bruce MacFarland.  |
|       | 6  | David Keim, K-E-I-M.  Edward Pribonic, P-R-I-B-O-N-I-C.      |
|       | 7  | Erikson Squier.  That's S-Q-U-I-E-R.  Geoff Chutter,        |
|       | 8  | C-H-U-T-T-E-R.  Glenn Stevic, S-T-E-V-I-C.  Justin Lewis,    |
|       | 9  | L-E-W-I-S.  Marshall Myrman, M-Y-R-M-A-N.  Richard Alleshouse, |
| 11:57 | 10 | A-L-L-E-S-H-O-U-S-E.  Robert Vigil, V-I-G-I-L.              |
|       | 11 | Thomas Lochtefeld, L-O-C-H-T-E-F-E-L-D.  Timothy Gantz,     |
|       | 12 | G-A-N-T-Z.  And Yong Yeh.  That's Y-O-N-G, Y-E-H.  Are any of |
|       | 13 | you acquainted with any of those folks?  No?  Okay.  Then just |
|       | 14 | sit tight.                                                    |
| 11:57 | 15 | Glenn, do you have the list?                                 |
|       | 16 | THE CLERK:  One second, Judge.                               |
|       | 17 | THE COURT:  All right.  Counsel, if you'd come up for        |
|       | 18 | just a second, please.                                       |
|       | 19 | (The following proceedings were heard at the bench:)         |
| 11:58 | 20 | THE COURT:  There's a list of jurors.  The ones that         |
|       | 21 | say J will be our jurors, the ones that are highlighted.     |
|       | 22 | MR. THOMAS:  Eight, Your Honor.  Is that correct?            |
|       | 23 | THE COURT:  Yes.  Does that appear to coincide with          |
|       | 24 | your challenges?                                             |
| 11:58 | 25 | MR. THOMAS:  I want to make sure.                            |

|        | 1  | MR. O'HARE:  It does with ours.  I wouldn't know about |

1   MR. O'HARE:  It does with ours.  I wouldn't know about

2   theirs.

3   THE CLERK:  They did not exchange the list, by the

4   way.

11:59   5   THE COURT:  That's okay.

6   MR. THOMAS:  7, 8, and 9.  Okay.

7   MR. O'HARE:  And 14.

8   THE COURT:  Satisfied?

9   MR. THOMAS:  Yeah.

11:59   10   MR. O'HARE:  Yes.

11   THE COURT:  Any Batson-Wheeler challenges?

12   MR. THOMAS:  Not for us.

13   THE COURT:  All right, great.  Thank you.

14   (Proceedings held in the presence of the jury panel.)

11:59   15   THE COURT:  All right.  Now, ladies and gentlemen,

16   what I'm going to do is I'm going to read the numbers of the

17   jurors that we would like to stay.  I'm going to do this twice,

18   so please don't get up and leave until I ask you to.  Okay?  If

19   I read your juror number, I would like for you to stay.

11:59   20   Juror Number 1, Juror Number 3, Juror Number 5, Juror

21   Number 6, Juror Number 11, Juror Number 12, Juror Number 13,

22   and Juror Number 16.  So I'm going to do that one more time.

23   1, 3, 5, 6, 11, 12, 13, and 16.  If I did not read your number,

24   please return back to the jury commissioner's office, and let

12:00   25   them know that you've been excused from this trial.

1      Again, I thank you for giving us your time this morning.
2  Okay?  The rest of you, please stay seated.

3      Okay.  We're going to play a little bit of musical chairs.
4  Juror Number 3, would you do me a favor and move one chair
12:01  5  over.  Ma'am, would you move over.  Ma'am, would you move over.
6  Sir, would you do me a favor and step down next to this young
7  lady here.  And then, ma'am, would you please follow him.  All
8  right.  Ma'am, if you'd do me a favor and move back to that
9  chair.  And then, sir, if you'd do me a favor and follow her,
12:01  10  I'd appreciate it.  And don't get too comfortable because I'm
11  going to have you stand and take an oath in just a second.
12  Okay?

13      All right.  If you would all do me a favor and please rise,
14  my courtroom deputy is going to administer an oath to you so
12:01  15  that you'll become our jurors.

16          THE CLERK:  Raise your right hands.

17      (The jurors were sworn.)

18          THE CLERK:  Please be seated.

19          THE COURT:  All right.  Now, I'm going to send you out
12:02  20  to lunch.  I'm going to give you 45 minutes today.  The
21  rest -- the rest of the time, you will get -- the rest of the
22  days you'll get 30 minutes.  Okay?  But today I'm going to give
23  you 45 minutes.  So please remember the admonition that I've
24  given you before.  Okay?  I will read it to you in stronger
12:02  25  terms later.  But please plan to be outside of those doors

1    promptly, promptly, promptly at a quarter till 1:00.   Okay.

2    Thank you.   We're in recess until quarter till 1:00.   Thank

3    you.

4         (Luncheon recess.)

5                              ---000---

6

7                      C-E-R-T-I-F-I-C-A-T-I-O-N

8

9         I certify that the foregoing is a correct transcript from

10   the record of proceedings in the above-entitled matter.

11

12        Dated December 3, 2019, at San Diego, California.

13

14
                              /s/ Dana Peabody_____
15                            Dana Peabody,
                              Registered Diplomate Reporter
16                            Certified Realtime Reporter

17

18

19

20

21

22

23

24

25