JOSEPH E. THOMAS (State Bar No. 101443)
jthomas@twtlaw.com
WILLIAM J. KOLEGRAFF (State Bar No. 183861)
wkolegraff@twtlaw.com
GRANT J. THOMAS (State Bar No, 325011)
gthomas@twtlaw.com
**THOMAS WHITELAW & KOLEGRAFF LLP**
18101 Von Karman Avenue, Suite 230
Irvine, California 92612-7132
Telephone: (949) 679-6400
Facsimile: (949) 679-6405

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEWATER WEST INDUSTRIES, INC,, a Canadian corporation,<br><br>Plaintiff,<br><br>vs.<br><br>PACIFIC SURF DESIGNS, INC., a Delaware corporation and FLOW SERVICES, INC., a California Corporation,<br><br>Defendants. | CASE NO. 3:17-cv-01118-BEN-BLM<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION FOR ATTORNEYS' FEES UNDER 35 U.S.C. §285 (ECF NO. 369)**<br><br>The Hon. Roger T. Benitez<br>Courtroom: 5A<br>Hearing Date: November 23, 2020<br>Time: 10:30 a.m. |

# TABLE OF CONTENTS

**Page**

**I.**  **INTRODUCTION** .................................................................................................. 1

**II.**  **THIS CASE IS EXCEPTIONAL UNDER 35 U.S.C. § 285** ................................ 1

    A.    Whitewater Failed to Perform Any Pre-Suit Investigation ........................... 1

    B.    The Motion for Summary Judgment Was Denied Because Whitewater Misrepresented The Evidence ................................................................... 4

    C.    Whitewater's Claim Construction was Objectively Unreasonable ................ 5

    D.    Whitewater's Damage Demands Were Objectively Unreasonable and Baseless ............................................................................................ 6

    E.    Whitewater Litigated in Bad Faith ............................................................ 7

    F.    Attorney's Fees and Costs Related to the '589 Patent From the 2015 Lawsuit Should Now Be Awarded ............................................................ 7

**III.**  **PSD'S FEE REQUEST IS REASONABLE** ......................................................... 8

    A.    All Requested Fees Fully Satisfy the "But For" Test ................................... 8

    B.    Whitewater's Litigation Conduct Was An Abuse of the Judicial Process ..................................................................................................... 9

    C.    PSD Can Recover Fees from the 2015 Lawsuit .......................................... 9

    D.    Fee Summary .......................................................................................... 10

**IV.**  **CONCLUSION** .................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 916 (Fed. Cir. 2019) ................................................................................................................ 3

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017) (*citing Fox v. Vice*, 562 U.S. 826 at 837-838) ............................................................. 8

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012) ................. 5, 9

*Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010) ...................................................... 5

*Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1369 (Fed. Cir. 1996) .......................................................................................................... 5

*Octane Fitness* 134 S. Ct 1749, 1756 (2014) ............................................................ 1

Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc., 549 F.3d 1381, 1391 (Fed. Cir. 2008) .......................................................................................................... 9

*Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013) ................................................................................................................ 6

*Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019) ..................... 2

**STATUTES**

35 U.S.C. § 285 .......................................................................................................... 1

## I. INTRODUCTION

Whitewater's objectively unreasonable litigation conduct, combined with its knowing assertion of weak and unenforceable patent claims, unmistakably makes this an exceptional case under 35 U.S.C. § 285. The Court therefore should award PSD the substantial fees and costs it was forced to waste defending itself against a case that never should have been filed. A case is "exceptional" if it stands out from others with respect to either: (1) the substantive strength of a party's litigation position, or (2) the unreasonable manner in which the case was litigated. *Octane Fitness* 134 S. Ct 1749, 1756 (2014). Whitewater fails both prongs. The jury invalidated every claim asserted by Whitewater, finding, by clear and convincing evidence, that Whitewater's prior art installations at Hyland Hills, Colorado and Guam to have "no difference between" the claimed invention and the prior art. (Verdict, ECF 356 at 15). Accepting all of the jury's advisory findings, this Court then found every asserted claim to be invalid as being obvious over those very same prior art installations with no differences between them. After receiving a Rule 11 sanctions warning letter, Whitewater failed to conduct any pre-suit investigation, and filed another frivolous suit on June 1, 2017 (ECF 1). To make matters worse, Whitewater then engaged in objectively unreasonable litigation behavior and used its experts to present outlandish and unsupportable infringement assertions and damages opinions to the jury.

## II. THIS CASE IS EXCEPTIONAL UNDER 35 U.S.C. § 285

### A. Whitewater Failed to Perform Any Pre-Suit Investigation

Whitewater has offered no evidence that it conducted any pre-suit investigation prior to filing this lawsuit in 2017. This is exactly the same conduct that the court found was exceptional in the '016 patent assertion. In awarding attorneys' fees to PSD, the Court found:

> *Instead of making efforts to clarify the validity of the '016 patent, Plaintiffs stuck their head in the sand and proceeded to file this lawsuit. As such, Plaintiffs failed to undertake an adequate pre-suit filing investigate*

*before filing this suit, which was exceptionally unreasonable litigation conduct. Flowrider Surf Ltd., et al v Pacific Surf Designs, Inc.,* No. 15-01879 (S.D. Cal.) (the "2015 lawsuit")ECF 308,9.

*Thermolife Int'l LLC v. GNC Corp.*, 922 F.3d 1347 (Fed. Cir. 2019) is instructive on the critical nature of the pre-suit investigation. In *Thermolife*, the district court awarded attorneys' fees based upon Plaintiff's failure to perform an adequate pre-suit investigation into the asserted claims. Just like this case, the defendants in *Thermolife* moved for summary judgment based upon invalidity, contending that all asserted claims were invalid. *Id*. at 1353. Defendant's summary judgment was denied. *Id*. After hearing all the evidence, the fact finder invalidated all of Thermolife's claims as being anticipated and obvious. *Id*. Defendants then moved for, and were awarded fees based upon Thermolife's lack of pre-suit investigation on its weak patent assertions. *Id*. at 1355. The court also cited the fact that Thermolife had engaged in a pattern of similar behavior in other lawsuits. *Id*. The Federal Circuit affirmed on both grounds. *Id*. at 1350. These same facts are present here.

It is undisputed that Whitewater never did any pre-suit investigation of its prior art installations. To try and obfuscate this fatal defect, the Opposition wrongly attempts to shift the investigation burden to PSD. (Opp. at 4:18-28). First, Whitewater argues the Guam and Hyland Hills installations were available to the public, and therefore PSD should have known about these installations. Whitewater cannot shift their pre-suit investigation duty to PSD. Second, Whitewater claims PSD should have included the 1996 installations in its '589 IPR because Whitewater had produced a handful of magazine photographs in February 2016. The IPR was initiated by PSD on 8/24/2016. What little information that was produced by Whitewater before the IPR consisted of only vague and distant "magazine photographs" which show absolutely no detail of the installations sufficient to support any invalidity assertion. *See* Thomas Decl., Ex. A. Instead, it was not until late March 2017 that Whitewater belatedly produced detailed schematic drawings of

the prior installations, which were used in Lochtefeld's deposition first taken on March 28, 2017. All of this is fully documented in PSD's April 3, 2017 Rule 11 sanctions warning letter to Whitewater's counsel. *See* Thomas Decl., Ex. B. This letter states in relevant part:

> *I write regarding Plaintiffs' Rule 11 basis to continue its infringement assertions in this case. Recent documents, as well as testimony from last week's deponents, lead us to believe that, to the extent there was ever a good faith basis to bring suit, it no longer exists....Mr. Lochtefeld's recent production, as well as his testimony, has only bolstered PSD's belief. The Hyland Hills schematics produced just last month (March 2017) (including some the day before his deposition) show all of the elements of the '589 patent and Mr. Lochtefeld's testimony fully supported this fact...*
>
> *Accordingly, it is PSD's position that a reasonable party would have investigated these earlier installations as a precursor to filing suit, and certainly would have collected these documents for its own review and for production to the other side...*
>
> *That Plaintiff in the past two weeks backtracked from their earlier representations, and attempted to withhold production of additional schematics and drawings, gives PSD reason to believe that Plaintiffs' actions were deliberate. In other words, it is PSD's belief that once Plaintiffs realized the strength of these documents as prior art they attempted to prevent any further disclosure. Only once PSD threatened to move to compel did Plaintiffs provide more information beginning last Friday (March 30, 2017), and this additional information, such as the Guam installation (reproduced below), show that more than one prior art installation anticipates the '589 patent.*

Whitewater entirely ignored this Rule 11 warning, simply stuck its head in the sand and filed this lawsuit on June 1, 2017. It is clear that, "exercise of even a modicum of due diligence by [Whitewater], as part of a pre-suit investigation, would have revealed the weaknesses in its litigation position." *Blackbird Tech LLC v. Health In Motion LLC*, 944 F.3d 910, 916 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 2765, 206 L. Ed. 2d 939 (2020). Whitewater's failure to perform a pre-suit investigation, alone, is enough to find this case exceptional, and the Court should award fees to PSD under 35 U.S.C. §285. This is nearly identical to what happened in the 2015 lawsuit where this court found that case was exceptional.

> *In sum, Plaintiffs initiated this suit without adequately investigating the validity of the '016 patent (and despite warning signs to the contrary), insisted on maintaining this suit despite mounting evidence regarding the validity of the '016 patent, and obfuscated the fact that the '016 Patent had validity issues, the manner in which it litigated this case also makes this case stand out as "exceptional."* The 2015 lawsuit, ECF 308, 10:3-7.

### B. The Motion for Summary Judgment Was Denied Because Whitewater Misrepresented The Evidence

In a bizarre spin of the facts, Whitewater incredulously tries to shield its objectively unreasonable litigation conduct by pointing to the Court's denial of PSD's motion for summary judgment ("MSJ") on invalidity. But the Court's denial of the MSJ actually supports a finding that this case is exceptional. In its opposition to the MSJ, Whitewater misrepresented the evidence at trial by informing the Court that in the 1996 Hyland Hills installation, the nozzles were behind the vertical wall. The 2015 lawsuit, ECF 94, at 1:8-11. In denying the MSJ, the Court relied on Whitewater's misrepresentations, and, as a result, incorrectly concluded that there were "stark differences" between the 1996 installations and the '589 patent. The 2015 lawsuit, ECF 118, at 4:20-27. The Court relied on Whitewater's assertion, believing that: "The nozzle is below, and behind, the vertical wall and its bumper pad" and "Below and behind this wall is the water flow nozzle. A rider simply cannot ride over this area." *Id.* at 4:25-27 and 5:19-20.

At trial, the evidence was undisputed that the pad, or tongue, was directly above the nozzles and there were no material differences between the '589 patent and the prior art. In fact, at trial, Lochtefeld admitted that a rider could ride directly over the pad which covered the nozzles. (Trial Tr. 231:7-239:2). In closing, PSD presented a colorized drawing that indisputably shows that the pad, or tongue, was directly above the nozzles. *See* Thomas Decl., Ex. C. The jury found that Whitewater's prior art installations at Hyland Hills and Guam to have "no difference between" the claimed invention and the prior art. ECF 356. In entering judgment, the court accepted all of the jury's findings, invalidated the asserted claims and essentially reversed its earlier MSJ finding of "stark differences".

It is well settled law that, "if the party's success at the summary judgment stage is due to false or misleading representations about its evidence, the party cannot rely on the district court's denial of summary judgment to shield it from

liability for sanctions." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010).

### C. Whitewater's Claim Construction was Objectively Unreasonable

The Court found that "flexible tongue" should be given its plain and ordinary meaning. ECF 88. However, Whitewater's technical expert, Dr. Stevick, failed to follow the Court's instruction, and instead manufactured his own special definition and opined that a hinged metal plate could actually be a "flexible tongue". He admitted at trial that the '589 patent never mentioned a hinge, but went deep into the text of the '589 patent to find that "the flexible part can be internally or externally reinforced." Tr. Ex. 1, 11:5-17. From this, Dr. Stevick extrapolated his own definition, creating his own meaning for "flexible tongue," which could include a steel or fiberglass plate attached to a hinge. Trial Tr. 310:8- 312:2. "While claims are to be interpreted in light of the specification, all that appears in the specification is not necessarily within the scope of the claims and thus entitled to protection. What is not claimed, even though disclosed as part of the 'invention,' cannot be enjoined." *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d 1364, 1369 (Fed. Cir. 1996). Nowhere in the '589 patent, either in the specification or the patent claims does the word "hinge(d)" appear. (Trial Tr. 310:20-312:22). Nowhere in the specification of the patent does the term "steel plate" appear. But yet, in Dr. Stevick's construction, they could be read into the patent as the definition of a "flexible tongue".

In *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012), MarcTec asked the court to define the claim language by its plain and ordinary meaning, and only look to the specification if there is any ambiguity. *MarcTec*, 664 F.3d at 912. After the claim language was found to disclaim the use of "stent", MarcTec "instead argued that nothing in the specification or the prosecution history precluded coverage of stents." *Id.* at 913. The court rejected this argument, and found that the case was exceptional and awarded fees and expert costs due to

MarcTec's "(1) misrepresenting claim construction law to avoid intrinsic evidence; (2) mischaracterizing the district court's claim construction; and (3) offering "junk science" that was unreliable, untestable, and had no relevance to this case." *Id*. at 914.

Just as in *MarcTec*, Whitewater, through its expert, Dr. Stevick, ignored the plain and ordinary meaning of "flexible tongue" and created his own specialized definition of the term "flexible tongue". His specialized definition was completely divorced from the claim's plain and ordinary meaning of "flexible tongue". "When patentees have sought unreasonable claim constructions divorced from the written description, this court has found infringement claims objectively baseless." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013). A steel plate bolted to a metal piano hinge was never considered anywhere in the '589 patent specification, claims, or drawings.

### D. Whitewater's Damage Demands Were Objectively Unreasonable and Baseless

Whitewater's damages expert, Dr. Vigil, ignored nearly every facet of patent damages law in an attempt to artificially inflate his damages calculation. He did this with only one intended purpose: to inflict a damages award that would ensure PSD went out of business for good. Dr. Vigil never considered the Smallest Saleable Patent Practicing Unit ("SSPPU"), but only applied an entire market approach. Instead of basing royalty on the $3,000 metal flap, the only royalty base he considered was the entire sheet wave machine, which can cost upwards of a million dollars. Further, Vigil never considered offering PSD a running royalty, but instead only considered a single upfront lump sum payment for this two-person startup company for a non-exclusive license. Had Vigil considered the running royalty or SSPPU analysis, PSD would have been subjected to a maximum of roughly $30K of damages. Instead, Vigil opined that PSD would have paid $2M upfront, and its service company, Flow Services, Inc., inexplicably would have additionally paid

$2M upfront, even though it earned only $41,000 in service revenue. Trial Ex. 243. It is simply outrageous and unsupportable under patent law that a two-person startup, who only sold a total of 4 machines prior to trial, would have paid a lump sum royalty of $2M, let alone $4M. Such a damage figure is far from a reasonable royalty, and was intended solely to put PSD out of business. This is objectively bad faith litigation conduct.

### E. Whitewater Litigated in Bad Faith

Whitewater's litigation motives were nefarious and objectively in bad faith. Whitewater was motivated to crush PSD and put them out of business. As early as June 19, 2013, Whitewater's admitted motive in filing this series of litigations was to "squash" PSD and put them out of business. Tr. Ex. CQ.

> "Richard (Pacific Surf Designs) is also a big threat from a product stand point. He has no cash so he is struggling. Now is the time to squash him. He was the main engineer for the Flowrider for 5 years and HE HAS MADE IMPROVEMENTS. He has no sales force but his product is good. If we do nothing then this will be a problem."

Whitewater's attempts to recast this suit as an attempt to protect its "valuable" intellectual property right are not factually supportable. This internal 2013 email is significant because it was created well in advance of any sale of competing products by PSD or any infringement analysis by Whitewater and therefore demonstrates that Whitewater's true motive was to destroy PSD and had nothing to do with protecting any intellectual property rights.

### F. Attorney's Fees and Costs Related to the '589 Patent From the 2015 Lawsuit Should Now Be Awarded

Whitewater has admitted that it was the real party in interest in the 2015 lawsuit at all times, and directed the outrageous litigation tactics. Plaintiffs' Motion to Substitute, ECF 106, 5:12-19. Further, documents and testimony from the 2015 lawsuit were merged in this lawsuit. In the 2015 lawsuit, Whitewater hid that Flowrider Surf Ltd. ("FSL") had no rights in the '589 patent, and had no standing. Had this been disclosed, years of litigation could have been avoided. Whitewater

also hid that FSL was amalgamated into Whitewater shortly after the 2015 lawsuit was filed, and used the amalgamation to withhold key documents, including the critical schematics of the 1996 installations. Had these documents been produced, PSD would have known much earlier the strength of its invalidity position against the '589 patent. Moreover, the 589 patent assertions in 2015 were exceptional for the same reasons the Court recognized the '016 patent assertion was exceptional - a failure to conduct any pre-suit investigation into the validity of the '589 patent. Additionally, Whitewater asserted the '589 patent through FSL (a former subsidiary that it knew did not exist or have standing), which makes that assertion, like this case, an exceptional case. Decl. of Marshall Myrman in Support of Plaintiffs' Motion to Substitute ECF 106-1, at 2 ¶3.

### III. PSD'S FEE REQUEST IS REASONABLE

#### A. All Requested Fees Fully Satisfy the "But For" Test

PSD has satisfied its burden in proving that all fees requests meet the "But For" test. "Under the 'but for' standard, '[t]he court's fundamental job is to determine whether a given legal fee – say, for taking a deposition or drafting a motion – would or would not have been incurred in the absence of the sanctioned conduct. The award is the sum total of the fees that, except for the misbehavior, would not have accrued." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1187 (2017) (*citing Fox v. Vice*, 562 U.S. 826 at 837-838) .

This case would not have been filed "But For" Whitewater's failure to perform a pre-suit investigation into the validity of Whitewater's patent. Several years of litigation would have been saved had Whitewater apprised its own lawyers of the same issues during the 2015 lawsuit. In 2017, PSD warned Whitewater that its patent would likely be invalidated by the Hyland Hills and Guam installations. Disregarding this warning, Whitewater filed the lawsuit anyway. PSD alerted Whitewater to the fact that its infringement contentions were not likely to prevail at trial. But, again, Whitewater ignored these warnings and proceeded to trial.

### B. Whitewater's Litigation Conduct Was An Abuse of the Judicial Process

PSD is entitled to an award of expert fees under the *Amsted* standard. A "district court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.,* 549 F.3d 1381, 1391 (Fed. Cir. 2008). In *MarcTec*, the district court found that "(1) '[e]xpert fees are recoverable in patent cases where, as here, there was bad faith, such as the filing of a frivolous action'; and (2) '[b]ecause of MarcTec's bad faith in bringing and pressing this suit when it had no basis for asserting infringement.'" *MarcTec*, 664 F.3d at 921. Just as in *MarcTec*, PSD was forced to incur expert witness fees to rebut each of Whitewater's expert witnesses. The expert opinions of Dr. Stevik and Dr. Vigil were not supported by patent law or by the facts of the case. Thus, these positions were baseless and frivolous. Moreover, the '589 patent assertions were all invalidated by prior art installations in the possession of Whitewater and Whitewater was given a Rule 11 warning letter on April 3, 2017 before it filed this action on June 1, 2017. In the face of all of this, Whitewater chose, "to stick its head in the sand on invalidity" and weaponized litigation to eliminate competition. As such, the court has the inherent authority to award PSD expert fees as an abuse of the judicial process.

### C. PSD Can Recover Fees from the 2015 Lawsuit

The court has already determined that the 2015 lawsuit as it related to the '016 patent was an exceptional case and awarded fees. In doing so, the Court also awarded fees from an earlier filed lawsuit which were related to the '016 patent. In the 2015 lawsuit, the Court award fees that were only directed to the '016 patent, and did not allow any fees billed to the '589 patent only or to a mix of the '016 and the '589 patents. ECF 308. Here, the Court should also find the '589 patent assertion in 2015 was exceptional given Whitewater's failure to do any pre-suit investigation and unreasonable litigation conduct. If the Court rules that both the '589 and '016 patent lawsuits were exceptional, the Court should award PSD all the fees related to

the '589 patent from the 2015 lawsuit not awarded in its prior order.

### D. Fee Summary

PSD has carefully reviewed the spreadsheets attached to Whitewater's opposition, and if an entry has any ambiguity, then PSD has indicated that it "will not dispute" that entry and it should not be awarded. The attached Declaration of William Kolegraff provides the detail to the summary below:

| | |
|---|---|
| Third Lawsuit (June 2017) | $2,411,153 |
| Experts in Third Lawsuit | $ 472,936 |
| Second Lawsuit (August 2015) | $1,412,247 |
| First Lawsuit (May 2014) | $ 4,280 |
| TOTAL | $4,300,616 |

## IV. CONCLUSION

This is an exceptional case under 35 U.S.C. §285, and as such the Court should award PSD its attorneys' fees and costs. Further Whitewater's egregious conduct is an abuse of the judicial process and exceptional under *Amsted*, so PSD is also owed its expert witness fees. Accordingly, PSD requests that the Court order Whitewater to pay all PSD's fees and costs of $4,300,616.

DATED: November 16, 2020            THOMAS, WHITELAW & KOLEGRAFF LLP

By:    /s/ Joseph E. Thomas
       JOSEPH E. THOMAS
       Attorney for Defendants

**Certificate of Service**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on November 16, 2020, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any counsel of record who have not consented to electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

DATED: November 16, 2020          THOMAS, WHITELAW & KOLEGRAFF LLP


                                  By:     /s/ Tierra Mendiola